```
                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE MIDDLE DISTRICT OF FLORIDA
                              TAMPA DIVISION
_____
                                    )
TRUMP MEDIA & TECHNOLOGY            )
GROUP CORP.,                        )
                                    )
         Plaintiff,                 )
                                    )
v.                                  )   Case No.:  8:23-CV-1535
                                    )
WP COMPANY, LLC,                    )
d/b/a The Washington Post,          )
                                    )
         Defendant.                 )
_____)
```

**CASE MANAGEMENT CONFERENCE PROCEEDINGS**
**BEFORE THE HONORABLE THOMAS P. BARBER**

**April 24, 2024**
**2:36 p.m. to 2:53 p.m.**

**APPEARANCES:**

**FOR THE PLAINTIFF:**      STEPHEN B. FRENCH, ESQUIRE
                            JARED J. ROBERTS, ESQUIRE
                            Binnall Law Group PLLC
                            717 King Street
                            Suite 200
                            Alexandria, VA 22314

**FOR THE DEFENDANT:**      THOMAS G. HENTOFF, ESQUIRE
                            Williams & Connolly
                            680 Maine Avenue Southwest
                            Washington, DC 20024

**FOR THE DEFENDANT:**      CAROL J. LOCICERO, ESQUIRE
                            Thomas & LoCicero
                            601 South Boulevard
                            Tampa, Florida 33606


(Proceedings recorded by mechanical stenography, transcript produced by computer-aided transcription.)

**REPORTED BY:**
Rebekah M. Lockwood, RDR, CRR
Official Court Reporter
(813) 301-5380 | r.lockwooduscr@gmail.com
P.O. Box 173496, Tampa, Florida 33672

1    (Call to Order of the Court at 2:36 p.m.)

2    **THE COURT:** New York Times v. Sullivan -- or, no,
3    that's not that one. This is Trump versus Washington Post.
4    Come on down.

5    Go ahead and say your names once you get to the
6    podium, please.

7    **MR. FRENCH:** Good afternoon, Judge. Stephen French
8    on behalf of the plaintiff.

9    **MR. ROBERTS:** Jared Roberts on behalf of the
10   plaintiff.

11   **MS. LOCICERO:** Carol LoCicero on behalf of the
12   defendant. I'd like to introduce Tom Hentoff.

13   **THE COURT:** I met him last time.

14   **MS. LOCICERO:** You did.

15   **THE COURT:** He got the quiz right on who knew what
16   Rule 1 was. It's because I tagged him with it on a prior
17   order. That's how he knew. It's okay.

18   So we talked about this a little bit last time. I
19   guess this complaint was originally drafted by somebody else.
20   Then you guys got involved. Right? And you tried to redo it,
21   and so it's there.

22   I looked at it kind of quickly. There's still some
23   things kicking around. Let me just ask -- so there's one of
24   these loan statements that you've been talking about here.
25   Says, "The role ES Family Trust would assume in Trump Media and

1  Technology Group has never been officially disclosed to the
2  Securities and Exchange Commission or to shareholders in
3  Digital World Acquisitions, the special purpose acquisition
4  company, or SPAC, that has proposed merging with Trump's
5  company."
6      I just picked that one out.  I mean, I thought what
7  you were supposed to be doing is identifying stuff you thought
8  was, you know, defamatory, false.  Is that false?
9      **MR. FRENCH:**  Judge, I'm not sure which one you're
10  reading from on that.  Let me look at the amended complaint on
11  that.
12      **THE COURT:**  It's a good question.  Where is it in the
13  amended complaint?  I could put it up on the Elmo, but then I
14  have a bunch of other notes I don't want you to see, because
15  those are my notes.  It says -- I'll just pick one out.  It
16  just seem to me -- it's like how could this be defamatory?
17      "The role ES Family Trust would assume in Trump Media
18  and Technology Group has never been officially disclosed to the
19  Securities and Exchange Commission or to shareholders in
20  Digital World Acquisitions."
21      Are you with me?
22      **MR. FRENCH:**  Yes, I see it now.  It's under the
23  14(a), Your Honor.
24      **THE COURT:**  Is that what it is, 14(a)?
25      **MR. FRENCH:**  Yes, Your Honor.

