## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Tampa Division

TRUMP MEDIA & TECHNOLOGY
GROUP CORP.,

       Plaintiff,

v.                                   Case No.: 8:23-cv-1535-TPB-AAS

WP COMPANY, LLC,
d/b/a The Washington Post

       Defendant.

_____/

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Defendant, The Washington Post, defamed Plaintiff, Trump Media & Technology Group, Corp. ("TMTG"), with the help of an ex-employee, causing significant harm to TMTG. Defendant attempts to evade accountability for its egregious conduct by twisting the facts and misrepresenting the content of the documents it supposedly relied on to make false claims and damaging insinuations about TMTG.

Pursuant to this Court's instruction, TMTG has articulated how Defendant acted with actual malice. Defendant falsely asserted that TMTG paid and/or agreed to pay a finder's fee for a loan and failed to disclose it, clearly implying unethical and potentially criminal conduct. Defendant knew these statements were false but maliciously published them anyway as part of a years-long crusade to harm TMTG. Defendant should not be able to shift blame for its wrongful

conduct to third parties, and the factual issues Defendant raises should be addressed after this Court denies Defendant's motion to dismiss.

## BACKGROUND

On May 13, 2023, Defendant, acting in concert with a former employee of TMTG, Will Wilkerson, who was terminated for cause, published a salacious hit piece falsely accusing TMTG of securities fraud and other wrongdoing. 2d Am. Compl. at ¶ 2. Defendant falsely asserted that TMTG paid a finder's fee for a loan and also concealed such purported payment. *Id*. at ¶ 14. Still, Defendant published its defamatory article all across the internet for the purpose of maligning a company connected to President Trump. *Id*. at ¶¶ 15-22

Defendant's statements were materially false. *Id*. at ¶ 27. TMTG had never paid a finder's fee for the subject loan, nor did it agree to pay a finder's fee. *Id*. at ¶ 28. Despite this falsity and being notified of the same, Defendant refused to retract the lies. *Id*. at ¶ 32. Defendant wanted to inflict harm on TMTG and did so. *Id*. at ¶ 42(c); 43.

On December 23, 2024, this Court granted Defendant's motion to dismiss because it found that TMTG did not adequately plead actual malice but invited TMTG to refile. Dkt. No. 68. In accordance with that guidance, TMTG's Second Amended Complaint pleads direct evidence of Defendant's knowledge of the falsity in its statements; specifically, that Defendant simply fabricated an event due to its ill will and intent to harm TMTG. 2d Am. Compl. at ¶ 42. Further, TMTG pled how, to the extent Defendant claims reliance on Wilkerson, this supposed

reliance would not exculpate Defendant. *Id*. Accordingly, having scoped its complaint in accordance with the Court's direction to meet its burden at the pleading stage, TMTG respectfully requests that this Court deny Defendant's motion to dismiss in its entirety.

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Importantly, a motion to dismiss does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. The threshold for surviving a motion to dismiss for failure to state a claim under Rule 12(b)(6) is a "low one." *Farmer v. Humana, Inc.*, 2022 WL 432126, at * 2 (M.D. Fla. 2022) (citing *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A. et al.*, 711 F.2d 989, 995 (11th Cir. 1983)).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Further, courts must construe the complaint liberally, accepting the pleaded facts as true and construing the facts in the light most favorable to the plaintiff. *Yachera v. Westminster Pharmaceuticals, Inc.*, 477 F.Supp.3d 1251, 1262 (M.D. Fla. 2020) (citing *Quality Foods*, 711 F.2d at 994-995)).

## ARGUMENT

### I.     TMTG Sufficiently Stated a Claim for Defamation.

Defamation claims in Florida must allege five elements: "(1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). Defendant contests only one of these factors: actual malice.

Actual malice is defined as "knowledge that it was false or with reckless disregard of whether it was false or not." *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 659 (1989) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–280 (1964)). A plaintiff is entitled to prove a defendant's state of mind through circumstantial evidence, which is often the only way to prove malice in libel cases. *Id*. at 668, 681–82, 683–84. Actual malice exists based on the "sum total of the inferences of actual malice" that may be properly drawn. *Hunt v. Liberty Lobby*, 720 F.2d 631, 645–46 (11th Cir. 1983). Although "a showing of ill will, alone, cannot establish actual malice . . . ill will or motive, when combined with other evidence, may amount to actual malice." *Don King Prods., Inc. v. Walt Disney Co.*, 40 So. 3d 40, 44 (Fla. 4th DCA 2010). Here, the Second Amended Complaint alleges facts sufficient to "give rise to a reasonable inference that the false statement was made with knowledge that it was false or with reckless disregard of whether it

was false or not." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (internal citations omitted).

