# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TRUMP MEDIA & TECHNOLOGY GROUP CORP.,

     Plaintiff,

vs.

Case No: 8:23-cv-01535-TPB-AAS

WP COMPANY LLC d/b/a The Washington Post,

     Defendant.

_____/

## DEFENDANT'S MOTION TO COMPEL DISCOVERY FROM PLAINTIFF

Plaintiff Trump Media & Technology Group Corp. ("TMTG") sued The Washington Post ("The Post") for defamation arising out of a May 2023 article titled "Trust linked to porn-friendly bank could gain a stake in Trump's Truth Social" (the "Article"). The Court denied The Post's motion to dismiss TMTG's Second Amended Complaint in June 2025, and ordered that discovery commence shortly after. Despite that Order and repeated discussions between the parties, TMTG has failed to commence document production or sufficiently supplement its written discovery responses to give The Post some of the most basic information necessary to move this case forward. This includes, despite TMTG's astronomical $3.78 billion damages demand, its failure to provide to The Post essential disclosures about its claimed damages. Pursuant to Federal Rules of Civil Procedure 26, 33, 34, and 37, The Post files this motion to compel TMTG to provide updated Initial Disclosures—including damages disclosures; to further update its

Interrogatory Responses; and to produce documents, as previously ordered by the Court.

## **BACKGROUND**

The case was initiated in May 2023 and removed to federal court shortly after.  The parties exchanged Initial Disclosures pursuant to Rule 26(a)(1) in November 2023.[1]  In March 2024, the Court granted The Post's first motion to dismiss.  TMTG filed its First Amended Complaint, which The Post moved to dismiss. In July 2024, while that motion was pending, the parties exchanged initial discovery requests—interrogatories and requests for production.  The parties exchanged responses to those discovery requests in September 2024.[2]  Three months later, the Court granted The Post's second motion to dismiss without prejudice.  TMTG filed its Second Amended Complaint on January 13, 2025, which The Post moved to dismiss.  The Court denied that motion on June 6, 2023.

The Court has been clear that it expected discovery to begin moving quickly after ruling on the last motion to dismiss and expressly made Orders to that effect. On April 1, 2025, the Court ordered that the document production commence 21 days following entry of an order on the motion to dismiss.  April 1, 2025 Order, ECF No. 77.  Under that Order, because The Post's motion to dismiss the Second

---

[1] TMTG's November 20, 2023 Rule 26(a)(1) Initial Disclosures are attached as Exhibit A.

[2] TMTG's September 27, 2024 Objections and Responses to Defendant's First Set of Interrogatories ("Interrogatory Responses") are attached as Exhibit B. Its September 27, 2024 Objections and Responses to Defendant's First Set of Requests for Production ("RFP Responses") are attached as Exhibit C.

Amended Complaint was denied on June 6, 2025, document production was set to begin on June 27, 2025.  *Id.*; *see* Order Denying Def.'s Mot. to Dismiss Second Am. Compl., ECF No. 83 (filed June 6, 2025).

On June 19, 2025, the Court also entered an updated Case Management Order with expert disclosures beginning on November 14, 2025 (in three months) and setting the close of discovery for February 28, 2026 (in six months).  *See* Case Mgmt. Order, ECF No. 88.  Around this time, counsel for TMTG requested a brief extension before the parties commenced their document productions, and The Post agreed.

On June 26, 2025, The Post attempted to schedule a meet and confer to discuss (relevant here) the initial production and discovery responses.[3]  TMTG was unable to confer until July 11, 2025, and had not made an initial production at that point.

At the July 11, 2025 videoconference meet and confer The Post alerted TMTG to numerous deficiencies in its Initial Disclosures, Interrogatory Responses, and RFP Responses.  That discussion is memorialized in the July 18, 2025 letter (attached as Exhibit D).  TMTG agreed to supplement its Initial Disclosures and Interrogatory Responses by July 25, 2025, and to make an initial document production by July 30, 2025.

TMTG missed its July 25, 2025 deadline to supplement its discovery

---

[3] The Post's email correspondence with TMTG described in this motion is attached as Exhibit E.

responses. The parties conferred again by videoconference on July 29, 2025, during which counsel for TMTG represented that it did not know when it would supplement its Initial Disclosures or Interrogatory Responses, or when it would begin making productions, as their client had not provided them with the documents or information necessary to do so. The Post also informed TMTG that it was unwilling to postpone document productions any longer, and commenced its own productions, notwithstanding TMTG's delays.

