# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

TRUMP MEDIA & TECHNOLOGY GROUP CORP.,

     Plaintiff,

vs.

WP COMPANY LLC d/b/a The Washington Post,

     Defendant.

Case No: 8:23-cv-01535-TPB-AAS

_____/

## DEFENDANT WP COMPANY LLC'S OPPOSED MOTION FOR PROTECTIVE ORDER REGARDING <u>SCOPE OF RULE 30(B)(6) DEPOSITION TOPICS</u>

Defendant WP Company LLC d/b/a The Washington Post ("The Post") hereby moves pursuant to Federal Rule of Civil Procedure 26(c) for entry of a protective order narrowing the scope of 13 of the 39 total topics in Plaintiff Trump Media & Technology Group's ("TMTG's") Rule 30(b)(6) notice.

These 13 topics are objectionable in their scope because they would require The Post's corporate designee to spend substantial time educating himself on broad topics that have no relevance to the two challenged statements at issue in this case, and are thus unduly burdensome and disproportionate to the needs of the case. After the Court's partial grant of The Post's motion to dismiss, the two challenged statements remaining in the case are: 1) "The companies also have not disclosed to shareholders or the SEC that Trump Media paid a $240,000 finder's fee for helping to arrange the $8 million loan deal with ES Family Trust"; and

(2) "the recipient of that fee was an outside brokerage associated with Patrick Orlando, then Digital World's CEO." Pl.'s Second Am. Compl. at 6.

The topics on TMTG's notice sweep far beyond the narrow scope of those statements. For example, one topic would require that The Post prepare a witness to testify about The Post's "investigation of Plaintiff," i.e., TMTG, at any time "before publishing the WaPo Article." But TMTG is the eponymous social media company of President Trump, which was regularly in the news for well over a year prior to the Article, including in many Post articles that have nothing to do with this case.

Preparation on topics unrelated to the statements at issue would also be cumulative: TMTG has already taken the depositions of all five fact witnesses from The Post who were substantively involved in either reporting, writing, and editing the article or responding to TMTG's post-publication retraction demand. Indeed, TMTG covered these very lines of inquiry, in some cases multiple times, when taking the depositions of these fact witnesses.

To compromise and avoid burdening the Court, The Post nevertheless advised TMTG that it does not object to preparing its designee on these 13 topics as long as they are limited to inquiries related to the two challenged statements remaining in the case. This reasonable limitation would avoid a wasteful and unduly burdensome exercise. TMTG refused this proposal. Accordingly, The Post seeks this protective relief.

## BACKGROUND

From November 2025 to January 2026, the parties exchanged several letters and conferred multiple times on topics for The Post's 30(b)(6) designee. While the topics were still in flux, The Post agreed to present its 30(b)(6) witness on February 18. *See* Jan. 22, 2026 Email from N. Gamse to I. Corp, et. al.

On February 5, 2026, thirteen days before the deposition, TMTG served a revised list of topics. Feb. 5, 2026 Ltr. from A. Brito to N. Gamse, et. al., attached as Ex. A. Those topics were then included in the formal Rule 30(b)(6) deposition notice that TMTG served on February 12. Notice of The Post's 30(b)(6)Dep., attached as Ex. B. With subparts included, TMTG's third set of revised 30(b)(6) topics totals 39 subjects, including seven new topics. *Id.* (Topics 1 and 2 contain multiple subparts.). For the first time, TMTG identified "[t]he applicable timeframe for all topics" as "January 2021 through the present." *Id.* The topics at issue in this motion, Topics 9-21, cover:

(1) "[a]ny communications or documents had or exchanged between" The Post and six individuals on six topics;

(2) The Post's "investigation" of six entities or individuals at any time "before publishing"; and

(3) The Post's "investigation" of those same entities or individuals "specifically related to its research to publish" the Article. *Id.*

The Post timely notified TMTG of its specific objections to the topics listed above and stated that it was willing to confer to narrow their scope, specifically by

focusing only on the statements at issue in the litigation.  Feb. 9, 2026 Email from C. Reid to I. Corp, et al, attached as Ex. C.  By Wednesday, February 11, one week before the deposition, TMTG had not responded. Accordingly, The Post requested a conference and notified TMTG that it would move for a protective order if a resolution was not reached.  Feb. 11, 2026 Email from N. Gamse to J. Garcia, et al.

On February 12, TMTG served the formal Rule 30(b)(6) deposition notice. Ex. B. The parties conferred twice more.  Once TMTG indicated that it would not narrow the scope of Topics 9-21, the parties agreed to postpone their respective 30(b)(6) depositions until the Court resolved the disputes.

