# EXHIBIT A



Alejandro Brito<br>
Email: abrito@britopllc.com<br>
Phone: (305) 614.4071<br>
Address: 2121 Ponce de Leon. Suite 650<br>
Coral Gables, FL 33134<br>
www.britopllc.com

February 5, 2026

**Via Email**

Nicholas G. Gamse, Esq.
Williams & Connolly, LLP
680 Maine Avenue SW
Washington, DC 20024
Email: ngamse@wc.com

    Re:    ***Trump Media & Technology Group Corp. v. WP Company, LLC***
                **Case No. 8:23-cv-01535 (M.D. Florida)**

Dear Mr. Gamse:

    We have received WP Company, LLC's ("The Post") January 24, 2026, correspondence regarding Trump Media & Technology Group Corp.'s ("TMTG") revised proposed topics for The Post's 30(b)(6) deposition(s). This letter serves as TMTG's response thereto.

**I.    TMTG's third set of revised 30(b)(6) topics**.

    TMTG has enclosed with this correspondence its third set of revised topics for The Post's 30(b)(6) deposition(s). One of The Post's concerns was that TMTG's topics were too numerous. TMTG's third set of revised topics has nearly been cut in half, now totaling only thirty-nine topics. A true and correct copy of TMTG's Third Set of Revised 30(b)(6) Topics is enclosed hereto as **Exhibit A**. Each of these topics is described with reasonable particularity under Fed. R. Civ. P. 30(b)(6) and gives The Post sufficient notice to adequately prepare its witness(es) in a non-burdensome manner.

    TMTG's third set of revised 30(b)(6) topics focuses on: the factual basis related to The Post's contentions in its Answer and Affirmative Defenses;[1] The Post's efforts to preserve, collect, and produce documents related to this action;[2] The Post's policies and procedures;[3] communications and documents exchanged between The Post and Matei Rosca and Matthew Bernardini, the co-authors of the article in dispute;[4] communications and documents exchanged between The Post and Will Wilkerson or his attorneys (the primary sources of the article in dispute);[5] The Post's investigation of TMTG, Will Wilkerson, Digital World Acquisition Corp., ES Family Trust, and Patrick Orlando, before publishing the article in dispute and specifically

---

[1] *See* Exhibit A, ¶¶ 1-2.
[2] *See id*., ¶ 3.
[3] *See id*., ¶¶ 4-8.
[4] *See id*., ¶¶ 9-10
[5] *See id*., ¶ 11.



Nicholas G. Gamse, Esq.
Williams & Connolly, LLP
February 5, 2026

related to the article in dispute;[6] The Post's efforts to verify whether the defamatory statements at issue are true;[7] and whether Drew Harwell, Marc Seibel, Lori Montgomery, or The Post complied with the company's policies and procedures.[8] Below, we briefly address certain of The Post's objections and concerns raised in its January 24, 2026, correspondence.

II. **The Post's objections to topics that concern the factual basis of the contentions in The Post's Answer and Affirmative Defenses**.

In response to the topics previously identified under paragraph 1 and all subparagraphs therein, The Post interposed multiple objections. *See* The Post's January 24, 2026, correspondence, pp. 3-4. These topics, including those under paragraphs 1 and 2 of TMTG's third set of revised 30(b)(6) topics, seek to discover information related to the "principal facts, material witnesses, or documents that substantiate the factual basis" in specific contentions alleged by The Post in its Answer and Affirmative Defenses. *See* Exhibit A, ¶¶ 1-2. Such language has been approved under the more stringent "painstakingly specific" standard applied by certain courts around the country. *See Pflughoeft v. Kansas & Oklahoma R.R., L.L.C.,* 2023 WL 5672202, at *12 (D. Kan. Sept. 1, 2023) (finding that topics asking that the corporate entity "identify the principal facts, material witnesses, or documents" on specific contentions in the corporate entity's answer complied with the reasonable particularity standard under Fed. R. Civ. P. 30(b)(6)). Thus, they certainly comply with the less onerous reasonable particularity standard within the plain text of Rule 30(b)(6). TMTG is entitled to discover this information because these topics concern The Post's contentions in response to the primary allegations in dispute between the parties (*e.g.,* whether the statements are true, whether The Post intended to convey the statements with defamatory meaning, whether the statements were published with actual malice, etc.). *See id*.

