# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
## Tampa Division

TRUMP MEDIA & TECHNOLOGY
GROUP CORP.,

      Plaintiff,

v.

WP COMPANY, LLC,
d/b/a The Washington Post,


      Defendant.

Case No. 8:23-cv-1535-TPB-AAS

## PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AS TO DEFENDANT'S AMENDED RULE 30(B)(6) NOTICE OF TAKING DEPOSITION OF THE CORPORATE REPRESENTATIVE OF TRUMP MEDIA & TECHNOLOGY GROUP CORP.

Plaintiff, TRUMP MEDIA & TECHNOLOGY GROUP CORP. ("Plaintiff" or "TMTG"), by and through its undersigned counsel and pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, hereby files this Motion for Protective Order ("Motion") with respect to Topics 5, 6, 7, 9, 12, 13, 15, 16, 17, and 18 identified in Defendant's Amended Rule 30(b)(6) Notice of Taking Deposition of the Corporate

Representative of Trump Media & Technology Group Corp.[1] ("Rule 30(b)(6) Notice"). In support, Plaintiff states as follows:

## **INTRODUCTION**

Since November 17, 2025, Plaintiff has sought in good faith to reach an agreement with Defendant regarding the subject matters for Defendant's 30(b)(6) deposition of TMTG. This effort has been substantial because nearly all of Defendant's noticed topics fail to satisfy Rule 30(b)(6)'s "reasonable particularity" requirement and are excessively broad. Despite Plaintiff's repeated attempts to meet and confer, Defendant has not engaged in good faith and has refused to meaningfully narrow or clarify its topics. At the same time, Defendant has taken the opposite position as to the Rule 30(b)(6) topics TMTG served on Defendant—objecting and demanding narrowing—reflecting a transparent tit-for-tat approach rather than a sincere effort to streamline the depositions. As further set forth below, the Court should grant Plaintiff's Motion.

## **ARGUMENT**

**A.    Legal Standard**

Fed. R. Civ. P. 30(b)(6) requires that a deposition notice to a corporation "describe with reasonable particularity the matter on which examination is

---

[1] A true and correct copy of Defendant's Rule 30(b)(6) Notice is attached hereto as Exhibit A.

2

required." Fed. R. Civ. P. 30(b)(6). Consistent with this requirement, the Middle District Discovery Handbook explains that a Rule 30(b)(6) notice should provide that "[a] notice . . . to an entity, association, or other organization "should accurately and concisely identify the designated area(s) of requested testimony," with "due regard to the nature, business, size, and complexity of the entity being asked to testify." Middle District Discovery (2021) at 7 § II(A)(4)(b).

This Court has emphasized that the "party seeking discovery must describe the matters with reasonable particularity[.]" *Beckel v. Fagron Holding USA, LLC*, 2019 WL 454336, at *3 (M.D. Fla. Feb. 5, 2019) (citing *QBE Ins. Corp. v. Jorda Enterprises, Inc.,* 277 F.R.D. 676, 688 (S.D. Fla. 2012)). The topics must be limited to subject areas that are relevant and proportional to the issues in dispute. *See Beaulieu v. Wells Fargo Bank, N.A.,* 2016 WL 2944048, at *2 (M.D. Fla. May 18, 2016) (finding that Rule 30(b)(6) topics "must be narrowly tailored and proportional to the needs of the case"). Otherwise, the notice becomes unduly burdensome—if not impossible—because it prevents the responding organization from identifying, educating, and preparing a witness to testify on the noticed matters. *Wells Fargo,* 2016 WL 2944048, at *2; *see also QBE,* 277 F.R.D. at 689 (explaining that the reasonable particularity requirement is a condition precedent to the corporate party's "duty to make a good faith, conscientious effort to designate appropriate persons and to prepare them to testify fully and non-evasively about the subjects.").

The topic areas at issue do not satisfy these basic requirements. As drafted, they are vague, overbroad, and untethered to the claims and defenses, making it unduly burdensome and, in certain respects, impossible for TMTG to prepare a knowledgeable Rule 30(b)(6) witness.

Discovery is also limited by Rules 26(b)(1) and 26(b)(2), which permit only nonprivileged discovery that is relevant to a party's claims or defenses and "proportional to the needs of the case," considering factors including the importance of the issues, the parties' access to information, the parties' resources, and whether the burden of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1), (b)(2). Where, as here, the deposition topics impose undue burden and seek disproportionate or irrelevant information, as well as privileged information, the Court may issue a protective order for good cause, including by forbidding the requested discovery or limiting the scope of examination. Fed. R. Civ. P. 26(c)(1)(A).

