# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

TRUMP MEDIA & TECHNOLOGY GROUP CORP.,

     Plaintiff,

vs.

WP COMPANY LLC d/b/a The Washington Post,

     Defendant.

_____/

Case No: 8:23-cv-01535-TPB-AAS

## DEFENDANT'S MOTION TO COMPEL DISCOVERY FROM PLAINTIFF

In fall 2025, this Court issued several Orders directing Plaintiff Trump Media & Technology Group Corp. ("TMTG") to (1) complete document production, (2) provide The Post with key information about its document collection and searches, and (3) respond to The Post's discovery requests. Despite those Orders and The Post's continuing attempts to obtain important discovery without burdening the Court, TMTG still has not complied with the Court's Orders.

Although the Court ordered TMTG to produce all of the documents responsive to The Post's Requests for Production ("RFP" or "RFPs") by November 26, Order, Nov. 19, 2025 Order at 3, ECF No. 128 ("Nov. 19 Order"), TMTG conceded to The Post on February 13, 2026, after repeated inquiries from The Post, that it had failed to search the custodial files of one of its four key witnesses, CFO Phillips Juhan. TMTG's delays have required The Post to seek leave from the Court to depose Mr. Juhan out of time. *See* ECF No. 144. TMTG has also failed to produce other documents that were subject to the Court's Order.

What is more, since the fall, TMTG has stonewalled The Post's new efforts to obtain discovery. It has declined to respond to multiple targeted discovery requests. And it has failed to respond to The Post's many letters regarding deficiencies with its privilege logs. The Post has tried to resolve these issues with TMTG through repeated conferrals and correspondence, but all such efforts have proved unsuccessful.

While The Post could have sought to move on numerous other issues, The Post seeks the Court's intervention to ensure TMTG fulfills its obligations only as to limited issues central to The Post's defense. The Court should grant this motion.

## BACKGROUND

TMTG initiated this action in May 2023. After the Court dismissed its first two complaints without prejudice, TMTG filed its Second Amended Complaint (the "SAC") in January 2025, alleging only two statements in the May 13, 2023 article titled "Trust linked to porn-friendly bank could gain a stake in Trump's Truth Social" (the "Article") were false and defamatory. *See* SAC, ECF No. 70. The Court contemplated swift and efficient discovery: it calendared the beginning of document production for 21 days after the Court's ruling on The Post's motion to dismiss the SAC (which ultimately resulted in a start date of June 27, 2025). April 1, 2025 Order, ECF No. 77; *see* ECF No. 83. The Court ordered all discovery be complete by February 28, 2026. *See* ECF No. 88.

As described in The Post's first Motion to Compel, ECF No. 93, TMTG failed to timely produce a single document in response to The Post's document requests.

Through a series of discovery conferences, this Court ordered TMTG to comply with its discovery obligations.

First, the Court ordered on October 2 that TMTG begin producing documents by October 10.  Oct. 2, 2025 Order, ECF No. 99 ("Oct. 2. Order").  It also ordered that TMTG produce all documents produced to date in *Digital World Acquisition Corp. v. Arc Global Investments II, LLC,* Case No. 2024 CA 001061 NC, filed in the Circuit Court of the Twelfth Judicial Circuit, Sarasota County, Florida (the "*DWAC* Case") by October 17.  *Id.*

By the October 24 hearing, TMTG had produced fewer than two hundred documents responsive to The Post's discovery requests and none from the *DWAC* Case.  *See* Oct. 19, 2025 Joint Notice at 5, 7, ECF No. 103.  The Court set new deadlines for TMTG:  (1) produce all documents from the *DWAC* Case by October 29, (2) produce all documents relevant to TMTG's damages claim by October 31, and (3) produce all other documents related to The Post's first set of document requests by November 7.  Oct. 24, 2025 Order, ECF No. 112 ("Oct. 24 Order").

By the November 19 hearing, facing ongoing deficiencies, the Court yet again ordered TMTG to promptly fulfill its discovery obligations.  Specifically, in addition to TMTG's obligations under its previous Orders, the Court required TMTG to take action including:

(1) Produce all documents in response to The Post's Second Set of RFPs by November 26, 2025, and

(2) Provide an "updated report of the repositories searched, the date range

of data available for each repository, the search terms and hits for each search term" by November 26, 2025.  Nov. 19 Order.[1]

In response to the Court's Orders directing production of documents, TMTG made a superficial production of documents in response to The Post's First Set of RFPs by November 7, and a production of documents purportedly in response to The Post's Second Set of RFPs by November 26.  It also provided a purported "hit report" with information about repositories searched and hits on its search terms, which it amended a few weeks later on December 4.

However, as became apparent, TMTG's search and collection of documents as well as the "hit report" it provided The Post suffered from myriad flaws.  TMTG used unduly narrow search terms—for example, it had not searched "Entoro," the commonly-used name of the counterparty for the finder's fee agreement at the core of TMTG's defamation claims.  Recognizing these issues, TMTG in open court and in subsequent meet and confers agreed to run a broader set of search terms proposed by The Post.[2]  *See, e.g.*, Nov. 19, 2025 Tr. at 19:1-12.

