# Exhibit 10

EXECUTION COPY

**THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR UNDER THE SECURITIES LAWS OF APPLICABLE STATES. THESE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION UNDER SUCH LAWS OR AN EXEMPTION FROM SUCH REGISTRATION REQUIREMENT. INVESTORS SHOULD BE AWARE THAT THEY MAY BE REQUIRED TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME. THE ISSUER OF THESE SECURITIES MAY REQUIRE AN OPINION OF COUNSEL IN FORM AND SUBSTANCE SATISFACTORY TO THE ISSUER TO THE EFFECT THAT ANY PROPOSED TRANSFER OR RESALE IS IN COMPLIANCE WITH THE ACT AND ALL APPLICABLE STATE SECURITIES LAWS.**

**CONVERTIBLE PROMISSORY NOTE**

US$2,000,000                                                         Date:  December 23, 2021

FOR VALUE RECEIVED, **TRUMP MEDIA & TECHNOLOGY GROUP CORP. (f/k/a TRUMP MEDIA GROUP CORP.)**, a Delaware corporation (the "Company"), promises to pay to: **ES FAMILY TRUST**, or its permitted assigns (the "Lender"), by wire transfer of immediately available funds, or in such other manner as the holder of this Convertible Promissory Note (this "Note") may designate from time to time, the principal sum of Two Million United States Dollars (US$2,000,000) (the "Principal Amount") together with interest from the date of this Note on the unpaid principal balance (as set forth in Section 1.2 below), upon the terms and conditions specified below.  Each of the Company and the Lender may be referred to herein individually as a "Party" and, collectively, as the "Parties".

1.   Payment.

1.1    Maturity.  Subject to the provisions of Section 2 hereof relating to the conversion of this Note, the outstanding principal, together with interest accrued and unpaid to date (as set forth in Section 1.2 below), shall be due and payable, following written demand for payment by the Lender, at any time (the "Payment Date") on or after such date that is the earlier of (a) the expiration of eighteen (18) months from the date hereof (the "Maturity Date"), and (b) that date upon which the repayment of this Note is accelerated upon an Event of Default pursuant to Section 4 hereof.

1.2    Interest.  The principal evidenced by this Note shall accrue simple interest, from the date hereof until such principal is paid or converted as provided in Section 2, on any unpaid principal balance at the rate of ten percent (10.0%) per annum.  Interest shall be calculated on the basis of actual number of days elapsed based on a year of 365 days.  Upon the conversion of this Note, accrued but unpaid interest shall either be paid or converted into shares of Company Stock (as such term is defined below) or other capital stock of the Company, as applicable, as set forth in the applicable provisions of Section 2 below.  Notwithstanding any provision in this Note, it is the parties' intent not to contract for, charge or receive interest at a rate that is greater than the maximum rate permissible by law that a court of competent jurisdiction shall deem applicable hereto (which under applicable law shall be deemed to be the laws relating to permissible rates of interest on commercial loans).  If any interest payment due hereunder is determined to be in excess of the legal maximum rate, then that portion of each interest payment representing an amount in excess of the then legal maximum rate shall instead be deemed a payment of principal and shall be applied against principal.

CONFIDENTIAL

1.3    <u>Payments; Allocation of Payments</u>.  Principal and interest are payable in lawful money of the United States of America.  All payments shall be credited first to interest, fees, costs and expenses then due and the remainder to the principal amount of the obligation.

1.4    <u>Conversion Events; Repayment Event; Change of Control</u>.

(a)    As used herein, (1) the term "<u>Qualified SPAC Business Combination</u>" means a merger transaction after the date hereof in which Company (or any holding entity created by or on behalf of the Company) merges with and into a qualified special purpose acquisition company (the "<u>SPAC</u>"), whose shares are listed on the NASDAQ Exchange or the New York Stock Exchange (as applicable), (2) the term "<u>Qualified Initial Public Offering</u>" means an initial public offering pursuant to which Company (or any holding entity created by or on behalf of the Company) issues its equity interests to the public equity capital markets, and (3) the term "<u>Qualified Private Equity Raise</u>" shall mean an issuance of the Company's equity interests to the private equity markets whereby more than $50 million is invested in the Company by private equity investors, and (4) the term "<u>Change of Control</u>" means (a) a merger, consolidation, recapitalization or other reorganization of the Company, unless securities representing more than 50% of the total combined voting power of the successor corporation are immediately thereafter beneficially owned, directly or indirectly and in substantially the same proportion, by the persons who beneficially owned the Company's outstanding voting securities immediately prior to such transaction; or (b) a sale, transfer, exclusive license or other disposition of all or substantially all of the Company's assets or all or a majority of the Company's assets which relate to this Agreement, or any plan of dissolution or liquidation of the Company.  Each of items (1) and (2) in the immediately preceding sentence are hereinafter referred to individually as a "<u>Conversion Event</u>", and, collectively, as the "<u>Conversion Events</u>."  Items (3) and (4) shall be deemed to be a repayment event whereby the Note shall be payable on demand pursuant to the terms hereof.

