**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TRUMP MEDIA & TECHNOLOGY GROUP CORP.,

    Plaintiff,

v.

                                       Case No: 8:23-cv-01535-TPB-AAS

WP COMPANY LLC d/b/a The Washington Post,

    Defendant.

_____/

**DEFENDANT WP CO. LLC d/b/a THE WASHINGTON POST'S**
**MOTION TO EXCLUDE EXPERT TESTIMONY OF MR. SAMEER**
**SOMAL AND INCORPORATED MEMORANDUM OF LAW**

Under Federal Rule of Evidence 702 and subsections (a), (b), (c), and (d), Defendant WP Company LLC d/b/a The Washington Post ("The Post") respectfully moves to exclude the report, testimony, and opinions of Plaintiff Trump Media & Technology Group Corp.'s ("TMTG") expert Sameer Somal because his opinions fail to meet the standards required under the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Post also moves to exclude Somal's testimony under Federal Rule of Evidence 403.[1]

## MEMORANDUM OF LAW

TMTG seeks nearly $2 billion in damages for reputational harm allegedly caused by the publication of two statements contained in The Post's May 13, 2023 article entitled "Trust linked to porn-friendly bank could gain a stake in Trump's Truth Social" (the "Article"). In support of this fantastical claim, TMTG has proffered an expert report with one principal opinion: ███████████████ ████████████████████████████████████ Ex. 1 (Expert Report) at 7. Although two experts—Dr. Sanjai Bhagat and Sameer Somal—co-signed the Report, Dr. Bhagat designed and performed the analysis and calculations that underly TMTG's damages demand, which are entirely contained in the Report's final section. *Id.* at 45, 48-49; Ex. 2 (Somal Dep. Tr.) at 28:5-14.

Somal authored the remainder of the Report, Ex. 2 at 27:11-25, but contributes nothing of substance to TMTG's actual damages claims. ███████

---

[1] The Post is simultaneously moving for summary judgment dismissal of the case. If that motion is granted, there is no need to consider this motion or The Post's *Daubert* motion to exclude the testimony of TMTG's second expert, Dr. Bhagat.

██████████████████████████████████████████████████████████

████████████████. Ex. 3 (Bhagat Dep. Tr.) at 27:3-6. While Somal offers some

scattershot analyses, they fail to even remotely support, much less reliably support,

his many pronouncements. Put differently, stripped of Dr. Bhagat's contributions,

the Report relays Somal's unsubstantiated judgments on a variety of topics with no

effect on TMTG's damages claims.

None of that testimony is admissible under *Daubert*. To begin, Somal's

testimony should be excluded entirely because it will not assist the jury. TMTG

proffers Somal as a damages expert, but his opinions and analyses do not affect its

computation of damages. *Id.* ████████████████████████████

██████████████████████████████████████████████████████████.

*See* Ex. 2 at 92:20-93:2, 119:24-120:10, 130:22-131:6, 150:6-20.

Somal's specific opinions are also inadmissible because his methodology is

unreliable; and his testimony is not "helpful to the trier of fact." *Doe v. Rollins

College*, 77 F.4th 1340, 1347 (11th Cir. 2023). First, Somal, who has no expertise

in journalism, purports to analyze the Article's structure to identify the two

statements at issue as the Article's 'nut graf'—a journalistic term for a paragraph

that summarizes the context and significance of the story reported—in an attempt

to connect the two statements at issue to TMTG's purported reputational harm.

But his analysis is nothing more than his say-so—it rests on his untrained

subjective judgment rather than the application of any objective criteria. *Daubert*

demands a more reliable methodology. In addition, his attempt to interpret the

2

statements in the Article must also be excluded because it invades the province of the jury, which, as a matter of law, can read and interpret the Article for itself.

Somal also purports to analyze the distribution of the Article online, but his testimony on this issue also fails *Daubert*'s reliability and helpfulness requirements. To support his analysis, Somal relies on two articles that The Post published before TMTG even existed and thus have zero bearing on the purported harms the statements actually at issue allegedly caused. Even when Somal focuses on the internet traffic of the Article, he admits he cannot show how many people read the two statements at issue. His analysis of the social media activity is even worse; none of the social media activity he cites includes either of the statements at issue. These opinions prove unhelpful for similar reasons.

In addition, Somal seeks to testify about his application of the "Rings model"—a purported methodology he created for assessing reputational harm by considering the plaintiff's relationship with (1) family, friends, and the like; (2) professional associates, fellow community members, and other acquaintances; and (3) the general public. Such testimony is also unreliable and unhelpful. As one court recognized when excluding Somal's opinions just last year, Somal's use of his "Rings model" to assess reputational damages rests on unexplained subjective judgments, not objective criteria or clearly reasoned determinations. *See Menge v. Ash-Shafi*, 2025 WL 2058320, at *5 (E.D. Mich. July 22, 2025). Even if the "Rings model" were reliable, Somal's use of it here neither advances TMTG's damages claim nor offers anything the jury cannot discern from common sense.