| | |
|---|---|
| 1 | **THE COURT:** All right. I'm just picking that one out |
| 2 | of the hat, just since we're here and we can talk about it. |
| 3 | Is that false? |
| 4 | **MR. FRENCH:** It is a statement that intended to show |
| 5 | that there's a failure to disclose and that there's malice |
| 6 | between -- behind the reason why it's done that way. And |
| 7 | that's part of the argument, Judge. And that's part of the |
| 8 | argument that was addressed as well in the defendant's motion |
| 9 | to dismiss, which was just filed on Monday, and that remains |
| 10 | pending. |
| 11 | **THE COURT:** Yeah, I know. I've got to drill into it |
| 12 | again. I'm just -- like I said, I took a quick look, and I was |
| 13 | kind of hoping that there would be like a certain -- how many |
| 14 | statements do you have now? Six statements? I think it's six. |
| 15 | Is it six? |
| 16 | **MR. HENTOFF:** Yes, Your Honor. |
| 17 | **MR. FRENCH:** Yes, Your Honor. |
| 18 | **THE COURT:** I was hoping there would be six that |
| 19 | were, like, really obvious, that I could look at and say, okay, |
| 20 | well, that's obvious, that's, you know -- all these privileges |
| 21 | and all this other stuff. But, I mean, in terms of something |
| 22 | that sounded like, oh, yeah, that's defamatory or not, and this |
| 23 | one is kind of -- I'm just trying to figure out what's -- |
| 24 | what's defamatory about that statement? |
| 25 | **MR. FRENCH:** It's untrue. |

1         **THE COURT:** What part?
2         **MR. FRENCH:** That it was not disclosed or the import
3    that it was required to be disclosed as well.
4         **THE COURT:** So the role -- are you saying that it has
5    been disclosed, or are you saying that, well, they didn't need
6    to disclose it, but this is making it sound like they do need
7    to --
8         **MR. FRENCH:** Did not need to and that the statement
9    is not true.  The statement is not true.
10        **THE COURT:** I know.  But what part is not true?
11        **MR. FRENCH:** That -- well, the fact that it has never
12   been officially disclosed.  It does not need to be disclosed,
13   for one.
14        **THE COURT:** Okay. So that's -- yeah.  So I think
15   we're on the same page.  That's what I'm trying to figure out.
16        **MR. FRENCH:** No, Judge.  These aren't statements
17   that, you know, light up the boardwalk or anything.  I
18   appreciate that.  But they are statements that, as presented
19   and published, are untrue, and damages have been alleged in
20   accordance with that.  And there are the other issues,
21   obviously, that have been raised before and raised again in the
22   motion to dismiss, you know, we'll respond to in kind.
23        **THE COURT:** So I'm going try to come up with a -- and
24   it's going to be a really bad question.  But I just want to
25   make sure I've got the feel of this correctly.

1    If I say he didn't smile at me when he saw me in the
2  airport.  Okay.  Well, he doesn't have to smile at me when he
3  saw me in the airport.  Is that defamatory?  Is that what
4  you're saying, is they're making it sound like it had to have
5  been disclosed when it didn't have to be disclosed?
6    **MR. FRENCH:**  Don't know that I can respond to your
7  hypothetical.
8    **THE COURT:**  I don't know that I can either, because
9  it's not a great one.
10    **MR. FRENCH:**  Well, and I can't creatively come up
11  with one right now either.  At this moment, they have a motion
12  to dismiss pending on that issue, and we will reply to that as
13  well in the briefing.
14    **THE COURT:**  Okay.  That's the loan statements.
15  There's the finder's fee thing.
16    Just couple those -- the statement -- the
17  companies -- this is going to be for your side now over here.
18  "The companies also have not disclosed to shareholders or the
19  SEC that Trump Media paid $240,000 finder's fee for helping to
20  arrange the $8 million loan deal with the ES Family Trust."
21    All right.  So not disclosed to shareholders.  So, I
22  mean, do you concede the idea that no filing fee was paid and
23  so the statement in the article that it was paid is false?  I
24  mean, what's your take on that?
25    **MR. HENTOFF:**  We concede that that is the factual