### a.    Defendant fabricated an event.

As an initial matter, because this case involves a complete and utter fabrication, Defendant is not protected from its lies. Defendant effectively invented two lies about TMTG. First, two statements claiming that TMTG paid a $240,000 finder's fee for a loan deal. 2d Am. Compl. at ¶ 14. Second, one statement that TMTG failed to disclose that finder's fee to shareholders and the SEC. *Id*. Defendant simply fabricated both events. TMTG did not pay a finder's fee, nor was there an agreement to pay such a finder's fee. *Id*. at ¶ 28. Thus, TMTG did not fail to disclose a finder's fee either, as there was nothing to disclose. Instead, Defendant fabricated these events. While Defendant now professes its good faith in not knowing that its lies were false, the Supreme Court has noted that such "[p]rofessions of good faith will be unlikely to prove persuasive . . . where a story is fabricated by the defendant . . . ." *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). The Seventh Circuit built on this holding in *Carson v. Allied News Co.*, 529 F.2d 206 (7th Cir. 1976).  In *Carson*, the Seventh Circuit noted that "[t]he defendants in fabricating . . . 'facts' necessarily entertained serious doubts as to the truth of the statements and had a high degree of awareness of their probable falsity." *Id*. Thus, the plaintiff was entitled to a jury determination. *Id*.

Likewise, here, TMTG is entitled to a jury determination of whether Defendant acted with actual malice. Defendant falsely asserted as fact that TMTG

paid a finder's fee for a loan. Defendant then enhanced that lie, claiming TMTG failed to disclose the finder's fee. In doing so, Defendant must have acted with serious doubts about the veracity of its claims because its story was a complete fabrication. Defendant claimed, in the subject article, that internal documents from TMTG provided Defendant with the basis to state that TMTG paid a finder's fee and failed to disclose it. 2d Am. Compl. at ¶ 42(a). Defendant also admitted that it did, in fact, review these internal documents. *Id*. Yet, such internal documents *did not* include *any* documents showing that TMTG paid or agreed to pay a finder's fee or failed to disclose that finder's fee, which, due to Defendant's review of the documents, Defendant knew. If a finder's fee were paid, there would have been a paper trail. *Id*. A third-party invoice, cited by Defendant to support its claims regarding the finder's fee, gives no indication that there was an agreement to pay a finder's fee, that the fee was paid, or that TMTG failed to disclose anything. *Id*. at ¶ 42(a) n.3.  Likewise, the other document cited by the Defendant, an *unsigned* and *undated* draft referral agreement, does not support the allegations. Defendant would know that such draft documents are not indicative of an agreement and are certainly not indicative of a failure to disclose.

Defendant argues that the subject third-party invoice and the draft referral agreement provided it with a subjective belief that TMTG paid a finder's fee. Dkt. No. 74 at 11-14. These protestations of good faith are unpersuasive, especially at this stage in the proceedings. As pled, the invoice did not provide "evidence of an agreement to pay a fee, much less of an actual payment." 2d Am. Compl. at ¶ 42(a) n.3. Nor would the mere sending of a draft agreement by a third party show that

TMTG agreed to pay a finder's fee. Therefore, it is difficult to imagine how Defendant could have relied on this invoice or agreement for its false assertions that TMTG paid a finder's fee or failed to disclose that payment when the documents themselves did not actually say what Defendant self-servingly claims they said. As the Second Circuit has held, "one cannot fairly argue his good faith or avoid liability by claiming that he is relying on the reports of another if the latter's statements or observations are altered or taken out of context." *Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2d Cir. 1969). Here, Defendant took these subject documents out of context, distorting what they actually said in order to advance a false narrative. Thus, Defendant cannot avoid liability at the motion to dismiss stage. This is again especially true for Defendant's statement that TMTG failed to disclose a finder's fee, for which, importantly, Defendant does not even attempt to argue that any invoices or agreements provided a basis.