On July 30, 2025, The Post requested that TMTG provide updated discovery responses and begin document production by 12:00 ET on August 4, 2025. On August 4, 2025 TMTG served a partial supplement to its Initial Disclosures and a partial supplement to some, but not all, Interrogatory Responses—neither of which fully address the issues The Post had identified. As of the time of filing this motion, TMTG has not provided any additional supplements to its discovery responses or produced any documents whatsoever.

## DISCUSSION

A party may discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The term 'relevant' is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Garcia v. Aeroflex Mgmt. Corp.*, 2015 WL 7890095, at *3 (M.D. Fla. Dec. 4, 2015) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

4

Under Federal Rule of Civil Procedure 37(a)(1), "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "If the Motion is granted, the Court must require the non-moving party whose conduct necessitated the Motion, to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Rivera v. Deer Run Realty & Mgmt., Inc.*, 2016 WL 11566325, at *1 (M.D. Fla. June 15, 2016).

In addition, pursuant to Rule 37(b), "[t]he Court may also impose discovery sanctions, including dismissal, when a party fails to obey an order to provide or permit discovery." *Id.*

> Rule 37(b)(2) provides a range of sanctions that a district court may impose upon parties and their attorneys for failure to comply with the court's discovery orders. It provides that the court, in its discretion, may impose, among others, the following sanctions: (1) the court may order that designated facts related to the violated order be considered established in accordance with the claim of the party obtaining the sanctions order; (2) the court may refuse to permit the violating party to support or oppose designated claims or defenses of the party obtaining the sanctions order; (3) the court may strike any pleadings or any parts of the pleadings of the violating party, stay the proceedings, or even dismiss the action or render a judgment of default against the violating party; and (4) the court may treat the violation as contempt of court.

*Id.* "The failure to comply with the Court's order need not be willful or in bad faith unless the court 'imposes the most severe sanction—default or dismissal.'" *CS Bus. Sys., Inc. v. Schar*, 2017 WL 9939116, at *1 (M.D. Fla. Sept. 5, 2017) (citation omitted) (awarding 37(b)(2) sanctions). In addition, if a motion is granted under Rule 37(b)(2), "[t]he Court must also award reasonable attorney's fees against the

party failing to act." *Rivera*, 2016 WL 11566325, at *2 (citing Fed. R. Civ. P. 37(b)(2)(C)).

## I.    TMTG Should be Compelled to Correct Its Deficient Initial Disclosures.

TMTG's damages disclosure contained in its Initial Disclosures is deficient in two ways.  First, it is incomplete and impermissibly vague.  Second, TMTG has failed to timely update the disclosure (or its damages demand more generally) even though the case has been substantially narrowed after the initial disclosures were served in November 2023.

Rule 26(a)(1)(A)(iii) requires Plaintiff to disclose "a computation of each category of damages claimed by the disclosing party."  *See Partners Insight, LLC v. Gill*, 2025 WL 1137257, at *2 (M.D. Fla. Mar. 3, 2025) ("[U]nder Rule 26, a defendant is entitled to a specific computation of plaintiff's damages, and is entitled to have made available for inspection and copying the documents and other evidentiary material on which such computation is based." (cleaned up)).  TMTG has claimed an incredible $3.78 billion in damages in this case, but its damages disclosure is facially vague and deficient.  TMTG has stated only that:

> Plaintiff seeks compensation for the defamatory statements made by Defendant and disseminated broadly that has caused Plaintiff to suffer damages including, but not limited to, loss and injury to Plaintiff's business, brand, and goodwill; lost future earnings capacity; damage and injury to Plaintiff's reputation and standing in the community (past and future); and costs Plaintiff will incur throughout the course of this litigation.

Initial Disclosures, Ex. A, at 3.