## ARGUMENT

The Post has agreed to prepare its corporate designee on 26 out of the 39 topics in in TMTG's Rule 30(b)(6) notice.  The Post seeks a protective order to limit the scope of the remaining thirteen topics, which are overly broad, unduly burdensome, duplicative, and disproportionate to the needs of the case.  Topics 9-21 require The Post to educate a 30(b)(6) witness on sweepingly broad topics bearing little or no relation to the case.  In addition, TMTG has already taken the depositions of five Post fact witnesses on these topics.  TMTG does not limit these broad topics to the two statements at issue in this litigation nor the relevant timeframe, instead seeking to require The Post to prepare a corporate representative on a massive amount of irrelevant information.

Pursuant to Federal Rule of Civil Procedure 26, a court "may, for good cause, issue" a protective order "to protect a party or person from . . . undue burden or

expense." Fed. R. Civ. P. 26(c)(1).  Good cause "generally signifies a sound basis or legitimate need to take judicial action." *Torres v. Pasco Cnty. Bd. of Comm'rs*, 2022 WL 716821, at *1 (M.D. Fla. Mar. 10, 2022) (internal citation omitted); *see also Florida v. United States*, 342 F.R.D. 153, 156 (N.D. Fla. 2022) (Good cause exists where "specific prejudice or harm will result if no protective order is granted.") (internal citation omitted).

Good cause exists here, where TMTG's notice improperly "burden[s] [The Post] with production and preparation of a witness on every facet of the litigation." *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1511901, at *2 (N.D. Cal. Jan. 27, 2012). First, Topics 12, 14, 16, 18, and 20 would require The Post to prepare its witness on its "investigation" into five broad topics from January 2021 until publication of the Article.  Second, Topics 9-11 would sweep in "any communications or documents" involving The Post and various individuals on six different broad topics from January 2021 to present.  Third, Topics 13, 15, 17, 19, and 21 would require preparation regarding The Post's "investigation" into five topics "specifically related to its research to publish the WaPo Article," from January 2021 to publication of the Article, with no specification that these topics are limited to the statements at issue.

These sweeping topics purportedly relate to the fault element of TMTG's public-figure defamation case, which is governed by the actual malice test, which requires proof of publishing the two statements at issue with knowledge of falsity or serious, subjective doubts as to the truth.  *See, e.g.*, *Michel v. NYP Holdings,*

*Inc.*, 816 F.3d 686, 702-703 (11th Cir. 2016); *Klayman v. City Pages*, 2014 WL 5426515, at *3 (M.D. Fla. Oct. 22, 2014) ("Plaintiff has conceded that he is a public figure under the First Amendment for purposes of this lawsuit. This is a significant concession because public figures suing for defamation and defamation by implication are required to prove, by clear and convincing evidence, that the statements at issue were published with actual malice."). As in *Klayman*, Plaintiff, a self-acknowledged public figure, contends that the discovery here is relevant to the issue of actual malice. But the testimony sought is far afield from the question of actual malice as to "the statements at issue." 2014 WL 5426515, at *3 (denying motion to compel).

TMTG's 30(b)(6) notice "renders [The Post's] efforts to designate a knowledgeable person unworkable." *Florida*, 342 F.R.D. at 157 (internal citation omitted). Because TMTG refused The Post's proposal to present a witness on Topics 9-21 as limited to the statements at issue, The Post moves for a protective order limiting the scope of these topics. [1]

## I.     Topics 12, 14, 16, 18, and 20

Topic 12: WP Company, LLC's investigation of Plaintiff [TMTG] before publishing the WaPo Article.

Topic 14: WP Company, LLC's investigation of Will Wilkerson before publishing the WaPo Article.

Topic 16: WP Company, LLC's investigation of Digital World Acquisition

---

[1] This motion does not address other objections that may arise on a question-by-question basis, such as the attorney-client privilege, work product immunity, and the reporter's privilege. *See, e.g.*, Fla. Stat. § 90.5015.

6

Corp. before publishing the WaPo Article.

Topic 18: WP Company, LLC's investigation of ES Family Trust before publishing the WaPo Article.

Topic 20: WP Company, LLC's investigation of Patrick Orlando before publishing the WaPo Article.