The Post's objections do not address whether the topics are compliant with Fed. R. Civ. P. 30(b)(6). Instead, for example, The Post claims that at least one prior topic sought "information about the state of mind of Will Wilkerson, an individual who is not within The Post's control[.]" However, that is not an accurate interpretation of what the original or the revised topics call for. There can be no genuine dispute that the prior and now operative topics are seeking to understand The Post's factual basis for the contentions in its Answer and Affirmative Defenses. If The Post responds that it relied on a third party or other information beyond its control to plead that allegation, The Post is obligated to explain its basis for doing so.

As another example, despite TMTG's invitation to The Post to revise its proposed topics that improperly sought "evidence" that TMTG intended to use at trial, which invades the mental impressions of TMTG's counsel, The Post believes that it is justified in refusing to produce any witness to address topics related to the substantial truth of the article or the actual malice behind

---

[6] *See id*., ¶¶ 12-21.
[7] *See id*., ¶ 22.
[8] *See id*., ¶¶ 23-26.



Nicholas G. Gamse, Esq.<br>
Williams & Connolly, LLP<br>
February 5, 2026

its publication. As explained during our last teleconference, TMTG's proposed topics are materially different from The Post's proposed topics on these critical subjects.

**III. The Post's objections to topics that concern Drew Harwell, Matei Rosca, Matthew Bernardini, Lori Montgomery, and Joseph Menn's investigation into, and verification of, the defamatory statements at issue.**

In response to prior topics, The Post claimed that several of TMTG's topics that concerned what investigation into, and verification of, the defamatory statements at issue were duplicative of prior testimony given by Mr. Harwell, or that it would be proper for TMTG to satisfy its inquiry through the deposition of those individuals. *See* The Post's January 24, 2026, correspondence, pp. 5. TMTG's third set of revised topics addresses The Post's concerns. It also undermines any objection that the topics seek information that is exclusively within the personal knowledge of the previously identified individuals. Now, the third set of revised topics shifts the inquiry to The Post's investigation of TMTG, Will Wilkerson, Digital World Acquisition Corp., ES Family Trust, and Patrick Orlando, before publishing the article in dispute, and specifically related to the article in dispute;[9] The Post's efforts to verify whether the defamatory statements at issue are true;[10] and whether Drew Harwell, Marc Seibel, Lori Montgomery, or The Post complied with the company's policies and procedures.[11]

**IV. Conclusion.**

TMTG has gone above and beyond to work with The Post to reach a set of mutually agreed-upon topics. TMTG is confident that its third set of revised 30(b)(6) topics presents proper, non-duplicative areas of inquiry that do not pose an undue burden on The Post. *See* Exhibit A. TMTG will proceed with its third set of revised 30(b)(6) topics on February 18, 2026, and will notice the deposition accordingly. To the extent The Post wishes to confer any further on these topics, TMTG invites The Post to raise its concerns promptly and in writing so that the parties can participate in a meaningful conferral process.

Otherwise, as TMTG has previously advised, The Post must seek a protective order. *See United States Equal Employment Opportunity Comm'n v. Qualtool, Inc.,* 2022 WL 16695172, at *5 (M.D. Fla. Nov. 3, 2022) ("[w]hen a corporation disagrees with the deposition notice, it 'cannot decide on its own to ignore the notice.' Instead, a corporation refusing to make a Rule 30(b)(6) designation 'must seek a protective order.'") (quoting *New England Carpenters Health Benefits Fund v. First DataBank, Inc.,* 242 F.R.D. 164, 166 (D. Mass. 2007) (noting impropriety of "refus[ing] to comply with the notice, put[ting] the burden on…[noticing] party…to file a motion to compel, and…seek[ing] to justify noncompliance in opposition to the motion to compel") (citing Fed. R. Civ. P. 26)); *see also Kartagener v. Carnival Corp.,* 380 F. Supp. 3d 1290, 1296 (S.D. Fla.