## B.    Topic 5 is overly broad, unduly burdensome, seeks irrelevant information, and is not proportional to the needs of the case.

Topic 5 is objectionable on numerous grounds, including because it is facially overbroad and disproportionate to the needs of the case. As framed, Topic 5 seeks testimony regarding "TMTG's financial condition and performance as reflected by":

i.    TMTG's financial statements from February 2022-March 2024, including the company's monthly revenues, expenses, and

**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

profits.

ii.    The company's monthly financial reviews and forecasts from February 2022-March 2024.

iii.    The company's Truth Social usage metrics contained within its monthly financial reviews.

iv.    The company's principal methods of reporting its liquidity and solvency to its Chief Financial Officer, Chief Executive Officer, and/or Board of Directors from February 2022-March 2024.

Each subtopic spans more than two years and encompasses tens of thousands of figures, data sets, and entries—from near the inception of TMTG through its merger with DWAC.[2] Even the most experienced and meticulous CFO could not reasonably be expected to provide narrative testimony across the volume of granular financial data without the deposition devolving into a "memory contest." *See Stoneeagle Services, Inc. v. Pay-Plus Sols., Inc.,* 2015 WL 12843846, at *2 (M.D. Fla. Apr. 29, 2015) (denying motion for sanctions due to alleged improper preparation of a 30(b)(6) witness and applying the reasonable particularity standard: "a 30(b)(6) deposition is not intended to be 'a memory contest,' and the notice of deposition topic concerned a broad range of financial categories. Even as CFO, Hemmer

---

[2] In October 2021, In October 2021, Digital World Acquisition Corp. (DWAC), a special purpose acquisition company, announced a merger with Trump Media & Technology Group (TMTG) — the parent company of the Truth Social platform — to take TMTG public. During the merger, over 566 public filings were submitted, including Form 425 filings, Form 8-K filings, Form 10-K annual reports, Form 10-Q quarterly reports, an S-1 filing, and an S-4 filing. Ultimately, on March 25, 2024, the merger closed and the combined entity began trading on the Nasdaq under the ticker symbol "DJT."

**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

should not be expected to memorize figures concerning a range of issues.").

Moreover, the defamatory Article (as defined in the Second Amended Complaint) at issue in this case was published on May 13, 2023, and TMTG's claimed damages—as calculated by TMTG's experts—cover a finite period from the date of publication until May 17, 2023. Topic 5 nevertheless seeks sweeping testimony about TMTG's financial condition for more than a year before publication and nearly a year after publication, much of which is, at best, unrelated to the claims and defenses in this matter. In light of the burden required to prepare a Rule 30(b)(6) witness to testify competently on this expansive topic, the testimony sought is disproportionate to the needs of the case, and Topic 5 should be substantially narrowed and limited to the relevant damages period.

## C. Topics 6 and 7 are overly broad, unduly burdensome, seek irrelevant information, and are not proportional to the needs of the case.

Topics 6 and 7 are similarly objectionable because they are facially overbroad and are oppressively disproportionate to the needs of this action. Topic 6 seeks "[a]ll valuations of TMTG that presented to TMTG's Board, its Chief Financial Officer, or its Chief Executive Officer. *See, e.g.,* TMTG Suppl. Resp. to The Post's Interrogatory No. 12." And Topic 7 seeks "[d]isclosures by TMTG Board members, its Chief Financial Officer, or Chief Executive Officer prior to the DWAC merger regarding the value of their shares of TMTG stock." As framed, these issues are not

tethered to any particular statement in the Article, any particular time period relevant to the claimed damages window, any defined valuation methodology, or any identified dispute in the pleadings. Instead, they demand an unbounded corporate narrative about valuation and share value—subjects that, in this case, are at most tangential and, as noticed, not relevant to any claim or defense.

Topics 6 and 7 effectively encompass any email, text message, Signal message, telephone message, letter, prospectus, memoranda, or any other document or communication of any kind—regardless of author, recipient, subject, context, or purpose—that merely references valuation or share value and involves any of the Board members, CFO, or CEO over the last five years. In practical terms, that would require TMTG to conduct a sweeping search-and-review effort across countless custodians and documents—including the over 3.4 million pages already produced in this case—and to interview numerous current and former personnel simply to prepare a corporate representative to attempt to speak to an amorphous universe of "all valuations" and "all disclosures" untethered to the issues in dispute.