Over the ensuing months, The Post tried exhaustively to work with TMTG to address its deficient productions to avoid burdening the Court with further motion

---

[1] The Court also denied without prejudice The Post's request for sanctions, inviting The Post to "file a motion specifically requesting what amount [The Post] think[s] would be appropriate for sanctions based on the ruling and what's been—what relief [The Post has] received and have not received in response to these discovery requests."  Nov. 19, 2025 Tr. at 66:24-67:2; *see* Nov. 19 Order at 3-4.

[2] Although TMTG provided the Court-ordered hit report after the November 19 hearing, it had previously shared the search terms it ran with The Post, which prompted the discussion of search terms in the November 19 hearing.

practice.  TMTG repeatedly represented its productions were ongoing, which made it all but impossible for The Post to determine whether responsive documents were simply forthcoming or missing.  TMTG continued to make rolling productions through February.  *See, e.g.*, Ex. 21 (Feb. 6 Email from J. Garcia).

Despite this Court's many orders, and The Post's exhaustive efforts to address issues directly, TMTG's discovery responses still suffer many deficiencies.

First, as described in more detail below, despite the Court's November 26 deadline, TMTG has failed to provide a complete production in response to The Post's document requests.  Most significantly, TMTG failed (1) to timely produce documents from its CFO Mr. Phillip Juhan; (2) to timely produce documents from DWAC's former CEO Eric Swider; and (3) to produce key documents it agreed to produce (and was ordered to produce), such as prior testimony for its witnesses.[3]

---

[3] TMTG's productions haven fallen short in other ways, including providing an incomplete production of documents from its Chief Communications Officer Mr. Jacob Langer.  Mr. Langer ran his own search terms and forwarded information he believed relevant to counsel.  As a result, TMTG's production was deficient on its face, as it failed to include responsive documents, critical metadata, and a privilege log, which TMTG only provided on February 27.  The Post has not had an opportunity to fully review the log, but from an initial review, the issues The Post identifies with TMTG's prior privilege logs are equally applicable to Mr. Langer's.  *See infra* Section III. Given the short time frame and The Post's attempts to promptly file this motion, The Post requests leave to raise any unresolved issues at any future discovery hearing on these matters

In addition, TMTG has not produced files from John Haley, its outside counsel, which are also within TMTG's custody or control.  The Post brought the production and collection of Mr. Haley's files to the Court's attention in November, *See* Joint Disc. Status Update at 20–22, ECF No. 119, but TMTG never provided a clear response.  When The Post served a subpoena upon Mr. Haley's firm, Nelson Mullins, Nelson Mullins advised The Post that it provided any responsive files from Mr. Haley to TMTG on February 20.  Ex. 16 at 2.  The Post only became aware of this issue on February 24 and has raised it with TMTG, which stated a production will be forthcoming.

Today, The Post does not seek relief on these issues and other similar issues to minimize the number of disputes before the Court.  The Post, however, reserves its rights based on TMTG's late and deficient disclosures.

Second, since December, TMTG has refused to provide discovery in response to several interrogatories and document requests. The Post received TMTG's Responses and Objections to several of The Post's interrogatories and document requests in late January and February, in which TMTG refused to provide disclosures or produce documents, and The Post's efforts to confer have been unsuccessful. Most significantly:

(1)    TMTG refused to respond to The Post's Interrogatory No. 22, which seeks to clarify why TMTG failed to produce 90% of documents that hit on the search term "Entoro," and to its Interrogatory No. 23, which seeks identification of TMTG's monthly financial reports;

(2)    TMTG refused to respond to The Post's RFP Nos. 48, 49, and 51, which seek targeted disclosure on key issues: Board materials related to Entoro, the delayed merger, or TMTG's damages (RFP No. 48); TMTG's relevant disclosures from the *DWAC* Case (RFP No. 49); and documents related to Entoro (RFP No. 51); and

(3)    TMTG withheld almost two-thirds of its responsive documents based on inaccurate or dubious privilege assertions and failed to substantively respond to The Post's multiple inquiries regarding its privilege log, or to address any of the issues raised by The Post.

## **GOVERNING STANDARD**

A party may discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P.

6

26(b)(1).  "Relevance in the context of discovery has been construed broadly to encompass any matter that bears on, or that reasonably could to other matter that could bear on, any issue that is or may be in the case." *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) (citation omitted).

Under Federal Rule of Civil Procedure 37(a)(1), "a party may move for an order compelling disclosure or discovery."  "If the Motion is granted, the Court must require the non-moving party whose conduct necessitated the Motion, to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Rivera v. Deer Run Realty & Mgmt., Inc.*, 2016 WL 11566325, at *1 (M.D. Fla. June 15, 2016).

In addition, under Rule 37(b), "[t]he Court may also impose discovery sanctions, including dismissal, when a party fails to obey an order to provide or permit discovery." *Rivera*, 2016 WL 11566325, at *1.  Those sanctions—except the sanctions of default and dismissal—are available even where the party did not act "willful[ly] or in bad faith." *CS Bus. Sys., Inc. v. Schar*, 2017 WL 9939116, at *1 (M.D. Fla. Sept. 5, 2017) (citation omitted) (awarding 37(b)(2) sanctions).  If it awards such sanctions, "[t]he Court must also award reasonable attorney's fees against the party failing to act." *Rivera*, 2016 WL 11566325, at *2.