(b)    The Company hereby agrees to deliver to the Lender written notice of any Conversion Event at least five (5) days prior to the anticipated closing of such Conversion Event.

(c)    Effective immediately prior to the closing of any Conversion Event, the outstanding principal amount of this Note, together with all accrued but unpaid interest on such principal, shall convert to equity pursuant to Section 2.1 below.

1.5    <u>Maturity Date</u>.  At any time on or after the Maturity Date, upon the written election of the Lender, in its sole discretion, the outstanding principal amount of the Note, together with all accrued but unpaid interest on such principal, shall be payable to Lender pursuant to Section 1.1(a) above (the "<u>Maturity Date Repayment</u>").

1.6    <u>Ranking</u>.  So long as this Note remains outstanding, the Company hereby agrees not to incur any indebtedness that would rank senior to the Note.

2.    <u>Conversion</u>.

2.1 <u>Conversion of the Note upon a Qualified SPAC Business Combination</u>.

(a)    Effective immediately prior to the closing of any Qualified SPAC Business Combination after the date hereof and on or before the Maturity Date, the outstanding principal amount of this Note, together with all accrued but unpaid interest on such principal, shall be automatically converted, in whole (but not in part), without any further action on the part of the Lender, into shares of Company Stock or other capital stock of the Company, as applicable. As used herein, the term "<u>Company Stock</u>" means shares of common stock in the Company.

2

CONFIDENTIAL

(b)    The number of shares of Company Stock to be issued to the Lender upon conversion of the Note pursuant to this Section 2.1 shall be that number of shares of Company Stock (rounded to the nearest whole share) equal to the quotient of the principal plus accrued interest on the Note then outstanding, divided by Twenty-One United States Dollars (US$21); provided, however, in the event that the stock price quoted for the Company on NASDAQ or The New York Stock Exchange (as applicable) at the time of the closing of the Qualified SPAC Business Combination (the "TMTG Stock Price") is less than $42 per share, then the Conversion Price shall be reset to 50% of the then current TMTG Stock Price subject to a floor of $10 per share.

2.2    Conversion of the Note upon a Qualified Initial Public Offering.    Effective Immediately prior to the closing of any Qualified Initial Public Offering after the date hereof and on or before the Maturity Date, the outstanding principal amount of the Note (excluding any accrued interest) shall be automatically converted, in whole (but not in part), without any further action on the part of the Lender, into shares of Company Stock or other capital stock of the Company, as applicable.  The number of shares of Company Stock to be issued to the Lender upon conversion of this Note pursuant to this Section 2.2 shall be that number of shares of Company Stock (rounded to the nearest whole share) equal to a quotient of the principal balance of the Note divided by 50% of the initial public offering price per share of the subject Qualified Initial Public Offering.

2.3    Conversion of the Note upon a Qualified Private Equity Raise.    Effective immediately prior to the closing of any Qualified Private Equity Raise after the date hereof and on or before the Maturity Date, then the Company shall repay the entire principal amount of the Note plus any accrued interest. In the event that the Company does not have sufficient liquidity to repay the Note at that time, then the Note shall be repaid in connection with the closing of the next debt or equity capital raise for the Company.

2.4    Conversion of the Note upon a Change of Control.    Effective Immediately prior to the closing of any Change of Control transaction after the date hereof and on or before the Maturity Date, the Company shall repay the entire principal amount of the Note, plus accrued interest.  In the event that the Company does not have sufficient liquidity to repay the Note at that time, then the Note shall be repaid in connection with the closing of the next debt or equity capital raise for the Company.