3

Somal's other views that he tosses into his Report— ███████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████ —flunk *Daubert* as well.  None of these opinions rests on a reliable methodology.  Instead, Somal simply offers *ipse dixit* or rehashes what two TMTG witnesses purportedly told him in a single interview.  The jury could consider this same information simply by reading the Article or listening to the testimony of TMTG's witnesses. *Daubert* does not permit TMTG to launder such information through an expert.

Because all Somal's opinions fail *Daubert*'s requirements for multiple reasons, his testimony should be excluded.

## BACKGROUND

This case concerns TMTG's allegations that two statements from the Article—"[t]he companies also have not disclosed to shareholders or the SEC that Trump Media paid a $240,000 finder's fee for helping to arrange the $8 million loan deal with ES Family Trust" and "the recipient of that fee was an outside brokerage associated with Patrick Orlando, then Digital World's CEO" (collectively, the "Challenged Statements")—are false and defamatory.  Second Am. Compl. ¶ 14, ECF No. 70; *see id.* ¶¶ 35-40.  TMTG alleges that it neither paid nor agreed to pay such a finder's fee.  *Id.* ¶¶ 28, 36.

To provide evidence of the damages it seeks to recover from the Challenged Statements' publication, TMTG proffered the opinions of Sameer Somal and Dr. Sanjai Bhagat, which were disclosed in a single expert report.  *See generally*

Ex. 1.

*Id.* at 5.

As the Summary of Opinions reflects, Somal and Dr. Bhagat offer just one

principal opinion:

*Id.* at 7 (emphasis omitted).

Somal's contributions to the Report do not directly pertain to that opinion.

. Ex. 2 at

28:5-14; Ex. 3 at 25:17-20, 26:16-27:6; *see also* Ex. 1 at 48-49.

Ex. 2 at 27:17-25. None of Somal's opinions ultimately

affected the damages computation in any way. Ex. 3 at 27:3-6.

Somal fails to tether any of his disclosed analyses in support of these

opinions to the Challenged Statements and the reputational harm they allegedly

produced through anything other than his judgment.

Ex. 4 (Report

App. F) at 3 (emphasis omitted).

5

███████████████████████████████████████████  *Id.*  Yet nowhere in his Report

does he explain why the Challenged Statements as opposed to other statements are

the Article's "crux."  *Id.*

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Ex. 1 at 37.  ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████  Ex. 1 at 38-39; Ex. 6 (Report App. D).  He

thus offers the jury no information about the online engagement or viewership of

the Challenged Statements.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████  Ex. 1 at 45; Ex. 2 at 83:6-13.  In the Report, however, he never

attributes any of TMTG's purported reputational harm to the specific rings he

identifies, nor does he explain what steps he took to identify them.  *See* Ex. 1 at 45.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

6

██████████████████████████████████████████████████████.[2] The Report discloses no specific analyses Somal performed nor data he relied upon to reach these purported conclusions—only his recounting of an interview with two TMTG officers (Scott Glabe and Phillip Juhan). *Id.* at 17-18. He assesses no other potential causes for his suppositions, such as government investigations of TMTG.

Although Somal holds himself out as a reputational harm expert, his damages opinions on the subject have recently been excluded at least in part by two federal courts. *Menge*, 2025 WL 2058320, at *5; *Ludwin v. Proman*, 2023 WL 315909, at *2 (S.D. Fla. Jan. 19, 2023).

## LEGAL STANDARD

Under Federal Rule of Evidence 702, for an expert to offer his testimony, "the expert must be qualified; his methodology must be reliable; and his testimony must be helpful to the trier of fact." *Doe*, 77 F.4th at 1347. The party seeking to introduce the testimony must "establish[] each requirement by a preponderance of the evidence under Rule 104(a)." *Id.*

Under Federal Rule of Evidence 403, a "court may exclude relevant evidence," including otherwise admissible expert testimony, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair

---

[2] ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See also United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) (en banc).

## ARGUMENT

**I.    Somal's Testimony Does Not Pertain to TMTG's Damages Calculation and Will Not Help the Jury.**

The ultimate question under Rule 702 is whether an expert's testimony will "assist the trier of fact." *Frazier*, 387 F.3d at 1262.   A court will admit such testimony only if the expert's opinions "fit the facts of the case." *Brashevitzky v. Reworld Holding Corp.*, 348 F.R.D. 107, 115 (S.D. Fla. 2024).   That is, the testimony, "must logically advance a material aspect of the case" and, in so doing, "assist the trier of fact." *Id.* (cleaned up).