1  allegation that must be taken as true in the complaint, that no
2  finder's fee was actually paid.  And with regard to that, those
3  sets of statements, we have two grounds to dismiss.
4  　　　　　The first is that the plaintiff still has not
5  sufficiently alleged facts to create a plausible inference of
6  actual malice on the part of the post in reporting that.  And
7  the second argument is that because the complaint does not
8  allege that there was an agreement to pay a finder's fee, the
9  assertion that the ultimate payment was not made is not enough
10 to make the challenged statements materially false, because as
11 the article said, the SPAC expert that the Post interviewed
12 said it was the deal that created the potential conflict of
13 interest, and therefore the agreement to pay creates the
14 defamatory gist or sting, not the later fact of payment.
15 　　　　**THE COURT:**  All right.  But maybe going back a step.
16 Basically, the way I'm looking at this, the complaint alleges
17 that the post had access to all the documents and information
18 itself to show that it was false and made the statement anyway,
19 and so, therefore, that's what they're saying is actual malice.
20 　　　　　What's -- talk to me a little bit about that.
21 What's -- what's wrong -- isn't that enough?
22 　　　　**MR. HENTOFF:**  It's not enough, Your Honor.  Because
23 all the -- they're relying on the article, which said that the
24 plaintiffs' attorneys had sent something along the lines of
25 150,000 documents to the authorities to look at, and there's

1  no, you know, plausible specific allegation that the Post
2  actually reviewed all those documents or actually had access to
3  all those documents.  So they're taking an inference from the
4  fact that the Post relied on a couple of documents, and there
5  were an enormous amount of other documents, and they say, well,
6  the Post --
7            **THE COURT:**  That they have.  That they had.  Just
8  hadn't looked at.
9            **MR. HENTOFF:**  Well, I think the complaint says access
10 to.
11           **THE COURT:**  Well, okay.  That's why I'm asking the
12 question.
13           **MR. HENTOFF:**  So taking the complaint as true, what
14 they're saying is, there's access to an enormous quantity of
15 documents.  And that's not the same thing as saying there is a
16 document in front of you that says that in fact the finder's
17 fee payment was made.  And as we point out in the motion, the
18 plaintiff doesn't say, here's a document that exists that shows
19 the finder's fee payment wasn't made.  They just say look at
20 these 150,000 documents.
21           **THE COURT:**  This gets -- I mean, depending on how
22 deep you want to get into.  This is what you do for a living,
23 right, this kind of work?
24           **MR. HENTOFF:**  It is, Your Honor.
25           **THE COURT:**  So if you get to a policy level analysis,

1   is this how the law should work that, okay, well, we have -- I
2   have the stack of papers here that shows what I'm writing in my
3   story is definitely false, but last thing I'd want to do is
4   look at it, because then I -- then you wouldn't have the
5   argument that you just made.  Because it's better not to look
6   and not to know so we can come into court and say, well, you
7   know, we didn't check, we just --
8          **MR. HENTOFF:**  Well, Your Honor, both as a matter of
9   policy and as a matter of case law, there actually is a lot of
10  case law on that.  And I guess we may see something in the
11  opposition brief.  But there's a big difference between being
12  aware of a document or being aware that, hey, there's one more
13  document and it may disprove your assertion and the defendant
14  decides they're not going to look at it versus there are a lot
15  of documents and the allegation is, well, they didn't find it
16  in all those documents.  So the --
17         **THE COURT:**  I see what you mean.  I was using the
18  first example as my question.
19         **MR. HENTOFF:**  Also, if I may, Your Honor, just to
20  elaborate a little bit, you know, as the Court noted at the
21  last status conference, I think the Court said something like
22  the Michelle v. New York Post case kind of lays out a bit of a
23  road map about how things work here.  And the Eleventh Circuit
24  in that case talks about that, ultimately, although it is a
25  standard of, you know, alleging that there's a plausible