**b.    Defendant cannot avoid liability by claiming reliance on Wilkerson.**

To the extent Defendant claims reliance on Wilkerson for any of its lies, this does not save Defendant. The subject article does not claim that Wilkerson told Defendant that TMTG paid the finder's fee or failed to disclose the finder's fee. Instead, the subject article merely says that Wilkerson provided documents, including a referral fee agreement and invoice. Importantly, the subject article provides *zero* basis for any argument that Defendant relied on Wilkerson for its specific assertion that TMTG failed to disclose a finder's fee. Thus, Defendant's

7

claimed reliance on Wilkerson is contrary to the subject article itself; the extent of Defendant's reliance on Wilkerson, if any, should be subject to discovery.

Still, if the Court finds it appropriate to consider Defendant's supposed reliance on Wilkerson, this still does not protect Defendant. Wilkerson was an inherently unreliable source. In *Hunt v. Liberty Lobby*, the defendant relied on a source that was directly at odds with the plaintiff. *Hunt*, 720 F.2d at 645. There were "obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *Id*. (quoting *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968)). Thus, it remained a question for the jury as to whether the defendant satisfactorily followed up on the doubts they had about the source. *Id*. This was coupled with the fact that the news story was not "hot." *Id*. "When a story is not 'hot news,' 'actual malice may be inferred when the investigation ... was grossly inadequate in the circumstances.'" *Id*. (quoting *Vandenburg v. Newsweek Inc.*, 441 F.2d 378, 380 (5th Cir. 1971)). A defendant cannot "feign ignorance" in such situations. *Hunt*, 720 F.2d at 644 (quoting *Gertz v Robert Welch, Inc.*, 680 F.2d 527, 538 (7th Cir. 1982)).

Here, Defendant's supposed source, Wilkerson, was likewise directly at odds with TMTG. TMTG terminated Wilkerson for cause for his unauthorized disclosure of TMTG's confidential information. 2d Am. Compl. at ¶ 9. Wilkerson then publicly shopped negative and accusatory stories about TMTG. *Id*. This is something that Defendant knew, as it had published sympathetic articles about Wilkerson. *Id*. at 42(b). Defendant wrote about Wilkerson being "fired," and being a "threat" to TMTG. *Id*. Even before this, Wilkerson's bad blood with TMTG was widely publicized. The Miami Herald published an article including at least six

8

disparaging quotes that Wilkerson made about TMTG. *Id*. Also as in *Hunt*, the news story here was not "hot" news. Still, Defendant relied on its troubled source without conducting any sort of investigation into the reliability of the information he was allegedly providing beyond after a cursory inquiry to TMTG after the story was effectively already written. Simply put, Defendant avoided the truth.

While "failure to investigate will not alone support a finding of actual malice," "purposeful avoidance of the truth is in a different category." *Harte-Hanks*, 491 U.S. at 692 (quoting *St. Amant*, 390 U.S. at 731-33). Here, Defendant had documents that did not show what Defendant claimed they showed and utilized an unreliable source. Any reasonable person acting in good faith in such a scenario would have doubts. Defendant, however, because of its intent to harm TMTG, willfully avoided the truth. Accordingly, as in *Hunt*, actual malice is, at the very least, a question for the jury.

Defendant's reliance on *Harvey v. CNN, Inc.* does not change this conclusion. Dkt. No. 74 at 15. In *Harvey*, the defendant disclosed the issues with its supposed source and characterized the subject statements as "claims" that the source made. *Harvey v. CNN, Inc.*, 48 F.4th 257, 274 (4th Cir. 2022). Here, Defendant did not even disclose in the subject article that TMTG terminated Wilkerson for cause. Further, Defendant presented its statements as fact rather than as claims of Wilkerson.

Defendant's box-checking attempt to contact TMTG does not change this conclusion either. As pled, Defendant intended to inflict harm on TMTG. 2d Am. Compl. at ¶ 42(c). As the subject article makes clear, Defendant had disregarded TMTG's denials in the past and subsequently disregarded TMTG's retraction

request.  2d Am. Compl. Ex. A. Thus, Defendant was not actually searching for the truth, and its self-serving assertions to the contrary are not entitled to any deference at this stage. And the fact that Defendant completely rejected TMTG's retraction demand, 2d Am. Compl. at ¶ 32, is additional evidence of actual malice. *See Nunes v. Lizza*, 12 F.4th 890, 901 (8th Cir. 2021) ("Republication of a statement after the defendant has been notified that the plaintiff contends that it is false and defamatory may be treated as evidence of reckless disregard.") (internal citations omitted).