TMTG's vague and boilerplate description of its alleged damages fails to

satisfy its initial disclosure obligations.  TMTG states only categories of the types of damages it claims: "loss and injury to Plaintiff's business, brand, and goodwill; lost future earnings capacity; damage and injury to Plaintiff's reputation and standing in the community (past and future); and costs."  But "to comply with the initial disclosure requirements of Rule 26, parties must perform 'some analysis,' and cannot rely on general statements."  *Boldstar Tech., LLC v. Home Depot USA, Inc.*, 2008 WL 11320010, at *2 (S.D. Fla. Feb. 28, 2008) (citation omitted).  Courts thus grant motions to compel more fulsome damages disclosures when parties provide similar disclosures to TMTGs.  For example:

- The court in *Neira v. Gualtieri*, 2024 WL 865883, at *7 (M.D. Fla. Feb. 29, 2024), found insufficient a damages disclosure that "provided no computation of any category of damages claimed" and ordered the plaintiff to respond to an interrogatory seeking the basis of the plaintiff's damages claim with: "(1) the type of damage, (2) the amount sought, (3) the factual basis supporting the claim for damages, and (4) a detailed computation of how she arrived at the amount sought, including any mathematical formula used."

- The court in *MC3 Investments LLC v. Local Brand, Inc.*, 2023 WL 10407124, at *2 (N.D. Fla. July 11, 2023), evaluated a damages disclosure that stated: "According to my current calculations, the lost sales or licensing fees are down 78%, resulting in a loss of around $79,855 for the last four months. Due to on-going trademark infringement by [Plaintiff], the actual

damages from lost sales and licensing fees continue to accrue on a daily basis." The court found those disclosures insufficient, as a plaintiff must provide a "computation of each category of damages"; it cannot provide only "an estimate of actual damages sustained." *Id.* at *6.

- The court in *Frontline Med. Assocs., Inc. v. Coventry Health Care*, 263 F.R.D. 567, 570 (C.D. Cal. 2009) held that a damages disclosure of "consequential damages and damages to reputation" was "clearly deficient" as it contained "no computation whatsoever as to either category."

- The court in *Aetna Inc. v. Blue Cross Blue Shield of Michigan*, 2012 WL 4355545, at *1 (E.D. Mich. Sept. 24, 2012) addressed a damages disclosure that identified "(a) lost profits ranging from approximately $77.7 million to $136 million ($233.1 million to $408 million after trebling); (b) lost future profits ranging from approximately $126 million to $ 283.5 million ($378 million to $850.5 million); and (c) diminution in business value of approximately $344.25 million (approximately $1.033 billion after trebling)." The court granted a motion to compel supplementation of this disclosure, including requiring that the plaintiff "identify the calculations it performed . . . to arrive at the dollar amounts shown in its initial damages disclosure." *Id.* at *2.

TMTG's damages disclosure is equally or more inadequate than these examples, as it does not provide estimates of damages for each category or computations of any category of damages, nor does it give The Post any indication

of how TMTG reached its staggering (and oddly specific) $3.78 billion damages figure.  TMTG similarly failed to provide this information in response to interrogatories (*e.g.* Interrog. No. 4, *see* Ex. B, at 5-6) in which The Post "independently requested a calculation of damages"—a compound failure courts find "especially troubling." *Am. Prop. Constr. Co. v. Sprenger Lang Found.*, 274 F.R.D. 1, 9 (D.D.C. 2011) (citation omitted); *see also Dix v. Coca-Cola Co.*, 2022 WL 21295779, at *1 (M.D. Fla. Oct. 22, 2022) (finding that response "the information is unknown" to an interrogatory seeking damages calculation was "unacceptable" as "Rule 26(a)(1) requires parties to provide a computation of each category of damages in their initial disclosures, along with the documents upon which each computation is based" and a "party is not excused from making its disclosures by an inability to complete its investigation").  This information is essential for The Post's future discovery requests, expert analysis, and preparation of its defense—and is clearly required by the Rule.

In addition, TMTG has failed to comply with its obligations to provide an *updated* damages disclosure.  The Court's earlier dismissal Orders narrowed the case significantly since the original complaint was filed.  *See, e.g.*, Order Granting Def.'s Mot. to Dismiss Am. Compl. at 7-14, ECF No. 68 (concluding that TMTG failed to allege falsity as to multiple statements).  Following those Orders, only two statements in the Article remain at issue; seven others have been dismissed or dropped from the case.  As a result, the astronomical monetary demand coupled with the opaque disclosure provided prior to filing the operative complaint is

9

outdated and does not reflect the limited surviving claims.