Topics 12, 14, 16, 18, and 20 are overly broad, unduly burdensome, and disproportionate to the needs of the case because they require The Post to prepare its 30(b)(6) witness to discuss its "investigation" of five subjects from January 2021 until "publishing the WaPo Article" in May 2023. During that period, the Post published more than a dozen articles that included information about TMTG, Wilkerson, SWAC, ES Family Trust, or Patrick Orlando. None of those articles are the subject of this lawsuit and it would require a substantial expenditure of time for The Post's designee to become educated as to all of them. The burden is particularly substantial regarding information about TMTG, President Trump's social media company that was regularly in the news for more than two years before the article's publication. It would be extremely wasteful to require The Post's designee to educate himself on all Washington Post articles about TMTG.

Preparation on these topics is also unnecessary. *See F.T.C. v. First Universal Lending*, 2011 WL 666149, at *6 (S.D. Fla. Feb. 12, 2011) (recognizing that Rule 26 "endows the Court with the authority and responsibility to limit discovery" where "the information sought is cumulative or duplicative"). TMTG has already taken the depositions of the reporter, his editor, the business editor, the senior managing editor, and the executive editor involved in the Article's

publication or the response to TMTG's retraction demand.  In particular, any questions TMTG may have about The Post's evaluation of the credibility and reliability of its source Wilkerson have already been asked and answered in fact witness depositions, by Post reporter Drew Harwell and his editor, Mark Seibel. And The Post is in any event willing to retread that ground, but just limited to questions related to the statements at issue in this lawsuit.

TMTG's insistence that The Post's 30(b)(6) witness address these topics appears to be an effort to improperly "re-ask all of the questions [TMTG] has previously explored with multiple witnesses."  *BAT LLC v. TD Bank, N.A.*, 2019 WL 13236131, at *5 (E.D.N.Y. Sept. 24, 2019) (granting protective order where plaintiff's 30(b)(6) included topics that had been "explored with at least one and in many cases multiple witnesses"); *see also Fed. Trade Comm'n v. Am. Future Sys.*, 2022 WL 1437562, at *12 (E.D. Pa. Apr. 8, 2022) ("Rule 30(b)(6) was intended to be a discovery tool that enabled parties to obtain accurate information . . . known to *the company*, not individual officers and employees who may be subpoenaed in their personal capacity.").

Well in advance of those fact depositions, The Post also produced many responsive, nonprivileged documents on these topics.  The Post produced more than a hundred pages of reporter Drew Harwell's notes on Wilkerson, TMTG, DWAC, Patrick Orlando, and ES Family Trust.  It produced all of Harwell's emails starting in October 2022 seeking information about these topics from TMTG, ES Family Trust, DWAC, Patrick Orlando, Wilkerson's attorneys, the Securities and

Exchange Commission, the Department of Justice, and others. And it produced all non-privileged, responsive communications between Harwell and his editor, Mark Seibel, about these subjects leading up to the Article's publication.

Because Topics 12, 14, 16, 18, and 20 impose substantial burdens and would uncover no new information, good cause exists to limit their scope to focus only on the statements at issue in this litigation.

## II.    Topics 9-11

Topic 9: Any communications or documents had or exchanged between Matei Rosca and WaPo concerning Plaintiff, Wilkerson, Digital World Acquisition Corp., Patrick Orlando, ES Family Trust, and/or the WaPo Article.

Topic 10: Any communications or documents had or exchanged between Matei Rosca and WaPo concerning Plaintiff, Wilkerson, Digital World Acquisition Corp., Patrick Orlando, ES Family Trust, and/or the WaPo Article.

Topic 11: Any communications or documents had or exchanged between Will Wilkerson or his attorneys and WaPo concerning Plaintiff, Wilkerson, Digital World Acquisition Corp., Patrick Orlando, ES Family Trust, and/or the WaPo Article.

Topics 9-11 are also overly broad, unduly burdensome, and disproportionate to the needs of the case. These topics cover "any documents or communications" between The Post and six individuals on six different subjects over the course of five years, from January 2021 to present. As a result, the topics sweep in hundreds of documents that relate not to the statements at issue, but to other aspects of the Article, or even to other articles that are not the subject of this litigation. *See Woliner v. Sofronsky*, 2018 WL 5660529, at *3 (S.D. Fla. Nov. 1, 2018) (granting

protective order where requests sought information "largely irrelevant" to case and "disproportionate"); *Klayman*, 2014 WL 5426515, at *3 (denying motion to compel discovery related to statements and articles not at issue). Preparation on these broad topics would present a heavy burden for The Post to shoulder.