---

[9] *See id.*, ¶¶ 12-21.
[10] *See id.*, ¶ 22.
[11] *See id.*, ¶¶ 23-26.



Nicholas G. Gamse, Esq.<br>
Williams & Connolly, LLP<br>
February 5, 2026

2019) ("Defendant defends its witness preparation and her ability to answer relevant questions and contends that any failures in the witness' ability to testify knowledgeably flowed from Plaintiff's 'overbroad, excessive and vexatious' notice of topics. Assuming without now deciding that the topics noticed by Plaintiff were objectionable, Defendant's failure to prepare its corporate representative is not excused. 'A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c).' Fed. R. Civ. P. 37(d)(2). Defendant did not seek a protective order.") (internal citation omitted).

If you wish to discuss any of these matters further, please do not hesitate to contact me.

Very truly yours,

*/s/ Alejandro Brito*

ALEJANDRO BRITO

**Trump Media & Technology Group Corp. v. WP Company, LLC;**
**Third Set of Proposed Topics for WP Company, LLC's 30(b)(6) Witness[1]**

1. The principal facts, material witnesses, or documents that substantiate the factual basis for WP Company, LLC's contentions in its Answer to certain paragraphs of Plaintiff's Second Amended Complaint:

   a. Paragraph 12: WP Company, LLC's denial that "Wilkerson contacted WaPo with a salacious story about a pornfriendly bank and its alleged dealings with TMTG allegedly amounting to securities fraud and other potential crimes or misdeeds. Through a series of meetings and conversations with Wilkerson and his lawyers, WaPo undertook with Wilkerson to publish agreed false and defamatory statements to intentionally injure TMTG."

   b. Paragraph 22: WP Company, LLC's denial that the headline of the WaPo Article (as defined in the Second Amended Complaint) was not "intended to grab the immediate attention of common-minded readers by falsely insinuating that TMTG was involved in shady business dealings."

   c. Paragraph 23: WP Company, LLC's denial that the gist of the defamatory statements did not convey that "TMTG committed securities fraud, or aided, abetted, and participated in improper acts to conceal material facts from the SEC and shareholders of DWAC."

   d. Paragraph 28: WP Company, LLC's denial that "TMTG never paid or agreed to pay a $240,000 'finder's fee' to anyone who purportedly assisted to arrange an $8 million loan from ES Family Trust as accused in the Statements. Neither Orlando nor any brokerage associated with Orlando receive any finder's fee. Accordingly, TMTG did not improperly fail to disclose (or cause DWAC to fail to disclose) payment of a finder's fee to the SEC, DWAC shareholders, and/or the investing public because one did not exist, and there was no agreement for one."

   e. Paragraph 33: WP Company, LLC's denial that the defamatory statements in dispute were "not published in good faith. The falsity of the Statements is not due to an honest mistake of the facts."

   f. Paragraph 36: WP Company, LLC's denial that the defamatory statements in dispute are not "entirely false."

   g. Paragraph 42(a): WP Company, LLC's denial that "No such finder's fee was ever paid, nor did TMTG ever agree to pay such a fee."

---

[1] The applicable timeframe for all topics is January 2021 through present.



    h. Paragraph 42(a): WP Company, LLC's denial that "Wilkerson who had access to TMTG's books and records, knew that TMTG had not paid a finder's fee or even agreed to do so, which would have necessitated accounting for the fee as a liability. Because Wilkerson was WaPo's sole source for its claims, WaPo knew or had a high degree of awareness that the fee had not been paid."

    i. Paragraph 42(c): WP Company, LLC's denial that it "knew that the publication of the Statements would cause a media frenzy."

    j. Paragraph 42(f): WP Company, LLC's denial that "WaPo and Harwell have a long and well-documented history of antipathy toward TMTG."