That is precisely the sort of "vastly overly broad and unreasonably burdensome" 30(b)(6) topic that courts in this District reject. *See West v. Verizon Services Corp.,* 2010 WL 11482532, at *4 (M.D. Fla. July 12, 2010) (granting protective order where topic sought "all communications" concerning a program and would require reviewing every communication "regardless of format," creating

7

"extreme undue burden."); *Hickman v. Johnson,* 2019 WL 13545894, at *4 (M.D.
Fla. Mar. 26, 2019) (sustaining overbreadth objection where topic sought statewide
information over a five-year period that was mismatched to a single-claim case);
*Follese v. Jassas Capital LLC,* 2019 WL 13261800, * 6 (M.D. Fla. Feb. 25, 2019)
(denying motion to compel where response was "patently overbroad," sought an
"exhaustive narrative," and was not proportional to the needs of the case).

Accordingly, Topics 6 and 7 should be stricken or substantially narrowed. At
a minimum, any valuation-related inquiry should be limited to a clearly defined,
relevant time period and a specific, articulated nexus to the claims and defenses—
rather than an open-ended demand for "all valuations" and "all disclosures" across
an expansive, multi-entity definition that would impose a massive burden with no
corresponding benefit.

**D.    Topic 9 seeks irrelevant information that is not proportional to the needs
of the case.**

Topic 9 is objectionable on multiple grounds, including because it is facially
overbroad, not stated with reasonable particularity, and grossly disproportionate to
the needs of this case. Topic 9 seeks "[a]ll instances in which TMTG offered a
commission, broker's fee, or finder's fee in exchange for, or in connection with,
financing." The Article's challenged statements concern a single purported "referral
fee" in connection with a single, specific financing transaction. However, Topic 9 is

BRITO, PLLC
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

not confined to that alleged transaction, that company, that time period, or even that "referral fee," and demands testimony about every occasion—across the life of the company—where any type of "commission," "broker's fee", or "finder's fee" was offered "in exchange for, or in connection with, financing," regardless of whether any such offer had anything to do with the publication, the statements at issue, or any claimed damages period.

The overbreadth is compounded by Defendant's expansive definition of "TMTG," which sweeps in TMTG's "agents, attorneys, representatives, employees, subsidiaries, affiliates, divisions, assigns, officers, directors, predecessors, and/or successors," which would arguably include any such fees paid by TMTG's predecessors, subsidiaries, or affiliates. Topic 9 would effectively require TMTG to conduct a sweeping search-and-review effort across countless custodians and documents, including TMTG's expansive document production in this case, and to interview numerous current and former personnel simply to prepare a corporate representative to attempt to speak to an amorphous universe of "all instances" in which TMTG or any of its predecessors, successors, and affiliates offered a "commission," "broker's fee," or "finder's fee," untethered to the issues in dispute. *See West,* 2010 WL 11482532, at *4 (granting protective order where topic sought "all communications" concerning a program and would require reviewing every communication "regardless of format," creating "extreme undue burden.");

9

*Hickman,* 2019 WL 13545894, at *4 (sustaining overbreadth objection where topic sought statewide information over a five-year period that was mismatched to a single-claim case); *Follese,* 2019 WL 13261800, * 6 (denying motion to compel where response was "patently overbroad," sought an "exhaustive narrative," and was not proportional to the needs of the case).

Accordingly, Topic 9 should be stricken or substantially narrowed. At a minimum, any inquiry should be limited to the single transaction and counterparty referenced in the Article and the specific issue actually in dispute—whether any finder's fee was paid (or agreed to) in that discrete circumstance. A free-ranging inquiry into "all instances" of commissions, broker's fees, or finder's fees connected to any financing would impose an enormous burden, invite collateral mini-trials about unrelated transactions, and yield no probative value in this action.