## ARGUMENT

### I.    TMTG Should be Required to Complete Its Productions in Response to The Post's First and Second Requests for Production.

The Court ordered TMTG to complete production of documents responsive to The Post's First and Second Sets of RFPs by November 7, 2025 and November

7

26, 2025, respectively.  Three later, TMTG still has not done so.  Accordingly, The Post respectfully requests an Order that further compels TMTG to complete its productions and sanctions for its failures to date.

### A.    TMTG Should Be Compelled to Produce Phillip Juhan's Documents and Hit Report.

TMTG failed to comply with the Court's October 24 and November 19 Orders compelling the production of Phillip Juhan's documents.

The Post has repeatedly raised concerns about the adequacy of TMTG's collection and search process.  Notably, The Post shared these concerns with the Court in November, explaining that TMTG's production "included no documents from three of [the] four custodians" TMTG identified in its Initial Disclosures: Devin Nunes, Jacob Langer, and Phillip Juhan.  *See* Joint Disc. Status Update at 8–9, ECF No. 119.  Before the Court, TMTG represented that Mr. Juhan's custodial files were collected and searched, but (erroneously) suggested he did not appear as the custodian of any records because they were duplicates of documents already tagged to a different custodian, such as Mr. Glabe.  Nov. 19, 2025 Tr. at 62:17– 63:13.  Not only was TMTG's explanation incredible—i.e., that Mr. Juhan possessed no unique documents—but it was also contradicted by TMTG's hit report,[4]  which identified thousands of documents from Mr. Juhan's files that The Post had not received.  After the November 19 Hearing, and as it became clear that

---

[4] TMTG sent The Post a hit report on November 26 as ordered by the Court. It then sent a "corrected" hit report on December 4, which—as is apparent from this discussion—was inaccurate in several ways, including that it listed "hits" on files for which documents were not produced (like Mr. Juhan) and provided date ranges of only days or weeks for other custodians.  *See* Ex. 8.

TMTG's supplemental productions still did not include Mr. Juhan's documents,
The Post repeatedly asked TMTG to address these issues.[5] TMTG denied there was
any irregularity, insisting it was "a product of the vendor's de-duping," and failed
to address the issues.  Ex. 21 (Feb. 6, 2026 Email from J. Garcia).

Months later, on the parties' February 13, 2026 conferral, TMTG conceded
that it had not searched or produced documents from Mr. Juhan's custodial files.
The Post had timely noticed Mr. Juhan's deposition for February 19.  Though it
had represented it could produce Mr. Juhan's documents by February 16, TMTG
missed this deadline, producing his documents on February 20, 23, 24, and 25.

What is more, TMTG's productions still appear deficient.  Despite its
representations that it collected Mr. Juhan's files, TMTG produced documents
from Mr. Juhan's emails but no other repositories.  TMTG's Interrogatory
Responses and Mr. Juhan himself testified that he had responsive documents on
both his computer and phone.[6]  ECF 119 at 18; Ex. 1 at 12.  Further, Mr. Wilkerson
produced responsive text messages with Mr. Juhan that which were absent from
TMTG's productions.  *See, e.g.*, Ex. C to Joint Disc. Status Update, ECF 119-03.

In connection with these issues, The Post requested that TMTG provide an

---

[5] Ex. 17 (Dec. 11, 2025 Email from I. Beaton); Ex. 18 (Jan. 9, 2025 Email from I. Beaton); Ex. 19 (Jan. 22, 2026 Email from N. Gamse); Ex. 20 (Feb. 4, 2026 Email from I. Beaton); Ex. 21 (Feb. 9, 2026 Email from N. Gamse).  The parties have also conferred repeatedly about these issues in videoconferences, as described in the statement of conferral.  Given the length of the email chains, some have been excerpted.  The Post is able to provide any full chain upon the Court's request.

[6] TMTG indicated that it was finished producing documents from Mr. Juhan's files on February 25.  Given The Post's longstanding concerns that TMTG had not searched all repositories for its custodians, *e.g.*, ECF 119 at 6-10, The Post raised the lack of documents from his computer and email via email on February 25 and 26.

updated version of the Court-ordered hit report to assess, showing the search term hits against Mr. Juhan's repositories. *See, e.g.*, Ex. 19. TMTG indicated that it would check with its e-discovery vendor, but has not provided the report.