2.5    Delivery of Note and Share Certificates.  Upon conversion of this Note under this Section 2, this Note will, for all purposes, be deemed to be converted into Company Stock or other capital stock of the Company, as applicable, at which time this Note shall for all purposes be deemed cancelled and all obligations under the terms of the Note shall be deemed paid in full.  Upon conversion of this Note pursuant to this Section 2, Lender hereby agrees to execute and deliver to the Company all reasonable and customary transaction documents necessary to effectuate any Conversion Event, including any purchase agreement, any investor rights agreement, any stockholder or voting agreement, waivers, releases and other ancillary agreements, with customary representations and warranties and transfer restrictions (including, without limitation, a lock-up agreement in connection with any Conversion Event (as applicable)).  Upon the conversion of this Note pursuant to this Section 2, the Lender agrees to deliver the original of this Note for cancellation (or a customary notice to the effect that the original Note has been lost, stolen or destroyed and an agreement acceptable to Company whereby Lender agrees to indemnify Company from any loss incurred by it in connection with the loss of this Note).  Company covenants that all Company Stock or other capital stock of the company, as applicable, issued upon conversion will, upon issuance, be duly authorized by all necessary corporate action of the Company, and also fully paid and non-assessable and free from all taxes, liens and charges caused or created by Company with respect to the issue thereof.

2.2    No Lock-Up Periods; Registration.

3

4895-0521-9846 v.1 067199/00001, 1:00 PM, 12/15/2021
4871-7697-2807 v.3

CONFIDENTIAL

POST_23-cv-1535_0002604

(a)    The Company covenants that all Company Stock or other capital stock of the Company, as applicable, that may be issued to the Lender upon conversion of this Note will not be subject to any lock-up periods.  The Company represents that, to date, there is no agreement, understanding or arrangement that would subject any consideration received by the Lender pursuant to a Qualified SPAC Business Combination or other transaction under this Note to a lock-up period and shall use its best efforts to ensure that (a) no consideration received by the Lender pursuant to a Qualified SPAC Business Combination or other transaction following conversion of this Note will be subject to a lock-up period and (b) upon a Qualified Initial Public Offering, no shares of Company Stock owned by the Lender following a conversion of this Note will be subject to a lock-up period.

(b)    The Company hereby agrees to register any and all (x) Company Stock issued to the Lender pursuant to the terms of this Note and/or (y) consideration received by the Lender pursuant to a Qualified SPAC Business Combination or other public equity transaction, with the Securities and Exchange Commission, so that any and all such shares of Company Stock or other capital stock held by the Lender pursuant to the conversion of this Note and subsequent Qualified SPAC Business Combination or other transaction shall be marketable and publicly tradeable securities.

3.    Demand; Protest.  Company waives demand, protest, notice of protest, notice of default or dishonor, notice of payment and nonpayment, notice of any default, diligence in collection and notices of intention to accelerate maturity, nonpayment at maturity, release, compromise, settlement, extension, or renewal of accounts, documents, instruments, chattel paper, and guarantees at any time held by Lender on which Company may in any way be liable.

4.    Representations and Warranties of the Lender.  The Lender hereby represents and warrants to the Company as follows:

4.1 Purchase Entirely for Own Account.  This Note is made with the Lender in reliance upon Lender's representation and warranty to the Company, which by Lender's execution of this Agreement, Lender hereby confirms, that the Note will be issued for investment for Lender's own account, not as a nominee or agent, and not with a view to the resale or distribution of any part thereof, and that Lender has no present intention of selling, granting any participation in, or otherwise distributing the same. By executing this Note, Lender further represents that Lender does not presently have any contract, undertaking, agreement or arrangement with any person to sell, transfer or grant participations to such person or to any third person, with respect to this Note.  Lender has not been formed for the specific purpose of issuing the Note.

4.2 Disclosure of Information.  Lender acknowledges that the Company has given Lender an opportunity to discuss the Company's business, management, financial affairs and the terms and conditions of the Note with the Company's management. In addition, the Lender acknowledges that the materials provided to it included projections and estimates prepared by the Company.  Lender acknowledges that these materials did not constitute a private placement memorandum and that the Company does not represent or warrant that it will achieve any of such projections or estimates.

4.3 Accredited Investor.  Lender is an "accredited investor" as defined in Rule 501(a) of Regulation D promulgated under the Act.

4.4 Sophisticated Investor.  The Lender has, by reason of its business and financial experience, such knowledge, sophistication and experience in financial and business matters and in making investment decisions of this type that it is capable of (a) evaluating the merits and risks of an investment in the Company and advancing the Note, and making an informed investment decision; (a) protecting its own interest; and (c) bearing the economic risk of such investment for an indefinite period of time.  The Lender

4

4895-0521-9846 v.1 067199/00001, 1:00 PM, 12/15/2021
4871-7697-2807 v.3

CONFIDENTIAL

acknowledges that an investment in the Company and the Note is speculative and involves a high degree of risk. The Lender is a sophisticated investor and has independently evaluated the merits of its decision to invest in the Company and the Note.