Somal's opinions and analyses do not pass muster because they do not logically advance TMTG's damages claims. ███████████████████████

███████████████████████████████████████

██████████████ *See* Ex. 1 at 48-49; Ex. 2 at 123:18-19. ████████████

███████████████████████████████████████

██████████████████████████████████. *See, e.g.*, Ex. 2 at 145: 21-23 ████████████████████████████████████████

████████████████   ████████████████████

██████████████████████████ Ex. 2 at 28:5-14, 32:17-19, 62:19-24.   ████████████████████████████████████

███████████████████████████████████████

8

███████████████████████████████████████████████████

███████████████████████.  *E.g.*, *id.* 108:14-109:4, 112:3-14, 144:1-13,
150:22-151:4, 156:5-11, 167:4-23.[3]

Somal's proposed testimony therefore does not "logically advance" any
"material aspect" of TMTG's damages claims.  *Techtronic Indus. Co. v. Bonilla*,
2025 WL 2751530, at *5 (M.D. Fla. Sept. 26, 2025) (citation omitted) (excluding
opinions as unhelpful); *see Park W. Galleries, Inc. v. Global Fine Art Registry*,
2010 WL 848689, at *4-5 (E.D. Mich. Mar. 8, 2010) (excluding damages opinions
where the expert neither quantified nor offered any "independent opinion[s]"
about the damages amounts).  Somal confirmed as much.  ████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████  Ex. 2 at 56:15-58:18; Ex. 3 at 27:3-6.[4]

Somal also cannot tie his opinions to other issues to make them admissible.
First, TMTG has disclaimed any damages outside of the reputational harm

---

[3] ███████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████

[4] Notably, experts cannot offer joint reports where they "have different areas of expertise and are
not individually qualified to testify about each opinion in the report." *State Farm Mut. Auto. Ins.
Co. v. Complete Care Ctrs., LLC*, 2022 WL 18456523, at *3 (M.D. Fla. Dec. 20, 2022).  Here,
Somal seeks to do just that because ████████████████████████████
████████████████████████████████████████████████
████████████████████  Ex. 2 at 15:18-16:7, 31:20-33:9; *see State Farm Mut. Auto
Ins. Co.*, 2022 WL 18456523, at *3 (excluding experts' opinions set forth in joint report).  This
alone is sufficient to exclude Somal's testimony.

quantified by Dr. Bhagat in his event study.  Apr. 1, 2026 Hr'g Tr. 123:16-21, ECF

No. 200.[5] ███████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████. *See* Ex. 2 at 169:4-11; Ex. 1 at 3.  The entirety of

Somal's opinions should thus be excluded under *Daubert* because they fail to

"logically advance a material aspect of the case." *Brashevitzky*, 348 F.R.D. at 115

(cleaned up); *see also Park W. Galleries*, 2010 WL 848689, at *4-5.

## II.    Somal's Views About the Article's 'Nut Graf' Are Unreliable and Unhelpful (Report App. F).

The entirety of Somal's opinions fall short of *Daubert's* demands.  This is

especially true of his views about the Article's 'nut graf,' which Somal slips into an

appendix to the Report.  ████████████████████████████████

████████████████████████████████████████████████

█████████████████████ Ex. 4 at 2.  But his opinion rests on no reliable

methodology and will not assist the jury.

### A.    Somal's analysis of the Article's 'nut graf' is unreliable.

#### 1.    Somal's methodology rests on his unsupported say-so.

Under *Daubert*, "[a] reliable methodology is one that includes sufficient

facts or data and one wherein the expert refrains from relying on subjective

interpretations to support the methodology." *Grayson v. No Labels, Inc.*, 599 F.

_____

[5] ███████████████████████████████████████████
██████████████████████████████████████ Ex. 1 at 7.
*Id.* at 7, 45–46; Ex. 2 at 54:23–55:16.

Supp. 3d 1184, 1191 (M.D. Fla. 2022). Indeed, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Here, Somal offers nothing more than his subjective judgments about the structure of the article ██████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Ex. 4 at 2. ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████ *Id.* ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 2 at 204:23-25. ████████

██████████████████████████████████████████ " *id.* 202:8- 12, and that methodology is too subjective and leaves too many questions abouts its application unanswered to be reliable, *see Parsi v. Daioleslam*, 852 F. Supp. 2d 82, 89 (D.D.C. 2012) (excluding opinion where the methodology was effectively reading); *see also Grayson*, 599 F. Supp. 3d at 1191.