1  inference of actual malice, but what has to be plausibly
2  alleged is not that -- it even says it in Michelle, not that
3  the defendant, like, didn't act reasonably.  It's that there's
4  got be a plausible inference that the defendant subjectively
5  believed it was, you know, probably not true what they were
6  saying or words to that effect.
7       **THE COURT:**  Subjectively believed that it was
8  probably not true.
9       **MR. HENTOFF:**  Yeah.  It's either knew it was false or
10 had actual, you know, serious doubts about falsity.  So it's a
11 very difficult standard, even at the Rule 12(b)(6) stage.
12      **THE COURT:**  Uh-huh.
13      **MR. HENTOFF:**  And as a matter of policy, we also have
14 the Eleventh Circuit in the Michelle case saying that's good
15 policy, because of the case that the Court -- I think I heard
16 the Court mentioned as we walked in, Times v. Sullivan.
17      **THE COURT:**  I was teasing you, because that's the
18 case everyone knows.
19            I mean, I haven't drilled into this in any level of
20 detail at all.  I just took a quick look because I knew you
21 were coming in and a couple, you know, just impressionistic
22 things.
23      **MR. FRENCH:**  Judge, again, a lot of discussion here.
24 I think the only response at this point is we're in the
25 pleading stage.  A lot of this subjectivity about who did

1  review what documents, what they may have known, what was the
2  reason for printing this as opposed to that.  That's something
3  we determine in discovery.  That's nothing that we can allege,
4  because we don't have their minds to put into our complaint.
5       **THE COURT:**  That's always the challenge in these
6  cases, with this actual malice idea that they're very well
7  could be actual malice out there in the discovery somewhere
8  that nobody knows about, including the lawyers defending the
9  case.
10      And, you know, how do you handle all this is kind of
11  the -- goes back and forth, and so I'll take a look.  I'll
12  spend more time on it, obviously.  There's -- do you have an
13  opinion on the Florida defamation law being clear or less clear
14  or about the same?  Anybody have any thoughts on Florida
15  defamation law?
16      **MR. FRENCH:**  Are we turning off the recording devices
17  here?
18      **THE COURT:**  We are.  We are.  We'll turn off the
19  record.
20      (Discussion off the record.)
21      **MR. FRENCH:**  I think otherwise, Judge, I talked with
22  counsel briefly before, and I don't believe we have any other
23  changes.  We've got a scheduling order in place.  I don't think
24  we have any other adjustments at this time.  If something comes
25  up, I'm sure we'll pick up the phone and figure out what needs

1  to be done.
2         **THE COURT:**  Okay.  This is -- I mean, we'll just give
3  you a future court date to keep track of everything of -- let's
4  see, toward the end of the summer.  We'll say September 25th,
5  September 25th at 1:30.  If something comes up, you need to
6  come in, come in, we'll talk about it.  Otherwise, I'll process
7  this next round of motions and see where we are.
8         **MR. FRENCH:**  Thank you, Judge.
9         **MR. HENTOFF:**  Thank you, Your Honor.
10        **THE COURT:**  Take care.
11     (Proceedings adjourned at 2:53 p.m.)

# CERTIFICATE OF REPORTER

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

    I, Rebekah M. Lockwood, RDR, CRR, do hereby certify that I was authorized to and did stenographically report the foregoing proceedings; and that the foregoing pages constitute a true and complete computer-aided transcription of my original stenographic notes to the best of my knowledge, skill, and ability.

    I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

    IN WITNESS WHEREOF, I have hereunto set my hand at Tampa, Hillsborough County, Florida, this 26th day of April 2024.

_____
REBEKAH M. LOCKWOOD, RDR, CRR
Official Court Reporter
United States District Court
Middle District of Florida