Defendant attempts to distinguish this case from *Coomer v. Byrne* by arguing this is not a case where it "ma[de] no effort to contact corroborating sources." Dkt No. 74 at 19 (quoting *Coomer v. Byrne*, No. 8:24-cv-8, 2025 WL 90097, at *7 (M.D. Fla. Jan. 14, 2025)). This, however, is not accurate. While Defendant made one attempt to contact TMTG, it does not appear that Defendant contacted anyone other than Wilkerson, a dubious source, to corroborate its allegations.

Furthermore, Defendant puzzlingly argues it "went to great lengths in an effort to include TMTG's position." One attempt to contact TMTG is not "great lengths." *See Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 24 (1st Cir. 2018) (the defendant "reached out *repeatedly* to secure an interview.") (emphasis added).

### c.    Additional circumstantial evidence indicates Defendant's actual malice.

Furthermore, Defendant acted with ill will and intent. First, Defendant's employee, Drew Harwell, who drafted the subject article, harbors extreme ill will against TMTG. This is evidenced in the numerous false and misleading articles

Harwell has published about TMTG and those affiliated with TMTG. 2d Am. Compl. at ¶ 42(f). Harwell's ill will was apparent in the subject article as he included an irrelevant story about an "investor," to prop up the false idea that TMTG was engaged in securities fraud. *Id*. at ¶ 25. Defendant did so because it wanted "to sensationalize the news and injure TMTG's business reputation and financial standing." *Id*. at ¶ 42(c).

Harwell even went so far as to brag that he "repeatedly registered fake accounts on" TMTG's website. *Id*. at ¶ 42(f). The fact that Harwell attempted to disrupt TMTG's business shows that his actions went well beyond mere "critical commentary." Dkt. No. 74 at 16. Defendant's argument that Harwell was actually trying to help TMTG by registering these fake accounts is simply incredible and not entitled to any deference. *Id*. at 17 n.7.

While TMTG acknowledges that ill will alone does not amount to actual malice, TMTG does not ask the Court to view each factor *alone* but as a whole. "Evidence of ill will *combined* with other circumstantial evidence indicating that the defendant acted with reckless disregard of the truth or falsity of a defamatory statement may also support a finding of actual malice." *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 183 (2d Cir. 2000) (citing *Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987)) (en banc) (emphasis added). The combination of TMTG's allegations is sufficient to "raise a 'reasonable expectation that discovery will reveal evidence' of actual malice." *Lizza*, 12 F.4th at 901 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). *See also Hunt*, 720 F.2d at 646 (holding that the "sum total of the inferences" support a finding of actual malice).

11

Notably, in *Zimmerman v. Buttigieg*, 521 F. Supp. 3d 1197 (M.D. Fla. 2021), this Court seemingly accepted lesser allegations of actual malice at the pleading stage. In *Zimmerman*, the plaintiff argued it pled actual malice because (1) the defendant knew he was acquitted of all charges and, therefore, did not engage in gun violence as the defendant claimed; (2) a film and book came out showing that the defendant's statements were false; (3) the plaintiff sued for malicious prosecution; and (4) the defendant had political animus against the plaintiff. *Zimmerman v. Buttigieg*, No. 8:20-cv-01077, Dkt. No. 20 (M.D. Fla. Jun. 26, 2020). The defendant argued (1) its ill will was not evidence of actual malice; (2) the book and film were released by a "conspiracy theorist"; (3) the plaintiff's lawsuit was a self-serving denial; and (4) it relied on the reporting of others. *Zimmerman v. Buttigieg*, No. 8:20-cv-01077, Dkt. No. 17 (M.D. Fla. May 29, 2020). This Court took the plaintiff's pleadings as true and found that the plaintiff had sufficiently pled actual malice. *Zimmerman*, 521 F. Supp. 3d at 1214. Similarly, here, internal documents did not show that TMTG paid or agreed to pay a finder's fee or failed to disclose that payment, TMTG denied Defendant's assertions, and Defendant has ill will against TMTG. Thus, the combination of evidence, as was the case in *Zimmerman*, is sufficient.