TMTG also has a duty to timely update its disclosures, including its Initial Disclosures. *See* Fed. R. Civ. P. 26(e). But despite the narrowing of the case, TMTG has failed to timely revise any of its damages disclosures in light of its narrowed scope. Undersigned counsel have repeatedly asked TMTG's counsel to do so. TMTG's counsel have repeatedly agreed that this would be appropriate, but TMTG has not followed through. *See* July 18, 2025 Letter, Ex. D, at 2; Pl.'s Suppl. Rule 26(a)(1) Disclosures ("Supplemental Disclosures," attached as Exhibit F) (failing to supplement the damages disclosures).

TMTG should be ordered to update its Initial Disclosures to provide the specific, required calculation information on its claimed damages, updated in a way that is commensurate with the narrowed scope of case. *See* Fed. R. Civ. P. 26(a)(1), 26(e), 37(a).

## II.    TMTG Should Be Compelled to Produce Documents.

Pursuant to Federal Rule of Civil Procedure 34, a party is permitted to request documents "within the scope of Rule 26(b)" that are within "the responding party's possession, custody, or control." "The Court maintains broad discretion under Rule 26 to grant or deny a motion to compel discovery." *In re Disposable Contact Lens Antitrust Litig.*, 2022 WL 21295818, at *2 (M.D. Fla. Dec. 23, 2022).

Although the parties have now been engaged in active discovery for several weeks and TMTG has repeatedly promised to provide documents in meet and

confer conversations, TMTG has not yet produced a single document.  TMTG's failure to do so violates the Court's April 1, 2025 Order that required document productions to begin by June 27, 2025.  In addition, TMTG should be ordered to produce documents over which it has asserted objections that are without merit.

### A.    TMTG Has Not Produced Any Documents, Including Those It Agreed to Produce.

TMTG's failure to produce any documents violates the Court's April 1, 2025 Order.  Specifically, in that Order, the Court's instructed the parties to "commence document production within 21 days of the Court's order" on the motion to dismiss.  *See* April 1, 2025 Order, ECF No. 77.  The Court issued its Order on The Post's third motion to dismiss on June 6, 2025, so the deadline for the parties to commence their document productions was June 27, 2025.  TMTG has now missed this deadline by more than a month.

TMTG has no justification for this delay:  It agreed to produce documents responsive to dozens of RFPs in its September 2024 RFP Responses;[4] it has been on notice since at least April that document production would begin shortly after the Court ruled on the motion to dismiss; the Court has entered a Protective Order governing the confidentiality of documents produced; and The Post has begun producing documents.  *See, e.g.*, *United States v. Siemens Gov't Techs., Inc.*, 2025 WL 1555147, at *1 (M.D. Fla. June 2, 2025) (granting motion to compel document

---

[4] TMTG agreed to produce documents responsive to RFP Nos. 1-18, 20-25, 28-30.  *See* RFP Responses, Ex. C.

production after party missed the deadline, despite party's explanation that it "[did] not raise any objections to Defendants' discovery; rather, [it] merely stat[ed] that it is in the process of making its production").

The Post cannot defend itself in this case without any documents from TMTG.  The Post accordingly requests that the Court order TMTG to comply with its April 1, 2025 Order, and begin document production immediately.  *See* Fed. R. Civ. P. 37(b).

### B.    TMTG's Objections to Producing Documents in Response To Several RFPs Should be Overruled.

In addition, TMTG has refused to produce documents in response to several RFPs based on objections that lack merit.  The Post raised these requests at the July 11, 2025 meet and confer and in subsequent communications.  *See* July 18, 2025 Letter, Ex. D, at 5-6.  To date, TMTG has not produced or agreed to produce documents responsive to these requests, which properly seek relevant discovery pursuant to Rules 26 and 34.  The Post respectfully requests the Court order TMTG to begin producing documents responsive to the following two RFPs:

### 1.    RFP 26

The Post requested "All Documents and Communications from January 2021 to present relating to any financial valuation of TMTG, including, but not limited to, valuation reports, investor prospectuses, or private placement memoranda."  Instead of agreeing to produce these documents, TMTG repeated its response to an interrogatory, stating that "[S]ince March 2024, TMTG has been a publicly traded company with a 'valuation' set by the market. With respect to when

TMTG was private, prior to closing, there is a publicly available valuation report that was commissioned by DWAC's board." *See* RFP Responses, Ex. C, at 17-18. TMTG objected on relevance grounds and on the basis that responding to this request would be disproportionate to the needs of the case.