That burden "outweighs [the] likely benefit" because these topics are also duplicative of testimony TMTG already elicited from The Post's fact witnesses. Fed. R. Civ. P. 26(b)(1). Harwell, the reporter who was speaking with Wilkerson, Wilkerson's attorneys, Rosca, and Bernardini, testified about these communications and the documents exchanged. *See Apple*, 2012 WL 1511901, at *3 n. 8 (directing party to narrow 30(b)(6) notice to topics for which it could not "otherwise identify percipient witnesses" and "matters that are not unreasonably cumulative or duplicative of other discovery").

To the extent that TMTG has any further questions about what communications occurred or documents were exchanged, The Post produced hundreds of documents detailing these interactions, including: the email thread between Harwell, Rosca, and Bernardini for reporting and drafting the Article, audio recordings of Harwell's interviews with Wilkerson and his attorneys, and emails from Wilkerson's attorneys sharing the key documents used in the Article.

Because Topics 9-11 would require unduly burdensome preparation on irrelevant topics, good cause exists to limit their scope to the statements at issue in this litigation.

### III.   Topics 13, 15, 17, 19, and 21

Topic 13: WP Company, LLC's investigation of Plaintiff specifically related to its research to publish the WaPo Article.

Topic 15: WP Company, LLC's investigation of Will Wilkerson specifically related to [its] research to publish the WaPo Article.

Topic 17: WP Company, LLC's investigation of Digital World Acquisition Corp. specifically related to its research to publish the WaPo Article.

Topic 19: WP Company, LLC's investigation of ES Family Trust specifically related to its research to publish the WaPo Article.

Topic 21: WP Company, LLC's investigation of Patrick Orlando specifically related to its research to publish the WaPo Article.

Topics 13, 15, 17, 19, and 21 are also overly broad, unduly burdensome, and disproportionate to the needs of the case.  While narrower than Topics 12, 14, 16, 18, and 20, these topics would still require The Post to prepare its 30(b)(6) witness to discuss its "investigation" of five individuals and entities "specifically related to its research to publish" the Article, as opposed to the two remaining statements still challenged by TMTG.  The Post's 30(b)(6) witness would have to speak to the reporting process for an Article with more than 2,700 words, including 111 sentences that are not at issue.

This burdensome exercise would also be duplicative.  TMTG has already taken the deposition of the fact witnesses involved about the steps they took to investigate these topics.  Requiring The Post's 30(b)(6) witness to prepare on topics beyond the statements at issue would be a wasteful, burdensome exercise in violation of the proportionality restraints of Federal Rule of Civil Procedure 26.

11

*Florida*, 342 F.R.D. at 156.  Indeed, TMTG itself objected that a proposed 30(b)(6) topic relating to "The Article" was overly broad and should be limited "to discover specific information related to the statements at issue."  Jan. 4 Ltr. Resp. to The Post's 30(b)(6) Notice from A. Brito to N. Gamse at 3.  Once again, there is good cause to limit the scope of these topics.

## CONCLUSION

Because TMTG's 30(b)(6) notice is overly broad, unduly burdensome, and disproportionate to the needs of the case, The Post respectfully requests a protective order limiting the scope of Topics 9-21.

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Undersigned counsel conferred with Plaintiff's counsel by email on February 11, 2026, via teleconference on February 13, by email on February 14, and via teleconference on February 16 and February 19 with respect to the relief sought herein. The parties agreed to file their respective motions by noon on February 20. Plaintiff's counsel opposes the relief requested.


Dated:        February 20, 2026


Respectfully submitted,


THOMAS & LoCICERO PL                WILLIAMS & CONNOLLY LLP


*/s/ Carol J. LoCicero*                */s/ Thomas G. Hentoff*
Carol Jean LoCicero (FBN 603030)    Thomas G. Hentoff (*pro hac vice*)
Linda R. Norbut (FBN 1011401)       Nicholas G. Gamse (*pro hac vice*)
601 South Boulevard                 Isabelle J. Beaton (*pro hac vice*)
Tampa, FL 33606                     680 Maine Avenue, S.W.
Telephone: (813) 984-3060           Washington, DC 20024
Facsimile: (813) 984-3070           Telephone: (202) 434-5000
clocicero@tlolawfirm.com            Facsimile: (202) 480-8371
lnorbut@tlolawfirm.com              thentoff@wc.com
                                    ngamse@wc.com
*Counsel for Defendant*             ibeaton@wc.com

                                    *Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 20, 2026, I electronically filed a true and
correct copy of the foregoing motion with the Clerk of the Court using the CM/ECF
system, which will send notice of the filing to the email address of all counsel of
record.

<u>*/s/ Carol Jean LoCicero*</u>
Carol Jean LoCicero
Counsel for Defendant