2. The principal facts, material witnesses, or documents that substantiate the factual basis for WP Company, LLC's affirmative defenses and/or defenses contained in its Answer to Plaintiff's Second Amended Complaint on pages 10 through 13 therein:

    a. Paragraph 4: WP Company, LLC's contention that it "did not intend to convey the alleged defamatory implications."

    b. Paragraph 5: WP Company, LLC's contention that "Some or all of the challenged statements are substantially true."

    c. Paragraph 6: WP Company, LLC's contention that it "did not publish some or all of the challenged statements with actual malice."

    d. Paragraph 14: WP Company, LLC's contention that "Plaintiff's claims are barred by the doctrine of unclean hands."

    e. Paragraph 19: WP Company, LLC's contention that TMTG "failed to mitigate its damages."

3. The efforts undertaken by WP Company, LLC in this case to preserve, collect, and produce documents related to the allegations framed by the pleadings between the parties.

4. WP Company, LLC's policies and procedures related to investigating information that will be used to author an article.

5. WP Company, LLC's policies and procedures related to verifying information contained in a proposed article sought to be published.

6. WP Company, LLC's policies and procedures related to training its journalists, freelance writers, columnists, and any other author of articles published by WP Company, LLC.

7. WP Company, LLC's policies and procedures related to social media.

8. WP Company, LLC's journalistic standards.

9. Any communications or documents had or exchanged between Matei Rosca and WaPo concerning Plaintiff, Wilkerson, Digital World Acquisition Corp., Patrick Orlando, ES Family Trust, and/or the WaPo Article.

10. Any communications or documents had or exchanged between Matthew Bernardini and WaPo concerning Plaintiff, Wilkerson, Digital World Acquisition Corp., Patrick Orlando, ES Family Trust, and/or the WaPo Article.

11. Any communications or documents had or exchanged between Will Wilkerson or his attorneys and WaPo concerning Plaintiff, Wilkerson, Digital World Acquisition Corp., Patrick Orlando, ES Family Trust, and/or the WaPo Article.

12. WP Company, LLC's investigation of Plaintiff before publishing the WaPo Article.

13. WP Company, LLC's investigation of Plaintiff specifically related to its research to publish the WaPo Article.

14. WP Company, LLC's investigation of Will Wilkerson before publishing the WaPo Article.

15. WP Company, LLC's investigation of Will Wilkerson specifically related to his research to publish the WaPo Article.

16. WP Company, LLC's investigation of Digital World Acquisition Corp. before publishing the WaPo Article.

17. WP Company, LLC's investigation of Digital World Acquisition Corp. specifically related to its research to publish the WaPo Article.

18. WP Company, LLC's investigation of ES Family Trust before publishing the WaPo Article.

19. WP Company, LLC's investigation of ES Family Trust specifically related to its research to publish the WaPo Article.

20. WP Company, LLC's investigation of Patrick Orlando before publishing the WaPo Article.

21. WP Company, LLC's investigation of Patrick Orlando specifically related to his research to author and publish the WaPo Article.

22. WP Company, LLC's efforts, if any, to verify whether the defamatory statements at issue in this case are true.

23. Whether Drew Harwell complied with WP Company, LLC's policies, procedures, and journalistic standards in connection with the publication of the WaPo Article.

24. Whether Marc Seibel complied with WP Company, LLC's policies, procedures, and journalistic standards in connection with the publication of the WaPo Article.

25. Whether Lori Montgomery complied with WP Company, LLC's policies, procedures, and journalistic standards in connection with the publication of the WaPo Article.

26. Whether WP Company, LLC complied with its policies, procedures, and journalistic standards in connection with the publication of the WaPo Article.