**E.   Topics 12 and 13 improperly demand expert computations and opinions through a corporate representative.**

Topics 12 and 13 are objectionable in that they seek to force a Rule 30(b)(6) witness to serve as a proxy expert, provide expert-level computations, and identify and catalogue every "principal document" (with Bates numbers) purportedly supporting each component of TMTG's damages. While TMTG does not object to producing witness(es) to testify generally regarding the categories of damages claim and the amounts claimed (as disclosed), the remainder of these topics—particularly

the demand for the "basis" for each calculation, the "specific numerical calculations"

underlying the $2.78 billion originally demanded in Plaintiff's Second Amended

Complaint, and a Bates-number index of "principal documents"—far exceeds the

proper scope of Rule 30(b)(6), is not described with reasonable particularity, and is

disproportionate under Rule 26(b)(1).

Topic 12 purports to seek "TMTG's claimed injury and/or damages," and then

requires, for each category of damages, "(a) the amount, and the basis for that

calculation; and (b) the principal documents related to the claim, including the Bates

number of each document." Topic 13 goes further, demanding "[t]he specific

numerical calculations used to prepare TMTG's $2.78 billion compensatory

damages demand," as set forth in TMTG's Second Amended Complaint.

As noticed, these Topics are not a reasonable inquiry into what categories of

damages TMTG claims or what it contends it suffered. Instead, they require a

30(b)(6) witness to master and reproduce the detailed numerical methodologies and

computations that are the subject of expert analysis—precisely the kind of testimony

courts hold is better suited to expert discovery and expert depositions, not a Rule

30(b)(6) witness.[3] *See FDIC v. Brudnicki,* 2013 WL 5814494, at *3 (N.D. Fla. Oct.

29, 2013) (stating that a Rule 30(b)(6) "is not required to be prepared to explain the

---

[3] TMTG has designed its expert witnesses, has produced their expert report and
their depositions are being conducted.

expert opinions and conclusions"); *Club v. BNSF Ry. Co.,* 2016 WL 4528452, at *3
(W.D. Wash. Aug. 30, 2016) (protective order warranted where experts who drafted
the reports are "better qualified to testify about their contents than a Rule 30(b)(6)
witness."); *Trustees of Boston Univ. v. Everlight Elecs. Co., Ltd.,* 2014 WL
5786492, at *4 (D. Mass. Sept. 24, 2014) (denying motion to compel: "A party may
properly resist a Rule 30(b)(6) deposition on the grounds that the information sought
is more appropriately discoverable through contention interrogatories and/or expert
discovery."); *Burton v. AbbVie, Inc.,* 2023 WL 4677024, at *4 (C.D. Cal. June 21,
2023) (granting motion for protective order against 30(b)(6) deposition: "Courts
have also disallowed Rule 30(b)(6) testimony where the information sought is more
properly within the purview of expert testimony."); *Brooks v. Caterpillar Glob.
Mining Am., LLC,* 2016 WL 5213936, at *5 (W.D. Ky. Sept. 20, 2016) (granting in
part motion for protective order on 30(b)(6) deposition—expert, not 30(b)(6)
witness, is proper deponent where information is in expert opinions); *In re Reagor-
Dykes Motors, LP,* 2021 WL 5226485, at *2 (Bankr. N.D. Tex. Nov. 4, 2021)
(sustaining objection to proposed 30(b)(6) topic where testimony would be
duplicative of expert and would burden party to prepare as expert); *Vyas for & on
behalf of Q3 I, L.P. v. Polsinelli PC,* 2023 WL 4706160, at *3 (M.D. Fla. July 24,
2023) (denying motion for sanctions connected to a 30(b)(6) deposition) (relying on
*Trustees of Boston Univ. v. Everlight Elecs. Co., Ltd.,* 2014 WL 5786492, at *4 (D.

Mass. Sept. 24, 2014)).

Here, Topic 13 is an explicit attempt to obtain step-by-step numerical computations underlying TMTG's damages demand. Requiring a corporate representative to explain and defend those computations would improperly convert the 30(b)(6) witness into an expert witness.

Topic 12 also demands that, for each category of damages, TMTG identify "the principal documents related to the claim, including the Bates number of each document." That is not a topic for testimony. It is a document-indexing project. It would require TMTG to create a curated catalogue of what documents are "principal" across a massive production, making subjective judgments about which documents qualify as "principal," which is facially disproportionate under Rule 26(b)(1) and imposes a substantial burden on TMTG, particularly where the relevant computations and supporting materials are properly explored through expert reports and expert depositions.