In short, over the past months, TMTG has flouted its discovery obligations. Because of TMTG's failure to comply with the Court's Orders, The Post has suffered costly and unfairly prejudicial delays, which have, among other things, required The Post to seek Mr. Juhan's deposition out of time. *See* ECF No. 144. The Court should therefore (1) compel the immediate disclosure of the hit report, as previously ordered, with information sufficient to determine whether hits were located on Mr. Juhan's computer and phone; and (2) compel complete and immediate production of Mr. Juhan's documents, including from his computer and phone, or verification that it is complete.[7]

## B. TMTG Should Be Compelled to Produce Eric Swider's Documents and Hit Report.

TMTG intends that it may rely on the testimony of Eric Swider, the CEO of DWAC at the time the Article was published, at trial. Ex. 15 at 4; Ex. 19 (Jan. 21, 2026 Email from J. Garcia). His documents relevant to this case are within TMTG's possession, custody, and control; however, TMTG's productions have not

---

[7] TMTG also served a series of privilege logs as recently as February 25 indicating that more than 75% of Mr. Juhan's responsive documents were withheld, purportedly due to accounting and attorney client privileges. The Post has raised concerns with these logs, but given the late timing of the disclosures, TMTG has not responded and The Post has not had an opportunity to confer. However, it notes that many of the issues plaguing TMTG's prior privilege logs are equally applicable to Mr. Juhan's. *See infra* Section III. Given the short time frame, the volume of the logs, and The Post's attempts to promptly file this motion, The Post requests leave to raise any unresolved issues at any future discovery hearing on these matters.

included a single document from his custodial file.  After The Post raised this issue

with TMTG, in the parties' January 29 conferral, TMTG responded that it did not

know whether it had collected and searched Mr. Swider's documents.  Ex. 20 (Jan.

30, 2026 Email from I. Beaton).  None of his repositories appeared on TMTG's "hit

report."  *See* Ex. 8.  The Post followed up on February 4 and February 9.  To date,

TMTG has not produced any documents from his custodial file (the same issue that

raised concerns with Mr. Juhan's files).

TMTG was obligated to produce Mr. Swider's documents in response to The

Post's document requests.  *See* Nov. 19 Order; Fed. R. Civ. P. 37(b).  If TMTG

intends to rely on Mr. Swider, The Post requests that the Court compel production

of his documents responsive to The Post's discovery requests and a hit report.

### C.    TMTG Should Be Compelled to Produce Prior Testimony of its Witnesses.

TMTG failed to comply with the Court's Orders to produce testimony from

the *DWAC* Case.  The Post requested "transcripts or other records of testimony,

including deposition testimony or sworn affidavits or declarations, related to

TMTG's potential or actual financing, value, or reputation, made by any witness

identified in your Initial Disclosures" in several cases, including the *DWAC* Case.

Ex. 2 at 5.  In response, TMTG agreed to "produce any non-privileged and

responsive documents."  *Id.*[8]  The Court ordered TMTG to produce documents

responsive to The Post's Second Set of RFPs, which included the request seeking

---

[8] TMTG asserted limited objections to this request, objecting "to the extent it is vague and ambiguous as to potential or actual financing, value, or reputation."  *Id.*

this testimony, by November 26, 2025.  Nov. 19 Order at 5.  Nevertheless, TMTG
has still failed to produce any testimony from the *DWAC* Case.

Responsive witness testimony from the *DWAC* Case exists.    Several
witnesses identified in TMTG's Initial Disclosures here have been deposed in that
case, including Patrick Orlando, Devin Nunes, Scott Glabe, Eric Swider, and Andy
Litinsky.  *See* Ex. 3.  The Post pointed to the existence of this deposition testimony
in its January 29 and February 13 conferrals with TMTG and specifically requested
the transcript from Mr. Glabe's deposition on February 25.  TMTG, however, has
still not produced any depositions transcripts from the *DWAC* Case.

Instead, TMTG appears to raise belated objections to producing any
testimony. In the February 13 conferral, TMTG suggested it had no obligation to
produce deposition transcripts from the *DWAC* Case, notwithstanding its prior
discovery response and the Court's Order.  But TMTG has no basis to oppose
production now.  It forfeited any objection that could justify the full withholding
of all deposition testimony.  *See, e.g.*, *Treminio v. Crowley Mar. Corp.*, 2023 WL
8615135, at *3 (M.D. Fla. Dec. 13, 2023) ("The failure to file objections within the
time constraint of Rule 34 results in the waiver of such objections.").

The Post respectfully requests that the Court order TMTG to immediately
produce deposition transcripts responsive to The Post's RFP No. 36.

## II.    TMTG Should Be Compelled to Respond to The Post's Targeted Additional Discovery Requests.

TMTG improperly refuses to respond to certain of The Post's Third and
Fourth Sets of RFPs and its Fourth and Fifth Sets of Interrogatories.  The Post

served these targeted requests in part because of the inadequacy of TMTG's earlier productions.  Despite several conferrals, TMTG stands on its objections.

###    A.    TMTG Should be Compelled to Produce Relevant Initial Disclosures and Interrogatories from the *DWAC* Case.

The Post's RFP No. 49 requests that TMTG produce

> TMTG's Rule 26(a)(1) initial disclosures, interrogatory responses or other sworn or verified disclosures from any lawsuit, including but not limited to [the *DWAC* Case], which relate to Entoro, ES Family Trust, Finder's Fees, TMTG's value or reputation, TMTG's financial performance, or the delay of the merger between TMTG and Digital World Acquisition Corp.