5.  Event of Default. If there shall be any Event of Default hereunder, at the option and upon the declaration of the Lender and upon written notice to the Company (which election and notice shall not be required in the case of an Event of Default under Section 5.3), this Note shall accelerate and all principal and accrued but unpaid interest shall become due and payable. The occurrence of any one or more of the following shall constitute an Event of Default:

5.1  Company fails to pay any of the principal amount due under this Note for more than ten (10) days after the date the same becomes due and payable or any accrued interest or other amounts due under this Note for more than ten (10) days after the date the same becomes due and payable;

5.2  Company defaults in its performance of any covenant under this Note and any such failure shall remain uncured or unremedied for a period of fifteen (15) days from the occurrence thereof; *provided, however*, with respect to any such failure that is capable of being cured or remedied, but cannot be cured or remedied within such fifteen (15) day period after expenditure by the Company of reasonable efforts to effect such cure, the Company shall have an additional reasonable period of time to cure or remedy such failure (not to exceed an additional fifteen (15) days);

5.3  Company fails to pay debts as they come due, or files any petition or action for relief under any bankruptcy, reorganization, insolvency or moratorium law or any other law for the relief of, or relating to, debtors, now or hereafter in effect, or makes any assignment for the benefit of creditors or takes any corporate action in furtherance of any of the foregoing; or

5.4  An involuntary petition is filed against Company (unless such petition is dismissed or discharged within sixty (60) days under any bankruptcy statute now or hereafter in effect), or a custodian, receiver, trustee, assignee for the benefit of creditors (or other similar official) is appointed to take possession, custody or control of any property of Company.

6.  Amendment. This Note and the provisions, rights and obligations hereof, may be amended, waived or modified only with the written agreement of Company and the Lender.

7.  Transfer. This Note may only be transferred upon its surrender to the Company for registration of transfer, duly endorsed, or accompanied by a duly executed written instrument of transfer in a form reasonably satisfactory to the Company. Without limiting the foregoing, a transferee of this Note shall be required to be an accredited investor within the meaning of Regulation D under the Act. Thereupon, this Note shall be reissued to, and registered in the name of, the transferee, or a new Note for like principal amount and interest shall be issued to, and registered in the name of, the transferee. Interest and principal shall be paid solely to the registered holder of this Note. Such payment shall be full discharge of the Company's obligation to pay such interest and principal.

8.  Severability. If any provision of this Note is determined to be invalid, illegal or unenforceable, in whole or in part, the validity, legality and enforceability of any of the remaining provisions or portions of this Note shall not in any way be affected or impaired thereby and this Note shall nevertheless be binding between the Company and Lender.

9.  Binding Effect. This Note shall be binding upon, and shall inure to the benefit of, the Company and Lender and their respective successors and assigns.

4895-0521-9846 v.1 067199/00001, 1:00 PM, 12/15/2021
4871-7697-2807 v.3

CONFIDENTIAL

POST_23-cv-1535_0002606

10.     Notices.  All notices required or permitted hereunder shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by electronic mail or confirmed facsimile if sent during normal business hours of the recipient, if not, then on the next business day, (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) day after deposit with a nationally recognized overnight courier, specifying next day delivery.  All communications shall be sent to the parties at the address set forth below or at such other address or electronic mail address as the Company or Lender may designate by ten (10) days advance written notice to the other party hereto.

Company Address for Notices:

**TRUMP MEDIA & TECHNOLOGY GROUP CORP.**
1100 South Ocean Blvd.
Palm Beach, FL 33480
Lender Address for Notices:

**ES FAMILY TRUST**
Attention:  **Angel Pacheco as Trustee**

11.     No Rights as Stockholder.  This Note, as such, shall not entitle Lender to any rights as a stockholder of the Company unless and until such Note is converted into Company Stock or other capital stock of the Company, as applicable, in accordance with the terms hereof.

12.     Confidentiality.  Each of the Parties hereby acknowledges that the existence and the terms of this Note and any oral or written information exchanged between the Parties in connection with the preparation and performance this Note are regarded as confidential information.  Each Party shall maintain confidentiality of all such confidential information, and without obtaining the written consent of the other Party, it shall not disclose any relevant confidential information to any third parties, except for the information that: (a) is or will be in the public domain (other than through the receiving Party's unauthorized disclosure); (b) is under the obligation to be disclosed pursuant to the applicable laws or regulations, rules of any stock exchange, or orders of the court or other government authorities; or (c) is required to be disclosed by any Party to its shareholders, investors, legal counsels or financial advisors regarding the transaction contemplated hereunder, provided that such shareholders, investors, legal counsels or financial advisors shall be bound by the confidentiality obligations similar to those set forth in this Section. Disclosure of any confidential information by the staff members or agencies hired by any Party shall be deemed disclosure of such confidential information by such Party, which Party shall be held liable for breach of this Agreement.