Still, even Somal's application of two purported criteria—████████████████

████████████████████████████████████████████████████ does not pass

11

muster as a methodology.  After all, the Article contains other statements in the first and second paragraphs that refer to the "[t]rust linked to porn-friendly bank" and its potential to "gain a stake in Trump's Truth Social."  Ex.5.[6]  Somal offers no explanation why these statements in the first and second paragraphs do not constitute the 'nut graf' given the criteria he sets forth.  *See Parsi*, 852. F. Supp. 2d at 90 (determining expert's methodology was unreliable where "even to the extent [the expert] identified an objective professional standard, he failed to reliably compare defendant's writings to that standard").[7]

Regardless of his experience, without any explanation regarding how he applied that experience, his methodology ultimately boils down to his say-so.  That is not enough.  *See, e.g., Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1296 (11th Cir. 2022) (excluding expert's opinion supported by only his judgment and claim of expertise); *MidAm. C2L Inc. v. Siemens Energy Inc.*, 2023 WL 2733512, at *9 (11th Cir. Mar. 21, 2023); *Parsi*, 852 F. Supp. 2d at 90.

---

[6] The unreliability of Somal's methodology is exposed ██████████████████
██████████████████████████████ Ex. 4 at 2.

██████████████████████████████ Ex. 2 at 208:11–24.

[7] ██████████████████████████████████████████████████ *See* Ex. 4 at 2; Ex. 2 at 205:1–24,
207:20–25.  But the █████████████████ is based on a Forbes 'listicle' that cites another source that cites a 2021 marketing study about visitors to commercial websites in 10 industries that have nothing to do with news ("Apparel," "Automotive," "B2B, "Beauty," "Consumer Electronics," etc.). *See 6 Tips for Keeping Visitors On Your Website Longer*, Forbes (July 28, 2023), https://tinyurl.com/3jmbjd8s (citing Anna Fitzgerald, *What Is the Average Time Spent On a Website? [+ How to Improve It]*, HubSpot (updated May 1, 2025), https://tinyurl.com/kkht7db7). ████████████████████████████████
██████████████████ *See* Ex. 4. ████████████████████████████████████
██████████████████████ Ex. 2 at 208:11–24.

## 2.   Somal's analysis rests on erroneous facts.

Somal's judgment about the supposed 'nut graf' rests on a material misapprehension of the facts. ███████████████████████████████ ███████████████████████████████████████████ Ex. 2 at 203:20-204:7.  The Article's headline reads, "Trust linked to porn-friendly bank could gain a stake in Trump's Truth Social."  Ex. 5.  ████████████████ ████████████████████████████████ Ex. 2 at 223:13-19.  Not so. As the Article makes clear, the "trust" identified in the headline is the ES Family Trust, and the "porn-friendly bank" is Paxum Bank.  Ex. 5.  Somal's reliance on a phantom connection to support his opinion underscores the unreliability of his opinions and methodology.  *See, e.g.*, *Cordoves v. Miami-Dade Cnty.*, 104 F. Supp. 3d 1350, 1360-61 (S.D. Fla. 2015) (excluding expert opinions where there were "critical cracks in [the expert's] factual foundation"); *see also In re Denture Cream Prods. Liab. Litig.*, 795 F. Supp. 2d 1345, 1363 (S.D. Fla. 2013).

## B.   The jury is charged with interpreting the Article and Somal's opinions about the 'nut graf' will not help them.

Somal's opinions about the Article's purported 'nut graf' are also inadmissible because they are not helpful.  To be admissible, the expert's testimony must "concern matters that are beyond the understanding of the average lay person."  *Frazier*, 387 F.3d at 1262.  "There is no need for an expert's opinion where the jury can decide a disputed issue through the application of common sense or simple logic in light of the evidence and testimony presented at trial."  *Banuchi v. City of Homestead*, 606 F. Supp. 3d 1262, 1286 (S.D. Fla. 2022) (citation omitted).

13

As a matter of law, Somal's opinions invade the province of the jury and should be excluded.  Somal claims to identify what the average reader would glean from the Article, i.e., what he thinks the 'nut graf' should be.  But "it is for the trier of fact," not an expert, "to determine the meaning understood by the average reader" in a defamation case.  *Rubin v. U.S. News & World Rep., Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001).  Indeed, "the jury is clearly capable of determining what the average [reader] from a one time [reading] understood as expressed or implied by the [Article] in regard to Plaintiff."  *Tilton v. Cap. Cities/ABC, Inc.*, 938 F. Supp. 751, 753 (N.D. Okla. 1995) (excluding plaintiff's linguistics expert in defamation case because his interpretation of the broadcast at issue was "within the common knowledge of an average juror"), *aff'd*, 95 F.3d 32 (10th Cir. 1996).  Thus, Somal's opinions are prejudicial and unhelpful.  *See, e.g., id.* (excluding expert's opinions under Rules 702 and 403); *World Boxing Council v. Cosell*, 715 F. Supp. 1259, 1264 (S.D.N.Y. 1989) (same); *see also Emerald Coast Utils. Auth. v. Am. Cast Iron Pipe Co.*, 2023 WL 7132972, at *10 (N.D. Fla. Mar. 29, 2023) (excluding opinions where they "provide[d] no scientific or technical insights that would assist the jury in drawing its own conclusions"); *see infra* § VI.[8]