### d.    Defendant's remaining arguments are unavailing.

Defendant's final arguments rely on *Lemelson* and *Michel*. Dkt. No. 74 at 18-19. In *Lemelson*, however, the plaintiff waived his fabrication argument, and the defendant "repeatedly" attempted to contact the plaintiff, and also attempted to

verify with a third party, the SEC. *Lemelson*, 903 F.3d at 25. Here, there has been no such waiver, and, as discussed, Defendant's fact-checking attempts did not go nearly as far. Furthermore, it does not appear that Defendant attempted to contact any third parties regarding the veracity of the subject defamatory statements.

Next, in *Michel*, the Eleventh Circuit discussed examples of providing sufficient adverse positions to avoid liability, such as the defendant including "that its primary source was 'not an unimpeachable source of information,'" and casting doubt on its own primary source "by quoting other individuals calling the source a 'liar' and a 'con man.'" *Michel*, 816 F.3d at 703. Here, Defendant provided no disclaimer regarding Wilkerson and his "bad blood" with TMTG. 2d Am. Compl. at ¶ 42(b). Thus, Defendant failed to "reduce[] the risk that readers will reach unfair (or simply incorrect) conclusions," as was the case in *Michel*. *Michel*, 816 F.3d at 703.

Accordingly, at this stage, TMTG has satisfied its burden. Defendant essentially suggests this Court cannot find liability where it recklessly fabricated false statements because it was a mistake.  Accepting such an argument would turn decades of Supreme Court precedent on its head, eliminating the reckless disregard standard entirely. The purpose of the actual malice standard is not to give prominent journalists a free pass to say what they like about public figures, so long as they claim to have honestly believed their own reckless fabrications. As Chief Justice Warren observed, "[f]reedom of the press under the First Amendment does not include absolute licenses to destroy lives or careers." *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 170 (1967) (Warren, C.J., concurring).  Defendant is

not protected from its knowing or reckless lies about TMTG. Therefore, TMTG respectfully requests that this Court deny Defendant's motion to dismiss.

## II.    TMTG Sufficiently Stated a Claim for Conspiracy.

Because TMTG has sufficiently pled a claim for defamation, its conspiracy claim is likewise sufficient. Defendant argues that this claim violates Florida's single publication rule; however, Florida appellate courts have only applied this rule in situations where the underlying defamation claim has failed. *Block v. Matesic*, No. 21-cv-61032, 2023 WL 3816693, at *6 n.5 (S.D. Fla. Jun. 5, 2023).

Defendant's only remaining argument is that TMTG did not sufficiently plead an agreement. Dkt. No. 74 at 20. This argument also fails. In *Primerica Financial Services, Inc.*, the Southern District of Florida, in applying Florida law, found that allegations naming the alleged conspirators, that they performed overt acts, and did so in furtherance of the conspiracy with intent to cause harm was sufficient at the pleading stage. *Primerica Financial Serv., Inc. v. Mitchell*, 48 F. Supp. 2d 1363, 1369-70 (S.D. Fla. 1999). Likewise, here TMTG named the conspirators (Defendant, Wilkerson, and other third-party media companies), that Defendant performed an overt act by publishing the article, and that Defendant did so in furtherance of the conspiracy and to harm TMTG. 2d Am. Compl. at ¶¶ 45-49. Accordingly, TMTG has met its burden at the pleading phase.

**CONCLUSION**

For the foregoing reasons, TMTG respectfully requests that this Court deny

Defendant's motion to dismiss in its entirety.


Dated: February 17, 2025                                    Respectfully submitted,

                                                            */s/ Jared J. Roberts*
                                                            Jared J. Roberts
                                                            Fla. Bar No. 1036550
                                                            Stephen B. French
                                                            Fla. Bar No. 0078761
                                                            Jesse R. Binnall, *pro hac vice*
                                                            BINNALL LAW GROUP, PLLC
                                                            717 King Street, Suite 200
                                                            Alexandria, Virginia 22314
                                                            Phone: (703) 888-1943
                                                            Fax: (703) 888-1930
                                                            stephen@binnall.com
                                                            jesse@binnall.com
                                                            jared@binnall.com

                                                            *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on February 17, 2024, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Jared J. Roberts
Jared J. Roberts
Fla. Bar No. 1036550

*Attorney for Plaintiff*