These objections are not valid. The paltry information TMTG did provide on its damages claim (discussed *supra*) states that TMTG suffered damages from "loss and injury to Plaintiff's business, brand, and goodwill; lost future earnings capacity." Financial valuations and related documents and communications are critical to The Post's ability to defend against TMTG's damages claim, and to evaluate what alleged harm TMTG actually experienced (if any)—and they go beyond TMTG's single valuation report and mere reference to its market valuation. And TMTG's objection that the production of communications and documents related to its valuation is disproportionate to the needs of the case is not well-taken in light of its $3.78 billion damages demand. In order to defend itself against such extreme liability, The Post is plainly entitled to expansive discovery on this topic.

### 2.    RFP 31

RFP 31 requests all documents "produced by and to TMTG from January 2021 to present in the case of *Digital World Acquisition Corp. v. Arc Global Investments II, LLC*, Case No. 2024 CA 001061 NC, filed in the Circuit Court of the Twelfth Judicial Circuit, Sarasota County, Florida." In its September 2024 response, TMTG stated that discovery had not yet commenced in that case and that documents would be covered by a protective order governing document

production in that matter.  *See* RFP Responses, Ex. C, at 20-21.  It also objected on relevance grounds and noted that the "complaint speaks for itself."

As for the objections, the request seeks more than just the complaint; it seeks documents produced in that litigation.  The claims in that case involve allegations that suggest there were reasons other than the Article for the delay of TMTG's merger with DWAC, any harm to TMTG's reputation, and other bases on which TMTG has claimed damages in this case.  *See* Second Am. Compl., *Trump Media & Tech. Grp. Corp. v. Arc Glob. Invs. II, LLC,* Case No. 2024 CA 001061 NC (Fla. Cir. Ct. Sept. 3, 2024), ECF No. 142; Def.'s Ans., Counterclaim, & Third-Party Compl., *Arc Glob. Invs. II, LLC,* Case No. 2024 CA 001061 NC (Fla. Cir. Ct. Oct. 15, 2024), ECF No. 231.  Documents produced in that case therefore are likely to provide support for The Post's damages defense.

TMTG's additional objections are both baseless and moot.  The publicly available docket in that matter indicates that the parties have begun producing documents in that case.   *See, e.g.*, Mot. to Compel at 3, *Arc Glob. Invs. II, LLC,* Case No. 2024 CA 001061 NC (Fla. Cir. Ct. June 13, 2025), ECF No. 705.  In addition, during the July 11, 2025 conference, TMTG's counsel agreed that nothing in the protective order should prevent TMTG from producing, at a minimum, TMTG's own documents that it has produced in that action, and agreed to work to reproduce such documents here.  However, once again, TMTG has failed to follow through.

The Post requests that the Court order TMTG to begin producing documents

responsive to RFPs 26 and 31 immediately.  *See* Fed. R. Civ. P. 37(a).

## III.     The Court Should Order TMTG to Correct Its Deficient Interrogatory Responses.

Interrogatories each "must, to the extent it is not objected to, be answered separately and fully in writing under oath," with any grounds for objecting "stated with specificity." Fed. R. Civ. P. 33(b)(3)-(4).  "In answering interrogatories, a party is charged with knowledge of what its agents know, or what is in records available to it, or even, for purposes of Rule 33, information others have given it on which it intends to rely in its suit." 8B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2177 (3d ed., updated May 2025).

"Where a party objects to an interrogatory or gives an answer that is improper or incomplete, the requesting party may file a motion to compel." *Noshirvan v. Couture*, 2024 WL 4213712, at *3 (M.D. Fla. Sept. 17, 2024) (citation omitted).  "[T]he proponent of a motion to compel carries the initial burden of proving that the information sought is relevant to a claim or defense."  *Strong v. City of Naples*, 2023 WL 4545165, at *1 (M.D. Fla. July 14, 2023).  This is a "low bar" that "can be cleared by simply looking at the face of the interrogatory." *Noshirvan*, 2024 WL 4213712, at *3.  "If the movant satisfies this initial burden, 'the responding party must demonstrate how the information sought is improper, unreasonable,' or disproportionate."  *Id.* (quoting *Strong*, 2023 WL 4545165, at *1).  Courts regularly grant motions to compel when interrogatory responses are "incomplete and not fully responsive."  *E.g.*, *Neira*, 2024 WL 865883, at *4.