Finally, to the extent Topic 13 seeks the "specific numerical calculations" behind a dollar figure referenced in the pleading, the operative damages for discovery and trial are those supported and explained in TMTG's expert opinions and disclosures—not any early pleading demand drafted by counsel. Defendant's proper avenue to probe the calculations is expert discovery and expert deposition, not an effort to compel a corporate designee to perform and defend expert-level

**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

damages.

**F.    Topics 15, 16, and 18 are facially improper, lack reasonable particularity, are disproportionate, and demand expert opinions through a corporate representative.**

Topics 15, 16, and 18 are objectionable because they do not comply with Rule 30(b)(6)'s reasonable particularity requirement, are open-ended and untethered to the issues in this case, and would impose an oppressively disproportionate burden under Rule 26(b)(1). These Topics also seek discovery about other lawsuits and regulatory matters in a manner that would require an expansive, cross-matter excavation and counsel-driven judgments about what "relates to" these Topics— thereby inviting intrusion into counsel's mental impressions and legal analysis.

**1.    These Topics fail Rule 30(b)(6)'s reasonable particularity requirement.**

Rule 30(b)(6) requires topics to be described with reasonable particularity— *i.e.,* with sufficient precision to allow the responding party to identify the universe of information at issue, select appropriate designees, and prepare them without guessing. Courts recognize this requires designation of subject areas with "painstaking particularity." *See Beaulieu v. Bd. of Tr. of Univ. of W. Florida,* 2007 WL 9734886, at *7 (N.D. Fla. Oct. 4, 2007); *see also Wells Fargo,* 2016 WL 2944048, at *2. These Topics do the opposite. They are framed at a level of abstraction that leaves TMTG without meaningful guardrails and intentionally

**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

subjects TMTG to improper impeachment later. *See Am. K-9 Detection Services, Inc. v. Rutherfoord Int'l, Inc.,* 2016 WL 7183365, at *5 (M.D. Fla. May 16, 2016) ("[T]estimony given at a Rule 30(b)(6) deposition is evidence, which, like any other deposition testimony, can be contradicted and used for impeachment purposes.").

Topic 15 seeks testimony about "TMTG's other defamation claims asserted from February 1, 2021 to present," including "claims threatened" in an interrogatory response and damages allegations in two separate state court matters. This is not a discrete "topic." It is a sweeping demand for an ever-expanding universe of disputes, threatened disputes, pre-suit communications, pleadings, strategies, and related materials across a multi-year period.

Topic 16 seeks testimony about "TMTG's damages allegations" in a separate case (*Digital World Acquisition Corp. v. Arc Global Investments II, LLC,* Case No. 2024 CA 001061 NC, filed in the Circuit Court of the Twelfth Judicial Circuit, Sarasota County, FL), plus "identification of any pleadings or interrogatory responses characterizing TMTG's damages or the causes of those damages." Again, this is not a defined subject for testimony. It is an open-ended request to inventory and synthesize positions taken in another litigation, untethered to any identified issue here.

Topic 18 seeks testimony about "any investigation" by the Securities and Exchange Commission ("SEC") or Department of Justice ("DOJ") into TMTG

BRITO, PLLC
2121 Ponce De Leon Boulevard, Suite 650 | Coral Gables, Florida 33134
Telephone: (305) 614-4071

and/or the DWAC merger, including dates and subjects of each investigation and the company's "communications with the SEC and DOJ." That is not tailored to any particular investigation, time period, subject matter, or category of communications, and would sweep in potentially privileged legal communications, work product, and confidential regulatory correspondence. As noticed, this Topic is unlimited and unbounded.

Because these Topics are broad labels ("other defamation claims," "damages allegations," "any investigation," and "communications"), they leave TMG guessing what Defendant contends is within the scope, which is precisely what Rule 30(b)(6)'s reasonable particularity requirement is designed to prevent.

### 2. Topics 15 and 16 are improper cross-litigation fishing expeditions unrelated to the claims and defenses here.

Topics 15 and 16 are improper because they seek testimony about other lawsuits—including pleadings, discovery responses, and damages allegations—in a manner that has no meaningful nexus to the claims and defenses in this case. A Rule 30(b)(6) deposition is not a vehicle to conduct an expansive audit of a party's positions across unrelated litigation and then attempt to mine for purported inconsistencies. Defendant cannot notice such open-ended corporate representative topics demanding "all" other defamation claims or "all" damages allegations from other litigations over years.