Ex. 4 at 8; Ex 5 at 8.[9]  TMTG objected to production of the initial disclosures, interrogatory responses, or other disclosures from the *DWAC* Case on several generic grounds.  Ex. 6 at 3–4; *see* Ex. 7 at 2–4.

These requests seek disclosures and interrogatory responses that are highly relevant to this case.  As The Post has previously explained to the Court, TMTG has alleged overlapping damages theories in both cases, attributing reputational harm, delay in its merger with DWAC, and other damages to both The Post's conduct and the conduct of its opponents in the *DWAC* Case and other litigation.  *See* ECF No. 93 at 14.  Aware of this overlap, the Court ordered TMTG to produce all documents TMTG produced in the *DWAC* Case.  Oct. 2 Order at 2.  The *DWAC* Case documents TMTG has produced confirm the substantial overlap in the issues, and have been used in depositions, expert reports, and elsewhere.

---

[9] The Post served an Interrogatory requesting identification of these materials and RFP No. 49 requested production of those materials.

Even so, TMTG refuses to produce relevant initial disclosures and interrogatory responses from the *DWAC* case, primarily arguing The Post's request is overly broad and burdensome. *See* Ex. 7 at 2–4.[10]  The Post reassured TMTG that it would accept disclosure as to the *DWAC* Case alone, reserving its rights to seek further disclosure later if pertinent.[11]  TMTG still refused.  In any event, production of this discrete set of documents from the *DWAC* Case would be minimally burdensome for TMTG.  TMTG will not struggle to identify and produce a discrete set of litigation disclosures it has from a single case.

Given the minimal burden and clear relevance of the information sought, identification of and/or production of these disclosures and responses is proper under Rule 26.  *See, e.g.*, *In re Altisource Portfolio Sols., S.A. Sec. Litig.*, 2016 WL 11783829, at *2–3 (S.D. Fla. July 27, 2016) (ordering production of documents from several investigations where the materials sought "are directly relevant to the subject matter of this litigation"); *see also Bishop v. Baldwin*, 2020 WL 7320932, at *6 (S.D. Fla. Dec. 10. 2020) (denying protective order for materials from other actions where "the cases all involve the same alleged Ponzi Scheme and is therefore

---

[10] TMTG's other objections are generic and baseless.  Interrogatory No. 21 is not "multiple interrogatories," it requests identification of one set of documents relevant to several topics.  *Id.* at 2.  TMTG's objection that the terms are overly broad is inconsistent with TMTG's prior willingness to respond in good faith to discovery requests using the exact same terms and language. *See id.* at 2–3.  And its objection on privilege grounds is unfounded, as parties regularly make relevance calls on whether a document "relates to" a certain topic without  revealing counsel's mental impressions or legal analysis.  *See id.* at 4.

[11] In particular, disclosures from TMTG's concurrent defamation actions would be highly pertinent.  The Post understands that TMTG is not currently in discovery in those matters, but any future disclosures would also be responsive and highly relevant.

highly relevant" to issues in the current litigation). The Post requests that the Court order TMTG to immediately produce documents responsive to RFP No. 49.

**B.      TMTG Should be Compelled to Produce Relevant Board of Director Materials.**

The Post's RFP No. 48 requests that TMTG produce

> [a]ll decks or materials submitted to the Board of Directors or presented at meetings of the Board of Directors and all associated meeting minutes or notes regarding Entoro, ES Family Trust, Finder's Fees, TMTG's value or reputation, or the delay of the merger between TMTG and Digital World Acquisition Corp.

Ex. 5 at 8. In response, TMTG offered only superficial, baseless objections. *See* Ex. 6 at 2–3. The Post is entitled to the requested documents. This targeted request seeks information that is plainly relevant and proportionate to the needs of the case—materials presented to TMTG's leadership about the issues at the core of TMTG's defamation claims.

When The Post and TMTG conferred about this request on January 29, The Post addressed TMTG's objections, explaining that it appeared TMTG had not produced Board of Directors materials, and was concerned that they may not be captured in email searches, which is why The Post served this specific RFP. *See, e.g.*, *Bethune-Cookman, Univ., Inc. v. Dr. Mary McLeod Bethune Nat'l Alumni Ass'n, Inc.*, 2023 WL 7128897, at *3 (M.D. Fla. July 12, 2023) (granting motion to compel documents in response to RFP that "overlaps with" a prior request "but is not entirely duplicative of" it). TMTG would not commit to search for any responsive Board materials despite the limited burden of doing so.

Given the narrow scope of the collection and review, and The Post's targeted request for documents related to the key issues in this case, the Court should order TMTG to produce documents responsive to RFP No. 48 immediately.

### C.    TMTG Should be Compelled to Produce Documents Related to Entoro.

TMTG appears to have failed to produce at least hundreds of documents related to Entoro.  TMTG's hit report reported over 1,000 hits on the search string "Entoro OR Entaro OR Entero OR (James w/3 Row)."  Ex. 8.  But TMTG has produced only 100 documents that contain those terms.  In addition, The Post has received responsive, non-privileged documents from third parties that hit on the term "Entoro" that it has not received from TMTG itself.  *See, e.g.*, ECF No. 119-03.  TMTG has provided no explanation for these discrepancies.