13.     Headings.  The descriptive headings in this Note are inserted for convenience only and do not constitute a part of this Note.

14.     Equitable Remedies.  The Company stipulates that the Lender's remedies at law in the event of any default or threatened default by the Company in the performance of or compliance with any of the terms of this Note are not and will not be adequate to compensate the Lender to the extent permitted by law and that such terms may be specifically enforced by a decree for the specific performance of any agreement contained herein or by an injunction against a violation of any of the terms hereof or otherwise.

15.     Waiver; Cumulative Remedies.  No course of dealing or any delay or failure to exercise any right hereunder on the Lender's part shall operate as a waiver of such right or otherwise prejudice the Lender's rights, powers or remedies.  No single or partial waiver by the Lender of any provision of this Note or of any breach or default hereunder or of any right or remedy shall operate as a waiver of any other

6

4895-0521-9846 v.1 067199/00001, 1:00 PM, 12/15/2021
4871-7697-2807 v.3

CONFIDENTIAL

provision, breach, default right or remedy or of the same provision, breach, default, right or remedy on a future occasion.  The Lender's rights and remedies are cumulative and are in addition to all rights and remedies which the Lender may have in law or in equity or by statute or otherwise.

16.     <u>Successors and Assigns; Binding Effect</u>.  Subject to the restriction on transfer contained in this <u>Section 16</u>, the rights and obligations of the Company and the Lender under this Note shall be binding upon, and shall inure to the benefit of, the Company and the Lender and their respective successors and permitted assigns.  Neither this Note nor any of the rights or obligations under this Note may be assigned, by operation of law or otherwise, in whole or in part, (i) by the Company without the prior written consent of the Lender, or (ii) by the Lender without the prior written consent of the Company.

17.     <u>Counterparts.</u>  This Note may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Counterparts may be delivered via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method, and any counterpart so delivered shall be deemed to have been duly and validly delivered and effective for all purposes.

18.     <u>Entire Agreement</u>. This Note constitutes the full and entire understanding and agreement among the parties with respect to the subject matter hereof, and any other written or oral agreement relating to the subject matter hereof existing between the parties are expressly canceled.

19.     <u>Governing Law; Venue; Waiver of Jury Trial</u>.

19.1     The validity, meaning and effect of this Note shall be determined in accordance with the laws of the State of Florida, without regard to principles of conflicts of law.

19.2     Any suit, action or proceeding arising out of or relating to this Note shall be instituted exclusively in the state courts in Miami-Dade, Florida, or in the United States District Court for the Southern District of Florida.  The Company waives any objection to the venue of any such suit, action or proceeding, and the right to assert that such forum is an inconvenient forum.  The Company irrevocably consents to the jurisdiction of the state courts in Miami-Dade, Florida, and the United States District Court for the Southern District of Florida in any such suit, action or proceeding.  The Company further agrees to accept and acknowledge service of any and all process that may be served in any such suit, action or proceeding in the state courts located in Miami-Dade, Florida, or in the United States District Court for the Southern District Court of Florida, and agrees that service of process upon it sent by certified mail or private carrier (Federal Express, UPS or equivalent) to its address shall be deemed in every respect effective service of process in any such suit, action or proceeding.

20.     <u>Additional Tranche</u>. Lender may advance up to an additional Eight Million United States Dollars (US$8,000,000) over the next 60 days after the date hereof pursuant to a promissory note that will be on substantially similar terms to this Note.

**THE PARTIES TO THIS NOTE HEREBY WAIVE THEIR RIGHT TO A TRIAL BY JURY WITH RESPECT TO DISPUTES ARISING UNDER THIS NOTE AND CONSENT TO A BENCH TRIAL WITH THE APPROPRIATE JUDGE ACTING AS THE FINDER OF FACT.**

*[Signature Page Follows.]*

7

4895-0521-9846 v.1 067199/00001, 1:00 PM, 12/15/2021
4871-7697-2807 v.3

CONFIDENTIAL

The Company has caused this Convertible Promissory Note to be duly executed and delivered as of the date first above written.

**THE COMPANY:**

**TRUMP MEDIA & TECHNOLOGY GROUP CORP.**

By:_____

Name: Wes Moss

Title: Authorized Representative

By:_____

Name: Andy Dean Litinsky

Title: Authorized Representative

**AGREED AND ACCEPTED:**

**ES FAMILY TRUST**

By:_____

Name: Angel Pacheco

Title: Trustee

8

4895-0521-9846 v.1 067199/00001, 1:00 PM, 12/15/2021
4871-7697-2807 v.3

CONFIDENTIAL