---

[8] Even setting this authority aside, Somal's analysis of the Article's structure falls within the average juror's ken.  His analysis consists of reading information in the first few paragraphs of the Article and considering whether it connects to the headline.  *See supra* § IV.A.1.  The jury could do the same.  *See Banuchi*, 606 F. Supp. 3d at 1286 (excluding expert's opinion on issue that jury could understand by applying common sense).  Even if this were a subject requiring expertise; Somal lacks it. ███ ███ Ex. 2 at 17:17–25, 207:6–12. ███ *see id.* 204:19–22, 206:24—207:2, but that is not expertise about how journalists structure their articles.  *See Cordoves*, 104 F. Supp. 3d at 1358 (expert's qualifications in one area did not mean he was qualified to testify about another).

### III. Somal's Opinions About the Purported Distribution of the Article Are Neither Reliable nor Helpful (Report § 6).

#### A. Somal's analysis of the Article's distribution is unreliable.

In his Report, Somal opines about the effects of the Challenged Statements' purported distribution online, but his analyses reveal almost nothing about the readership or engagement of the Challenged Statements themselves.[9] For Somal's opinions to be admissible, they must rest on a "reliable methodology," which, in turn, rests on "sufficient facts or data." *Grayson*, 599 F. Supp. 3d at 1190-91.



, Ex. 1 at 31-37,

, *id.*

at 38-39; Ex. 2 at 169:21-170:16.

Somal's analysis of web traffic cannot bear the weight of his claims.

Ex. 1 at 38.

*Id.* at 39.  Besides, these data do not establish how many people even read

---

[9] *See, e.g.*, Ex. 1 at 37

*id.*

*id.* at 46

15

the Challenged Statements.  Ex. 2 at 185:13-186:9.  █████████████████

██████████████████████████ Ex. 1 at 39; Ex. 2 at 185:9-18.

██████████████████████████████████████████████

███████████████████████████████. Ex. 2 at 170:7-16; Ex. 6.  ████████

██████████████████████████████████████████████

███████.  *Id.*  181:10-18;  182:24-183:13.  ████████████████████

██████████████████████ Ex. 6 at 10-15, 17-18, ██████████████████

██████████████████████████████████████████████

███████████████████████████████████████████, Ex. 2 at 181:5-9.

Thus, ██████████████████, the measures of social media engagement he calculated—views, comments, likes, shares, reposts, comments, and the like— provide no information about how many individuals ever read the Challenged Statements.  *Id.* 182:5-11.

In sum, neither analysis reveals how the internet contributed to TMTG's purported damages.  Somal's methodology leaves "too great an analytical gap" between his opinions and his analysis.  *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1203 (11th Cir. 2010) (affirming exclusion of expert's opinion); *Phillips v. Am. Honda Motor Co.*, 238 F. App'x 537, 540 (11th Cir. 2007) (similar); *Grayson*, 599 F. Supp. 3d at 1191 (similar).

**B.   Somal's opinions about the Article's distribution will not help the jury.**

Somal's opinions based on the Article's purported distribution online also fail to help the jury for two reasons.  First, they are unhelpful because they do not

16

"logically advance a material aspect of the case." *Brashevitzky*, 348 F.R.D. at 115 (cleaned up). TMTG's defamation claims concern only the Challenged Statements, so TMTG's damages, if any, arise only from harm that these statements—as opposed to any others in the Article—may have caused. *See Grayson v. No Labels Inc.*, 601 F. Supp. 3d 1251, 1256-57 (M.D. Fla. 2022). Because Somal's analyses reveal nothing about how many people actually read the Challenged Statements, *see supra* § III.A, his opinions based on those analyses do not fit "the task" of establishing TMTG's entitlement to damages, *Benitez v. Royal Caribbean Cruises Ltd.*, 2011 WL 13223573, at *1 (S.D. Fla. May 4, 2011) (excluding expert's testimony where it was "neither relevant to the task at hand nor logically advances a material aspect of Plaintiff's case" (citation omitted)); *see Disler v. Royal Caribbean Cruise Ltd.*, 2019 WL 5260249, at *12 (S.D. Fla. July 10, 2019) (expert's opinion was unhelpful where his opinion supported only the possibility of causation).