TMTG's Interrogatory Responses, as supplemented, fail to provide a

compliant response to many of The Post's interrogatories. During the July 11, 2025 meet and confer, TMTG agreed that its responses to several interrogatories were inadequate, and agreed to correct those disclosures by July 25, 2025. *See* July 18, 2025 Letter, Ex. D, at 2-5. In addition, as for the remaining deficiencies identified by The Post, TMTG agreed to consider The Post's concerns and respond by July 25, 2025. *See id.* On August 4, 2025, TMTG provided supplemental responses, which addressed some, but not all, of The Post's concerns. *See* Pl.'s Suppl. Obj. & Resp. to Def.'s First Set of Interrogatories ("Supplemental Interrogatory Responses," attached as Exhibit G).[5] As of the date of this filing, TMTG has not indicated that it will provide any additional correction or supplementation to its remaining responses.

The Post requests that the Court compel TMTG to respond fully to each interrogatory described below and memorialized in The Post's July 18 letter. *See* July 18, 2025 Letter, Ex. D, at 2-5.

### A. TMTG's Interrogatory Response Related to the Location of Evidence is Deficient.

Interrogatory 3 requests information about "all custodians who have relevant Documents" and the repositories used to "send, receive, or store" those communications or documents. After supplementation, TMTG's response to this interrogatory lists several custodians and notes that "Each person has documents

---

[5] One of TMTG's Supplemental Interrogatory Responses is marked Confidential under the Protective Order. The Post does not discuss that Response here and has redacted it in Exhibit G.

and emails stored electronically, which have been collected by DLA Piper, and are being stored with RelativityOne." However, this response is lacking in multiple respects. First, it identifies only "documents and emails," plainly omitting numerous other repositories used by its custodians to "send, receive, or store" relevant communications, including, for example, computers, cellular devices and messaging applications. Second, it does not identify "the date range of Documents retained by [each] custodian for each repository," or "the subject matter of the relevant Documents located in each repository."

This information is important for The Post to understand where relevant documents are located, and whether they have been preserved and collected. Courts have ordered responses to similar interrogatories at this stage. *See, e.g.*, Order at 2, *Nunes v. Washington Post*, Civ. A. No. 21-cv-506 (D.D.C. Oct. 25, 2022), ECF No. 65 (ordering response to interrogatory requesting "every repository ever used by [each] custodian to send, receive, or store relevant communications or documents; the subject matter of the documents in that repository; the date range of documents retained in that repository; and whether Plaintiff collected documents from the repository"); Order at 2, *Nunes*, Civ. A. No. 21-cv-506 (D.D.C. February 1, 2023), ECF No. 71 (similar); Minute Order at 1, *Nunes*, Civ. A. No. 21-cv-506 (D.D.C. Apr. 5, 2023) (similar, and in light of prior noncompliance, ordering that the disclosure should be made "WITHOUT limitation as to whether the repositories may contain communications and or

documents relevant to this suit").[6]  Particularly given TMTG's substantial delays in making any document production whatsoever, a fulsome and timely answer regarding the location of TMTG's repositories and documents is of the essence.

### B.     TMTG's Interrogatory Responses Related to Damages Are Deficient.

Several of The Post's interrogatories request information essential to understanding and responding to TMTG's damages claim.  TMTG's responses to these interrogatories are threadbare and deficient.

For example, Interrogatory 4 requests "the basis for the calculation of damages" and all documents and persons with knowledge of the damages.  In its response, TMTG does not provide a damages calculation, nor does it identify a single document or individual with knowledge.

Similarly, Interrogatory 5 requests the basis of TMTG's claim that the statements allegedly "damaged TMTG among members of the public" and all persons with knowledge of that claim.  Here too, TMTG's response is incomplete, and fails to identify even a single witness with knowledge of the harm TMTG has claimed.

Again, TMTG agreed during repeated discovery conferences to supplement its disclosures and responses related to damages, but has failed to do so.  See July 18, 2025 Letter, Ex. D, at 2.  This damages information is obviously relevant and

---

[6] The plaintiff in *Nunes v. Washington Post*, Devin Nunes, is the CEO of TMTG.  TMTG listed Nunes on its Initial Disclosures and Interrogatory Responses as a witness likely to have discoverable information.

critical to The Post's defense against TMTG's multi-billion-dollars claim. The Post requests that the Court order TMTG to supplement each of its damages-related responses. *See Dix*, 2022 WL 21295779, at *1 (ordering a response to a similar interrogatory); *Partners Insight*, 2025 WL 1137257, at *2; Fed. R. Civ. P. 37(a).