Courts routinely reject 30(b)(6) topics that are not tailored to the issues in the case and would require the responding party to canvass vast quantities of information beyond the dispute at hand. *See, e.g., West,* 2010 WL 11482532, at *4 (granting protective order where topic sought "all communications" and imposed extreme undue burden); *Hickman,* 2019 WL 13545894, at *4 (sustaining overbreadth objection where topic far exceeded limited scope of the case).

Here, the defamation claims and defenses turn on the statements in the Article, not on what TMTG pled or contended in separate actions against different defendants involving different publications and different facts. Topics 15 and 16, therefore, seek information that is not proportional to the needs of this case.

### 3.    These Topics are oppressively disproportionate under Rule 26(b)(1).

Even if there were some conceivable relevance, the burden is extreme relative to any probative value.

Topic 15 (other defamation actions since February 2021) would require TMTG to identify and review materials across multiple matters (including threatened claims), locate and interpret pleadings and discovery positions, and prepare a witness to testify about the "what, when, why, and how" of those other claims. That would be a cross-matter excavation exercise—particularly where "claims threatened" could encompass pre-suit letters, internal communications, and

attorney analyses.

Topic 16 requires TMTG to search for and familiarize the witness with any pleadings or interrogatory responses in a separate case that characterize damages or causes of damages. That invites an exhaustive, counsel-driven search for "anything that could be characterized as damages" in another litigation, followed by narrative testimony synthesizing those allegations.

Topic 18 would require an expansive investigation into "any" SEC or DOJ inquiry and "communications" about it—sweeping in legal correspondence, regulatory strategy, and privileged communications. Preparing a witness to testify comprehensively about "any" investigation and "communications" would be substantial and potentially impossible without crossing privilege boundaries.

This is the type of disproportionate discovery that Rule 26(b)(1) guards against.

### 4. The Topics improperly intrude on counsel's mental impressions and legal analysis.

Topics 15 and 16, in particular, would require TMTG (and its counsel) to decide what "counts" as an "other defamation claim," what "damages allegations" are "included," and what pleadings or discovery responses "characterize" damages or their causes—across different matters and contents. That exercise necessarily turns on legal judgment and litigation strategy, including what counsel believed was

**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

material, what theories were advanced, and how claims were framed. Topic 18 likewise sweeps in communications with regulators that are commonly intertwined with counsel's legal advice, privilege issues, and work product.

In substance, these Topics would force counsel to map and curate cross-litigation positions and regulatory communications, making an attorney's mental impressions and legal analysis an unavoidable component of "preparing" a witness. Such an inquiry is improper. *See e.g., S.E.C. v. Kramer*, 778 F. Supp. 2d 1320, 1328 (M.D. Fla. 2011) ("To the extent that Kramer's subsequent examination sought either the work product or mental impression of Commission counsel, the Commission's designated deponent retained the right to refuse to answer on the basis of privilege."); *see also In re Bilzerian*, 258 B.R. 846, 849 (Bankr. M.D. Fla. 2001) (same).

### 5. To the extent these Topics seek "damages" and "causes of damages," they improperly demand expert testimony through a Rule 30(b)(6) witness.

Topics 15 and 16 are also objectionable because they seek testimony about damages allegations and the causes of those alleged damages drawn from other litigation—subjects that, to the extent relevant at all, are properly the domain of expert testimony and expert discovery, not a Rule 30(b)(6) corporate representative. This is not a request for discrete historical facts. It is an attempt to elicit expert-style causation and damages analysis through a corporate designee, requiring TMTG to

synthesize and defend damages theories and causation narratives from unrelated litigations. As explained above, those topics are improper. *See supra* § E.

Further, to the extent Defendant invokes Topic 18 as a backdoor effort to elicit testimony regarding damages and the purported causes of damages—i.e., to develop a causal chain between any alleged conduct, SEC or DOJ inquiry, penalties, reputational harm, and merger delays—Topic 18 is objectionable for the same reason. That is not a request for discrete, non-technical historical facts. It is an attempt to compel expert-style causation and damages analysis.

Accordingly, Topics 15, 16, and 18 should be stricken.

### G.     Topic 17 is Facially Overbroad, Lacks Reasonable Particularity, and Improperly Seeks Expert Causation Testimony.