Because of these discrepancies, The Post served RFP No. 51, which requests TMTG produce all documents related to Entoro.  Ex. 9 at 8.  In Interrogatory No. 22, The Post requests that TMTG "[i]dentify every Document that says 'Entoro,'" the date on which it had been produced, and if not produced, the basis for withholding it.  Ex. 10 at 8.  TMTG refused to search for documents and declined to answer Interrogatory 22.[12]  Ex. 11 at 2-4; Ex. 12 at 1-3.

---

[12] TMTG's objections to these discovery requests are not valid. It declines to answer this Interrogatory (and Interrogatory No. 23) because, it claims, Interrogatory No. 21 consisted of multiple interrogatories.  *See* Ex. 11 at 2.  TMTG did not respond to Interrogatory No. 21, so it has no basis to claim it has been forced to respond to excess interrogatories.  *See* Ex. 7 at 2–4.  Besides, TMTG failed to timely serve its Responses to The Post's Fourth Set of RFPs and Fifth Set of Interrogatories, which were due on February 12.  *See* Ex. 11; Ex. 12; *Urban v. Wesco Distribution, Inc.*, 2011 WL 13227736, at *1 (S.D. Fla. May 31, 2011) (compelling more fulsome interrogatory responses notwithstanding objections where those objections were not timely raised).

The Post's requests are relevant and targeted to the key issues in this case. Given the significance of Entoro—the recipient of the finder's fee at issue—any documents about the company are relevant. The Post served these requests to ensure that it had received all key documents related to Entoro or understood TMTG's basis for withholding them. To date, TMTG has never explained why 90% of the documents that hit on the search terms have never been produced. The Court should order TMTG to immediately respond to Interrogatory 22 and RFP 51.

### D.   TMTG Should be Compelled to Respond to The Post's Request Related to Monthly Financial Reviews.

The Post's Interrogatory No. 23 asks TMTG to "[i]dentify all monthly financial reviews (including monthly financial reports or monthly financial summaries) that were delivered to the CFO or CEO and that were prepared between February 2022 and December 2023 and all supporting documents." Ex. 10 at 8. Documents produced by TMTG indicate that members of Mr. Juhan's team prepared a monthly presentation on TMTG's finances and sent that presentation to Mr. Juhan and often Mr. Nunes, TMTG's Chief Executive Officer, as well. The Post cited examples in its interrogatory. *See id.* TMTG objected and declined to respond. *See* Ex 11 at 4–6.

Contrary to TMTG's objection, *id.* at 5, the information The Post seeks in Interrogatory No. 22 is relevant and proportionate to the needs of the case. The presentations and materials targeted by Interrogatory No. 23 track indicators of TMTG's financial performance over time. Thus, although they are relevant to several issues, they are especially relevant to TMTG's claim to have suffered

billions of dollars in damages. *See* SAC ¶¶ 41, 43, ECF No. 70.

TMTG's claims of vagueness or overbreadth are equally unfounded. *See* Ex. 11 at 5. The Post identified by Bates number several examples of the "monthly financial reviews" and "supporting documentation" it was seeking in this interrogatory. In the parties' conferral, The Post reiterated that it was looking for precisely the same category of documents as these identified examples. Despite its claims to the contrary, TMTG did need not "guess" as to "what kind of information The Post contends would fall within this interrogatory." *Id.* The Post is simply looking for a transparent disclosure of TMTG's monthly reports. The Court should order TMTG to respond to Interrogatory No. 23.

## III.    TMTG Should Be Compelled to Produce Withheld Documents or Supplement Its Privilege Log.

TMTG produced privilege logs corresponding to several of its productions to date.[13] The privilege logs indicate that TMTG withheld thousands of responsive documents. But TMTG's privilege logs fail to justify its vast withholdings. Many of TMTG's entries are inaccurate and insufficient, all of which indicates TMTG has withheld scores of documents that are not legitimately privileged.

For example, there are hundreds of withheld documents across TMTG's privilege logs that appear to be communications voluntarily shared with third parties to which TMTG's attorney-client privilege does not extend. Similarly, the logs indicate TMTG has withheld communications with no attorney on them or

---

[13] TMTG's logs are attached as Exs. 22-30.

only an in-house attorney, with no explanation to support a privilege assertion. TMTG's inaccurate and inconsistent entries fail to help them carry their "heavy" burden to sustain their purported privilege claims. *Wyndham Vacation Ownership, Inc. v. Reed Hein & Assocs., LLC*, 2019 WL 9091666, at *7 (M.D. Fla. Dec. 9, 2019); *see also In re Disposable Contact Lens Antitrust Litig.*, 2016 WL 7115998, at *4 (M.D. Fla. Oct. 24, 2016) (noting that the court was "troubled . . . by Plaintiffs' observations about the inaccuracy of a number of entries in Defendant's NYAG privilege log" and ordering amended privilege log).

The Post alerted TMTG to the privilege logs' deficiencies in letters on January 26 and February 6 and attempted to confer about the issues on February 13. During the conferral, TMTG stated it would respond in part by February 16. TMTG failed to do so.