Second, Somal's opinions are not helpful because they "do not require specialized knowledge." *Grayson*, 599 F. Supp. 3d at 1192. The record already contains evidence from The Post of the Article's traffic, so, here, there is no need for Somal to opine on an issue the jury can examine for itself, *see id.* (excluding opinion as unhelpful where jury could review evidence in the record); *Sun State Ford v. Ford Motor Co.*, 2026 WL 852565, at *2 (M.D. Fla. Mar. 27, 2026).

## IV.   Somal's Reliance on the "Rings Model" Is Neither Reliable nor Helpful (Report § 7).

Somal's testimony with respect to his application of his "Rings model" to assess reputational harm fails *Daubert*'s reliability and helpfulness requirements.

17

**A.    Somal's "Rings model" has been previously excluded as unreliable, and is not reliably applied here either.**

Somal's "Rings model," set forth in an article he coauthored, represents the final identifiable and unreliable methodology he purportedly employed.  Ex. 1 at 45; *see* Sameer Somal & William Choslovsky, *Deconstructing Defamation Damages: A Three-Ring Look at Reputation*, 35 Midw. L. J. 69 (2025). ███████

████████████████████████████████████████.[10]

As at least one court has already determined, the "Rings model" is unreliable as a methodology.  In any event, Somal failed to reliably apply it here.

Under *Daubert*'s reliability prong, among other things, a court "should consider whether the methodology underlying an expert's testimony" has been "generally accepted" in the relevant expert community.  *Puck v. Silverman*, 2024 WL 4063387, *2 (S.D. Fla. June 25, 2024).  The "Rings model" falls woefully short. In fact, the court in *Menge v. Ash-Shafi* determined that Somal's "Rings model" amounted to "no stated methodology" at all.   2025 WL 2058320, at *5 (emphasizing that Somal's defamation damages opinions had been excluded as unreliable before (citing *Ludwin*, 2023 WL 315909, at *2)). The court identified that, in assessing each ring, Somal appeared to do little more than pick a number based on his previous experience and past defamation awards and, accordingly,

---

[10] ███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ Ex. 1 at 45.

excluded his reputational damages opinion. *Id.*[11]

In any event, Somal has not followed the methodology here in three respects. First, Somal and his coauthor present the "Rings model" as a methodology to help practitioners assess and quantify reputational damages by quantifying the amount of reputational harm attributable to each ring. *See* Somal & Choslovsky, *supra*, at 84-87, 89-90; *see also Menge*, 2025 WL 2058320, at *5 (describing Somal's use of "Rings model"). But here, Somal did no such thing—he performed no calculation of damages at all (underscoring the lack of usefulness to the jury, *see infra* § IV.B).



*See* Ex. 2 at 88:3-90:9.

. 1 at 45.[12]

Ex. 1 at 45. Somal's ad-hoc definitions and application underscores that the model turns on subjective judgments, not objective criteria.

Third, Somal's paper on the "Rings model" contemplates that the

---

[11] _____ *see* Ex. 2 at 83:10–22, he must offer more than his assurances about the method's acceptance, *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1244 (11th Cir. 2005) ("The expert's assurances that he has utilized generally accepted scientific methodology are insufficient." (cleaned up)).

[12] _____ *id.* 89:10–16, but this explanation falls apart because his published methodology expressly discusses corporate plaintiffs, _____ ; *see* Somal & Choslovsky, *supra*, at 86 (noting that the second ring is "is especially consequential for professional or corporate plaintiffs, as it weighs heavily on the victim's social and professional networks").

practitioner should support the analysis with interviews of members from each of the three rings. *See* Somal & Choslovsky, *supra*, at 85-87. For example, for the second ring, they suggest relying on "direct or indirect experiential interviews, or any other evidence of changing social attitudes towards the plaintiff, such as documentation of lost opportunities or shifting opinions about the plaintiff." *Id.* at 86. ██████████████████████████████████████████████████

████████████████ Ex. 2 at 110:11-17, 111:4-10, 150:13-151:8, 192:21-25; *see also* *id.* at 153:24-154:2 ██████████████████████████████████████

██████████████████████████████████████████████████

## B.    Somal's "Rings model" testimony will not help the jury.

Somal's testimony about the "Rings model" will not assist the jury for essentially the same reasons his testimony about the Article's purported distribution online will not assist the jury. ████████████████████████

████████████████████████████████████████ *See* Ex. 2 at 56:15-57:15, 85:8-86:7. ██████████████████████████████████

██████████████████████████████████████████████████

██████████████ *Id.* 85:21-24; *see supra* § II.B.