## IV. The Post is Entitled to Fees Under Rule 37(a)(5), 37(b), and 37(c)(1).

Fees, including attorney's fees, are warranted under Rule 37(a)(5)(A), 37(b), and 37(c)(1) should the Court grant this motion or should TMTG begin producing documents or supplement its Initial Disclosures or Interrogatory Responses in the manner described here while this motion is pending.

First, The Post is entitled to compulsory fees under Rule 37(b), as TMTG has still not complied with the Court's Order setting the commencement of document production as June 27, 2025. *See* Fed. R. Civ. P. 37(b) ("If a party . . . fails to obey an order to provide or permit discovery," the court "must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure.").

Second, if the Court grants the motion compelling disclosure of as to interrogatories and initial disclosures pursuant to 37(a), "the Court must require the non-moving party whose conduct necessitated the Motion, to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Rivera*, 2016 WL 11566325, at *1. Here, The Post is also entitled to fees under Rule 37(a)(5), as it has conferred multiple times with TMTG about these issues, including both in written correspondence and in two videoconferences. *See* Email

19

Correspondence, Ex. E.  In addition, The Post expressly told TMTG that it would move to compel if the deficiencies were not resolved by Monday, August 4 (and they were not).  *Id.* at 1.  The Post has thus "attempt[ed] in good faith to obtain the disclosure or discovery without court action."  Fed. R. Civ. P. 37(a)(5)(A)(i).  TMTG's actions are not "substantially justified," and there are no "other circumstances" making "an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii); *see also Orlando Health, Inc. v. HKS Architects, Inc.*, 2024 WL 4625727, at *1 (M.D. Fla. Oct. 30, 2024) (granting Rule 37 fees "given the lack of justification for [the] admitted failure to timely comply with the discovery").  Relatedly, the Court could order fees under Rule 37(c)(1) as TMTG has failed to "provide information . . . as required by Rule 26(a) or (e)," namely, an updated damages disclosure.  However, these fees would be redundant with those available pursuant to Rule 37(a).

## **CONCLUSION**

Over a month into the seven-month discovery period, TMTG has failed to provide a single document or the basic disclosures The Post needs to engage in discovery or prepare its defense.  The Post appreciates TMTG's counsel willingness to confer, but as these conferrals have failed to lead to discovery, The Post requires the Court's intervention.[7]  For the foregoing reasons, The Post respectfully requests

---

[7] While The Post has raised additional discovery deficiencies with TMTG, it is continuing to confer on those issues in the hopes that they may be resolved without the need for further intervention.

that the Court order TMTG to immediately begin production of documents, provide updated Initial Disclosures, including an updated damages claim and supporting calculations, supplement its Interrogatory Responses to provide responsive and complete answers; and that the Court order fees pursuant to Rule 37(a) and (b) and grant any such other relief as the Court deems proper.

## CERTIFICATION PURSUANT TO RULE 37 AND LOCAL RULE 3.01(g)

Pursuant to Rule 37 and M.D. Fla. R. 3.01(g), the parties have met and conferred in good faith about their positions regarding TMTG's deficient discovery responses and failure to produce documents as described throughout this motion, including with videoconferences on July 11, 2025 and July 29, 2025, and written correspondence.  The parties have been unable to reach agreement.

Dated: August 7, 2025

THOMAS & LoCICERO PL

*/s/ Carol Jean LoCicero*
Carol Jean LoCicero (FBN 603030)
Linda R. Norbut (FBN 1011401)
601 South Boulevard
Tampa, FL  33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070
clocicero@tlolawfirm.com
lnorbut@tlolawfirm.com

*Counsel for Defendant*

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

*/s/ Thomas G. Hentoff*
Thomas G. Hentoff (*pro hac vice*)
Nicholas G. Gamse (*pro hac vice*)
680 Maine Avenue, S.W.
Washington, DC  20024
Telephone: (202) 434-5000
Facsimile: (202) 480-8371
thentoff@wc.com
ngamse@wc.com

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2025, I electronically filed a true and correct copy of the foregoing motion with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to the email address of all counsel of record.

*/s/ Thomas G. Hentoff*
Thomas G. Hentoff (*pro hac vice*)
Counsel for Defendant