Topic 17 is objectionable because it fails Rule 30(b)(6)'s reasonable particularity requirement and is oppressively disproportionate under Rule 26(b)(1). It also improperly seeks expert-style causation testimony by demanding a corporate designee identify and explain "all causes" of merger delay and to catalogue every disclosure about those "causes" across a period of time.

By demanding testimony about "all causes" of "the delay" of the merger that TMTG "ever disclosed," Topic 17 is open-ended in every dimension—time, subject matter, and universe of materials. It does not identify any relevant time window, any particular delay period, any defined meaning of "cause," or what qualifies as a

BRITO, PLLC
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

"disclosure" (e.g., SEC filings, press releases, internal communications, investor presentations, emails, texts, media interviews, statements by third parties, etc.). The Topic, therefore, leaves TMTG without meaningful limits to govern witness preparation and forces TMTG to guess at the scope of what Defendant contends is encompassed—precisely what Rule 30(b)(6) prohibits.

Topic 17 also requires TMTG to: (i) determine what "causes" of merger delay it has "ever disclosed," and then (ii) identify the "date(s)" and "manner(s)" of each disclosure. That is a classic "scour the universe and itemize every statement touching the subject" request that is not a proper subject for 30(b)(6) testimony. Preparing a witness would require TMTG to locate, review, and synthesize potentially countless statements across multiple channels and years, then organize them into a chronology with attribution as to "cause" and disclose method. That is exactly the kind of oppressive catalogue of information Rule 26(b)(1) does not require, and Rule 30(b)(6) is not intended to facilitate.

Finally, Topic 17 is objectionable because it seeks testimony about "all causes" of merger delay—an inherently evaluative inquiry that invites expert-style causation analysis and narrative attribution, not just discrete historical facts. Determining "causes" of complex transactional delay typically involves technical and expert judgment (regulatory process, market conditions, negotiations, due diligence, financing, litigation risk, governance issues, SEC review timelines, etc.),

and any attempt to rank, apportion, or attribute causal weight is classic expert territory. Rule 30(b)(6) does not require a party to prepare a designee to provide expert opinions or to explain and defend expert causation conclusions.

Accordingly, Topic 17 should be stricken or substantially narrowed.

## **CONCLUSION**

WHEREFORE, TMTG respectfully requests that the Court enter a protective order quashing or limiting the scope of Topics 5, 6, 7, 9, 12, 13, 15, 16, 17, and 18 for the reasons set forth above, and for such further relief as the Court deems just and proper.

## **CERTIFICATION PURSUANT TO RULE 37 AND LOCAL RULE 3.01(g)**

Pursuant to Rule 37 and M.D. Fla. R. 3.01(g), the parties have met and conferred in good faith about their positions regarding the issues raised in this Motion, including via Zoom and via telephone that transpired, and through written correspondence that was exchanged, from November 17, 2025, through February 20, 2026. The parties have been unable to reach an agreement on the topics in this Motion.

**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Dated: February 20, 2026                    Respectfully submitted,

                                            **BRITO, PLLC**
                                            *Counsel for Plaintiff*
                                            2121 Ponce de Leon Boulevard
                                            Suite 650
                                            Miami, FL 33134
                                            Office: 305-614-4071
                                            Fax: 305-440-4385

                                            By: /s/ *Alejandro Brito*
                                            _____
                                                **ALEJANDRO BRITO**
                                                Florida Bar No. 098442
                                                Primary: abrito@britopllc.com
                                                Secondary: apiriou@britopllc.com
                                                **JALAINE GARCIA**
                                                Florida Bar No. 58632
                                                Primary: jgarcia@britopllc.com
                                                **IAN MICHAEL CORP**
                                                Florida Bar No. 1010943
                                                Primary: icorp@britopllc.com

**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed

on February 20, 2026 through the Court's CM/ECF electronic filing system upon:

Carol J. LoCicero, Esq.
Linda Riedemann Norbut, Esq.
Thomas & LoCicero, PL
601 South Blvd
Tampa, FL 33606-2629
clocicero@tlolawfirm.com
lnorbut@tlolawfirm.com

Thomas G. Hentoff, Esq.
Nicholas G. Gamse, Esq.
Williams & Connolly
680 Maine Avenue S.W.
Washington, DC 20024
thentoff@wc.com
ngamse@wc.com
*Counsel for Defendant*

By: /s/ *Alejandro Brito*

**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071