The Court therefore should order production of the documents, or a supplemental log that substantiates TMTG's privilege assertions, with an opportunity for further challenge by The Post.

## A. TMTG's Communications with Third Parties Are Not Legitimately Privileged.

TMTG appears to erroneously claimed that hundreds of communications with third parties are privileged. In most cases, information ceases to be privileged when that communication is voluntarily disclosed to third parties. *Shanri Holdings Corp. v. Travelers Prop. Cas. Ins. Co. of Am.*, 2008 WL 11433235, at *2 (M.D. Fla. May 23, 2008) (cleaned up) (ordering that "documents must be produced because the attorney-client privilege has been waived (by virtue of the

19

documents being disseminated to people other than the client)"). Many of the
entries on TMTG's privilege log reflect communications between TMTG and third
parties that are not attorneys, and should be produced.

**Communications With TMTG's Public Relations Firm.** First,
TMTG's privilege logs contain many entries for communications involving TMTG's
public relations firm, MZ Group.  Disclosure of privileged information to public
relations firms, with very limited exceptions not invoked by TMTG here, waives
attorney-client privilege. *See, e.g.*, *Brantley Cnty. Dev. Partners, LLC v. Brantley
Cnty.*, 2021 WL 2678197, at *2 (S.D. Ga. June 29, 2021) (emails that included both
counsel and public relations consultant, among others" reflected "standard
lobbying and public relations advice, which is inadequate to invoke the attorney-
client privilege."); *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 54
(S.D.N.Y. 2000) (reasoning "disclosure to [PR firm] waives the privilege" because
the firm was "at most, simply providing ordinary public relations advice so far as
the documents here in question are concerned").   These entries reflect
correspondence with MZ Group about media inquiries, which are not privileged.
*See, e.g.*, Ex. 29 at 52 (entry for TMTG051537, an email with subject line "Re:
comment for story").

**Communications with Congressional staff.**   Second, TMTG's
privilege log reflects that it improperly withheld numerous communications with
Congressional staff. *See* Ex. 13 at 4-6; Ex 14 at 3-5 (citing, e.g., TMTG042196,
TMTG021929, TMTG042195, TMTG083079).  During the relevant time period,

TMTG actively engaged with allies in Congress regarding its concerns about delays with the SEC's approval of its merger with DWAC. Regardless of the nature of TMTG's concerns, any communications reflecting its lobbying efforts with public officials cannot be privileged. *See Brantley Cnty.*, 2021 WL 2678197, at *2. These communications are relevant to TMTG's damages claim (and The Post's defense).

**Communications with other third parties.** Third, TMTG's privilege logs contain entries that describe communications with many other third parties without any explanation of why these communications are not privileged and/or why any privilege has not been waived. *E.g.*, *Shanri Holdings Corp.*, 2008 WL 11433235, at *1.

*        *        *

For each of these categories of third parties, The Post identified a lengthy list of privilege log entries that described communications in its January 26 and February 6 letters and asked TMTG to provide the basis for withholding these communications or to produce them by January 30 and/or by February 6. Ex. 13; Ex. 14. TMTG has not responded to this request, despite The Post's attempt to confer. The Post thus requests an order immediately compelling production of communications with these third parties, or a log substantiating the basis for asserting a privilege over those communications.

## B.    TMTG's Communications Among Non-Lawyers at TMTG Are Not Legitimately Privileged.

TMTG also appears to have improperly withheld communications entirely among its non-attorney employees as privileged. For these entries, nowhere in its

logs does TMTG provide information sufficient to identify these facially non-privileged communications as in fact falling within the attorney client privilege. *See Berlinger v. Wells Fargo, N.A.*, 2014 WL 4417826, at *2–3 (M.D. Fla. Sept. 8, 2014) (observing "[t]he attorney-client privilege only extends to confidential communications whose primary or predominate purpose is to seek or provide legal advice or assistance" and ordering the production of certain emails chains as not falling within the privilege). In many of these entries, TMTG erroneously describes the documents as "communications . . . between in-house counsel for TMTG, TMTG personnel, and outside counsel" even though the entries themselves show no counsel, in-house or outside, are included in the communications. Again, in its letters, The Post cataloged many such examples and requested that TMTG substantiate its claim of privilege—for example, by providing information that the communications were sent at the request of counsel for the purposes of obtaining legal advice—over these documents or produce them by January 30 and/or February 10. *See* Ex 13 at 2 n.1, Ex. 14 at 2 n.1. Because The Post has not received a response from TMTG and these documents appear improperly withheld on their faces, The Post requests the Court order TMTG to produce these documents or provide a supplemental log substantiating its claim of privilege over them.