## V.    Somal's Background Testimony About the ████████████ (Report § 4), ██████████████████████████████ (Report § 4), ████████████████ Report §§ 6,7) Is Neither Reliable Nor Helpful.

### A.    Somal's opinions on these topics rest on no reliable methodology.

Somal provides no identifiable methodologies to support the assertions

which might be characterized as opinions in his Report: ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████. *See*

Ex. 1 at 21-22, 26, 37, 46.   Somal bases these opinions in, if anything, his

professional experience.   But his particular experience makes these opinions

admissible only if he lays out how and why it supports his specific conclusions.  *See*

*United States v. Ahmed*, 73 F.4th 1363, 1382 (11th Cir. 2023) (citation omitted).  If

not, these opinions rest on nothing more than his *ipse dixit* and are therefore

inadmissible.  *Frazier*, 387 F.3d at 1261.  Here, Somal fails to provide the requisite

explanations to make any of these opinions admissible.

████████████████████████████████████,[13] Somal provides no

explanation as to how he determined the Challenged Statements—which contain

no discussion of profitability, solvency, or debt—even suggested ██████████

████████████████████████████████████. *See id.* ██

████████████████████████████████████████████████

████████████████████████████████ Ex. 2 at 121:8-122:9.

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████. *Id.* 124:12-24.  █████████████

████████████████████████████████████████████████

---

[13] *See* Ex. 1 at 21–22 ████████████████████████████████████

████████████████████████████████████████████████

████████████. *Id.* 129:17-131:6.  Again, Somal leaves too great a gap between his opinions and any factual support they may have (there is none).  *See supra* § III.A.

So too with respect to Somal's opinions that TMTG ████████████ ████████████ Ex. 1 at 25-26.  ████████████ ████████████, *id.* at 25-26, ████████████ Ex. 2 at 118:8-13.  ████████████ ████████, *id.* at 118:14-21, he fails to "explain[] in detail how the experience and other materials consulted support the opinion rendered," *Brashevitzsky*, 348 F.R.D. at 118. ████████████ ████████████ ████████████ Ex. 2 at 119:1-4; *see Ward v. Carnival Corp.*, 2018 WL 11383459, at *5 (S.D. Fla. July 31, 2018) (expert did not adequately explain how his experience supported opinions); *Coombs v. Mitchell*, 2024 WL 4111531, at *4 (M.D. Fla. Sept. 6, 2024) (similar).

Lastly, Somal's opinions about the Article's purported effects on TMTG's ████████████ similarly lack a reliable methodology.  *See* Ex. 1 at 37, 46.  ████████████ ████████████ ████████████ ████████████ Ex. 1 at 17-18.  But parroting information from fact witnesses is "certainly not a reliable methodology."  *See Cordoves*, 104 F. Supp. 3d at 1363.



. Ex. 2 at 110:11-17, 111:4-10, 150:13-151:8, 192:21-25.

*Id.* 155:4-19.  These shortcomings doom his opinions because he has no support

. *See Lucibella v. Ermeri*, 2024 WL 3817383,

at *5 (S.D. Fla. Aug. 14, 2024) (expert's opinions were unreliable where he "merely

relied on [plaintiff's] own statements" and never quantified any supposed effects).

### B.      Somal's testimony on these topics will not help the jury.

All three sets of opinions suffer from the same helpfulness problem that

afflicts his other opinions—they do not materially contribute to TMTG's damages

claims.  These opinions do not influence Dr. Bhagat's computation of damages;

instead, Somal included them to provide               Ex. 2 at 139:10-16

*see id.* 119:24-120:10

.  Again, the jury should not hear Somal's testimony when it does not

materially contribute to TMTG's damages claims.  *See supra* § I.

Even if the testimony were to serve TMTG's damages case, Somal's recitation

of such background information would still prove unhelpful.  The jury, like Somal,

can read the Challenged Statements and determine whether an ordinary reader

would understand them to imply a               (doubtful given they do not

discuss losses). *See supra* § II.B.  Similarly, the average juror could also apply her

23

▮▮▮▮▮▮▮▮▮ to decide whether TMTG's associations with President Trump heightened the ▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 2 at 119:1-4; *see supra* §§ II.B, IV.B. And the jury does not need Somal to echo testimony of fact witnesses ▮▮▮▮ ▮▮▮ they can evaluate the testimony for themselves. *See, e.g.*, *RJ's Int'l Trading, LLC v. Crown Castle S., LLC*, 2021 WL 12323963, at *6 (S.D. Fla. Oct. 20, 2021).