### C.    TMTG Has Failed to Substantiate Its Privilege Claims for Communications With Scott Glabe.

TMTG withheld many communications for which the only attorney that appears on the email is General Counsel Scott Glabe, who TMTG has designated as a testifying witness. Ex. 15 at 2. Again, many of these entries do not provide

information sufficient to determine whether the communications with Mr. Glabe concerned legal advice or, as is often the case with in-house attorneys, were related to the "variety of activities outside of offering legal advice" that are part and parcel of a general counsel's position. *Harris v. Hyundai Motor Mfg. Ala., LLC*, 2021 WL 966019, at *3 (M.D. Ala. Mar. 15, 2021) (citation omitted). What is more, several of the privilege descriptions appear inaccurate. For example, TMTG082985 is an email from Mr. Juhan to Mr. Glabe with the subject line: "Value Destruction (All-Time High on 10/22/21 to Friday 5/12/23)." *See* Ex X. at X. But the Privilege Description claims the document is "Privileged communications/attachments to same exchanged between in house counsel for TMTG, TMTG personnel and outside counsel including information/documents created for the purpose of seeking legal advice." *Id.* There are no outside counsel involved.

The Post identified many examples of documents for which Mr. Glabe is the only attorney on the communication and for which the privilege log does not provide information sufficient to establish privilege (including because of inaccurate descriptions), in its communications with TMTG and even requested a supplemental privilege log. *See* Ex. 14 at 5. TMTG has taken no steps to address The Post's concerns. The Court should thus order TMTG to produce those documents or supplement its logs with such information immediately.[14]

---

[14] TMTG's privilege logs suffered from many other flaws which The Post has raised with TMTG. One example is it appears TMTG withheld in full all documents with any privileged information contained within them. But "[m]aterial that is otherwise discoverable may not be shielded from discovery merely because it is included in the same document with severable privileged material." *Resol. Tr. Corp. v. Diamond*, 773 F. Supp. 597, 601 n.3 (S.D.N.Y. 1991); *see Berlinger*, 2014 WL

## IV.    The Post is Entitled to Fees Under Rule 37(a)(5) and 37(b)(2).

Fees, including attorney's fees, are warranted under Federal Rules of Civil Procedure 37(a)(5)(A) and 37(b)(2)(C) should the Court grant this motion or should TMTG provide the requested discovery while the motion is pending.  The Post is entitled to compulsory fees under Rule 37(b)(2)(C) because TMTG failed to comply with the Court's October 24 and November 19 Orders by failing to timely produce documents as ordered.  Second, under Rule 37(a)(5)(A), if the Court grants the Motion, TMTG must "pay the [The Post's] reasonable expenses incurred in making the motion, including attorney's fees," *Rivera*, 2016 WL 11566325, at *1, because The Post conferred repeatedly in good faith with TMTG, TMTG's actions were not "substantially justified," no "other circumstances" make the "aware of expenses unjust, Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii).

The Court previously invited The Post to file a motion for fees.  *See* Nov. 19 Order at 3-4.  The Post proposes to address the burdens it suffered as a result of noncompliance in that forthcoming motion.

## CONCLUSION

For the foregoing reasons, The Post respectfully requests that the Court order TMTG to:

1. Produce Phillip Juhan and Eric Swider's documents and hit report;

2. Produce prior testimony responsive to RFP No. 36;

---

4417826, at *2–3; *see also Atl. Healthcare, LLC v. Argonaut Ins. Co.*, 2021 WL 2333112, at *2 (S.D. Fla. June 7, 2021).  However, in the interest of narrowing the disputes, The Post is not seeking relief related to this dispute and several others here.

24

3. Produce documents in response to RFP Nos. 48, 49, and 51;

4. Provide responses to Interrogatory Nos. 22 and 23; and

5. Produce the communications with third parties, communications within non-lawyers, and non-privileged communications with Scott Glabe identified in The Post's correspondence, or supplement its privilege logs with information substantiating its privilege claim over these documents.

## CERTIFICATION PURSUANT TO RULE 37 AND LOCAL RULE 3.01(g)

Pursuant to Rule 37 and M.D. Fla. R. 3.01(g), the parties have met and conferred in good faith about their positions regarding TMTG's deficient discovery responses and failure to produce documents as described throughout this motion, including with videoconferences on January 28, 2025, January 29, 2025, February 13, 2025, and February 19, 2025, and substantial written correspondence. The parties have been unable to reach agreement.

Dated: February 28, 2026                      Respectfully submitted,

THOMAS & LoCICERO PL                    WILLIAMS & CONNOLLY LLP

*/s/ Carol Jean LoCicero*                    */s/ Thomas G. Hentoff*
Carol Jean LoCicero (FBN 603030)      Thomas G. Hentoff (*pro hac vice*)
Linda R. Norbut (FBN 1011401)         Nicholas G. Gamse (*pro hac vice*)
601 South Boulevard                          Isabelle Jensen Beaton (*pro hac vice*)
Tampa, FL  33606                             680 Maine Avenue, S.W.
Telephone: (813) 984-3060                Washington, DC  20024
Facsimile: (813) 984-3070                 Telephone: (202) 434-5000
clocicero@tlolawfirm.com                  Facsimile: (202) 480-8371
lnorbut@tlolawfirm.com                    thentoff@wc.com
                                                        ngamse@wc.com
*Counsel for Defendant*                      ibeaton@wc.com

                                                        *Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2026, I electronically filed a true and correct copy of the foregoing motion with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to the email address of all counsel of record.

                                                    */s/ Thomas G. Hentoff*
                                                    Thomas G. Hentoff (*pro hac vice*)
                                                    Counsel for Defendant