## VI. Somal's Testimony Should Be Excluded Under Federal Rule of Evidence 403.

Even if any of Somal's opinions meet Rule 702's requirements, none are admissible under Federal Rule of Evidence 403. "Because of the powerful and potentially misleading effect of expert evidence," expert opinions that satisfy *Daubert* "may still be excluded by applying Rule 403." *Frazier*, 387 F.3d at 1263. Under Rule 403, any such opinion should be excluded where its "probative value . . . is substantially outweighed by its potential to confuse or mislead the jury." *Id.*

All Somal's opinions fail Rule 403's weighing. For many the same reasons his testimony proves unhelpful, Somal's testimony has effectively no probative value—after all, none of his opinions influence TMTG's damages calculations. *See supra* §§ I, II.B, III.B, IV.B, V.B. At the same time, his opinions carry significant risks of unfair prejudice and juror confusion in large part because the jury may "assign" his testimony "talismanic significance" when it merits none. *Fraizer*, 387 F.3d at 1263. They threaten to mislead the jury into believing his analyses support TMTG's damages claims, where TMTG has already disclaimed any damages other than those measured in Dr. Bhagat's purported event study. Apr. 1, 2026 Hr'g Tr. 123:16-21. Nor should Somal be permitted to hoodwink the jury into believing his

24

expertise supports his conclusions when he employs no reliable methodologies. *Supra* §§ II.A., III.A., IV.A., V.A.; *see Emerald Coast Utils. Auth.*, 2023 WL 713972, at \*10 (excluding opinion under Rule 403 where expert did not provide a reasoned explanation for his conclusions).

And, especially with respect to the jury's role in evaluating the meaning or structure of the Challenged Statements or Ariticle, Somal's testimony would confuse and mislead the jury "by transform[ing] a common sense issue into a technical one." *Cosell*, 715 F. Supp. at 1264-65 (excluding expert testimony under Rules 403 and 702).  Because Somal's vague and unsupported conclusions are more likely to stymie than assist the jury's efforts, his testimony should be excluded under Rule 403.  *See Thomas v. Evenflo Co., Inc.*, 205 F. App'x 768, 772-73 (11th Cir. 2006) (affirming exclusion of opinions under Rule 403); *Legg v. Voice Media Grp., Inc.*, 2014 WL 1767097, at \*4 (S.D. Fla. May 2, 2014) (excluding opinion "based on [the expert's] speculation" under Rules 403 and 702).

## CONCLUSION

For the reasons stated, this Court should grant The Post's motion and exclude the expert testimony of Mr. Sameer Somal.

Dated: April 24, 2026

Respectfully submitted,

THOMAS & LoCICERO PL

WILLIAMS & CONNOLLY LLP

*/s/ Carol Jean LoCicero*
Carol Jean LoCicero (FBN 603030)
Linda R. Norbut (FBN 1011401)
601 South Boulevard
Tampa, FL  33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070
clocicero@tlolawfirm.com
lnorbut@tlolawfirm.com

*Counsel for Defendant*

*/s/ Thomas G. Hentoff*
Thomas G. Hentoff (*pro hac vice*)
Nicholas G. Gamse (*pro hac vice*)
Claire R. Cahill (*pro hac vice*)
Samuel M. Lazerwitz (*pro hac vice*)
Isabelle Jensen Beaton (*pro hac vice*)
Catherine A. Reid (*pro hac vice*)
680 Maine Avenue, S.W.
Washington, DC  20024
Telephone: (202) 434-5000
Facsimile: (202) 480-8371
thentoff@wc.com
ngamse@wc.com
ccahill@wc.com
slazerwitz@wc.com
ibeaton@wc.com
creid@wc.com

*Counsel for Defendant*

## **Local Rule 3.01(g) Certificate**

Pursuant to Middle District of Florida Local Rule 3.01(g), undersigned counsel certifies that counsel for The Post conferred with counsel for Plaintiff regarding the relief requested in this motion through email correspondence on April 23, 2026.  Plaintiff's counsel has advised that Plaintiff opposes the relief requested.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2026, I electronically filed a true and correct copy of the foregoing motion with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to the email address of all counsel of record.  I also hereby certify that counsel for The Post served a true and correct copy of the foregoing motion upon the following via email:

Alejandro Brito
Jalaine Garcia
Ian Michael Corp
Brito PLLC
2121 Ponce de Leon Boulevard, Suite 650
Coral Gables FL 33134
abrito@britopllc.com
jgarcia@britopllc.com
icorp@britopllc.com

*Counsel for Plaintiff*

*/s/ Carol Jean LoCicero*
Carol Jean LoCicero
Counsel for Defendant

27