**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

|  |  |
|---|---|
| TRUMP MEDIA & TECHNOLOGY GROUP CORP., | Case No. 8:23-cv-1535-TPB-AAS |
| Plaintiff, | |
| v. | |
| WP COMPANY, LLC, d/b/a The Washington Post, | |
| Defendant. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR AN ADVERSE**
**JURY INSTRUCTION AND FOR FEES AND EXPENSES**

Plaintiff, TRUMP MEDIA & TECHNOLOGY GROUP CORP. ("TMTG" or "Plaintiff"), by and through its undersigned counsel, submits this Response in Opposition ("Response") to the Motion For An Adverse Jury Instruction Under Rule 37(b)(2)(A), and For Fees and Expenses Under Rules 37(a)(5), 37(b)(2)(C), and 37(c)(1) [ECF No. 252] ("Motion") filed by Defendant, WP COMPANY, LLC, d/b/a The Washington Post ("The Post" or "Defendant"). For the reasons set forth below, the Motion should be denied.

**INTRODUCTION**

The Post asks this Court to tell the jury that it can presume that TMTG agreed to pay Entoro a $240,000 finder's fee based on a hunch. From the first joint discovery status update to this Motion, The Post has tried to turn the same hunch into a discovery violation: that somewhere in TMTG's files there must be a hidden document—a secret communication about Entoro, a broker's fee, or an admission

of payment—that TMTG is deliberately concealing. But a hunch is not evidence. It is not a discovery order. And The Post's repeated insistence that "there must be something more" does not make it so. That suspicion has now been tested against millions of pages of documents, repeated productions, witness testimony, hit reports, and an in camera review of the very privilege calls The Post challenged. It has failed.

The sanction The Post now seeks proves the point. The Post does not ask the Court to remedy the nonproduction of a known document establishing an Entoro agreement, because it identifies no such document. It asks the Court to presume the disputed agreement into existence and instruct the jury accordingly. That is not a discovery sanction. It is a merits finding on one of the central disputed issues in this case. The distinction matters because, weeks ago, The Post publicly corrected the Article to admit that TMTG never paid the fee. The Post is therefore left to argue that an alleged agreement to pay is close enough to an actual payment. But even the third-party witnesses on whom The Post relies agree that no signed agreement exists. And nothing in Mr. Juhan's hit report proves otherwise.

A hit report is not evidence of what a document says. It is a list of files that contain search terms. At most, it may identify materials for further review. It does not prove that any responsive, nonprivileged document exists, much less that TMTG signed or entered into an agreement to pay Entoro a $240,000 finder's fee. If further review of that report is warranted, the remedy is further review—not an instruction telling the jury to accept The Post's substantial-truth theory as fact. Nor

BRITO, PLLC
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

does the record justify the fee award The Post seeks, particularly where TMTG has acted in good faith to comply with the Court's orders, addressed issues as they arose, and provided the continued compliance the Court contemplated when it declined to impose broader fee-shifting before. Accordingly, The Post's Motion should be denied.

## BACKGROUND

The discovery record does not support The Post's narrative of concealment. TMTG has produced millions of pages in this case, including at least 3.4 million pages by the November 19, 2025 hearing alone. Nov. 19, 2025 Tr. at 9. On at least two occasions, the Court expressly declined to shift fees for delay, instead "tak[ing] under advisement the issue of fees pending TMTG's compliance with the production deadlines" it was setting. ECF No. 112 at 2 nn.1-2. That approach—give TMTG the chance to comply, revisit fees only if it does not—is the posture from which the Motion now asks the Court to depart.

The dispute concerns the custodial files of TMTG's CFO, Phillip Juhan. The Post's Motion blurs two different categories of material. The first is Mr. Juhan's TMTG-related files, including his corporate email and Slack messages, collected through TMTG's ordinary discovery process. *See* Mot. Ex. 7. The second is Mr. Juhan's *personal* cell phone and *personal* laptop—devices he owned individually, not TMTG-issued equipment—which were imaged through his personal counsel in connection with other litigation, and then transferred into TMTG's database. *See*

Mar. 31, 2026 Tr. at 82-83; Mot. Ex. 7. That difference in custody is why the two categories were processed on different tracks.

The issue arose from processing, not concealment. TMTG's vendor processed Mr. Juhan's data using a system that "dedupe[s]" documents against an earlier-ingested custodian—meaning a document collected from Mr. Juhan's files could appear in metadata as belonging only to another custodian, like General Counsel Scott Glabe. TMTG's counsel explained this on the record, and the Court confirmed its understanding, at the very hearing The Post now cites as a violated order: "THE COURT: So metadata is only going to show that it was a Mr. Glabe document … MR. ROBERTS: Exactly, Your Honor." Nov. 19, 2025 Tr. at 63. By then, TMTG had already produced more than 65,000 documents referencing Mr. Juhan through the overlapping productions of other custodians. *See* Mar. 31, 2025 Tr. at 72.

When TMTG discovered in February 2026 that search terms had not been run against Mr. Juhan's source folders, TMTG disclosed that fact, remediated it, ran the agreed terms, produced responsive, non-privileged materials, and postponed his second deposition so The Post could review a supplemental production from Mr. Juhan's personal laptop files. *See* DE 161 at 6. TMTG also complied with the one order specifically addressing those devices: the March 31, 2026 Order's requirement that TMTG produce a hit report by April 7, 2026—which The Post's own Motion concedes TMTG did. Mot. at 8.

Mr. Juhan's sworn testimony confirms that there was no concealment of his personal devices. He testified, without contradiction, that "every time" counsel

**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

asked him to turn over his devices, "I've turned them over and have allowed them to search those devices." Juhan Mar. 3, 2026 Tr. at 239:6-8; *accord* Juhan Nov. 3, 2025 Tr. at 26:7-11. He also explained that his prior laptop was potentially compromised and replaced, *id.* at 12:4-13:2, and his prior phone simply "went bad," after which he was "not certain" every message carried over. Juhan Mar. 3, 2026 Tr. at 237:12-238:1. These facts show replacement and device failure, not a refusal to provide devices, a hidden repository, or any deliberate effort to keep files from The Post.

The correspondence attached to the Motion confirms that the post-hit-report dispute was much narrower than The Post suggests. After TMTG produced the April 7 hit report, The Post demanded, on an emergency basis, that TMTG review and produce every document appearing on the hit report within 48 hours, before Mr. Juhan's deposition, based only on the assertion that those documents "may" be relevant. Mot. Ex. 4. TMTG responded that the Court's order required production of the hit report itself, not immediate review and production of every document listed on it. *Id.* Over the following two weeks, TMTG reminded The Post that the material from Mr. Juhan's personal devices had been collected through his personal counsel, and that a re-review was neither contemplated by, nor required under, the Court's order, which required publication of the hit report. *See* Mot. Ex. 5. At no point in that exchange did The Post identify a specific document it believed had been withheld. Its position was that further review should occur because responsive

5

material "may" exist among the remaining hits. That exchange—not the discovery of any actual missing document—is what this Motion is built on.

The hit reports themselves show why The Post's premise is overstated. Mot. Exs. 1 and 2. For example, on his computer, the entire compound string "Entoro OR Entaro OR Entero OR (James w/3 Row)" produced *two* hits; on his phone, that same string produced *fifty-five*—fifty-seven in total, not the "nearly two thousand" documents The Post claims exist on the phone alone. Mot. at 9. The bulk of the volume The Post cites comes instead from broader strings that do not include "Entoro," including "(Patrick OR Orlando) w/5 (loan* OR pay* OR fund* OR fee* OR financ* OR commission)," which produced 400 hits on the phone, and "(finder* w/3 fee*) OR (referral* w/3 fee*) OR (success w/3 fee*) OR (broker* w/3 fee*)," which produced 136 hits on the computer and 352 hits on the phone. *See* Mot. Exs. 1 and 2. Further, in one instance, one of the search strings generated fifteen hits, *all* of which consisted of a list of Division I basketball schools Mr. Juhan's son had sent him. Mot. Ex. 4.

All of this unfolded in an extraordinarily large discovery record By the March 31, 2026 hearing, TMTG has responded to 53 requests for production and 25 interrogatories with multiple subparts, participated in 17 depositions, and produced close to 4 million pages of documents. Mar. 31, 2026 Tr. at 7-8.

That is the record The Post characterizes as withholding: a processing issue TMTG disclosed and corrected, a hit report TMTG produced by the Court-ordered

**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650⎪ Coral Gables, Florida 33134
Telephone: (305) 614-4071

deadline, and no identified document that The Post contends was actually withheld. That record does not support sanctions.

## ARGUMENT

### I.   Legal Standard

The relief The Post requests, an instruction directing the jury to treat two of the most consequential, contested issues in this case as established fact, sits at the outer edge of what Rule 37 authorizes. It substitutes for evidence, telling the jury to treat the absence of proof as proof itself. The Advisory Committee that drafted Rule 37(e)(2) grouped an adverse inference instruction with dismissal and default judgments as "very severe measures" issuable only on a finding of intent to deprive. Fed R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment. Last year, the Ninth Circuit vacated an instruction directing a jury to "take as established" a contested fact precisely because it operated as "a conclusive presumption" resolving "that ultimate fact at issue" in one side's favor—a "dispositive sanction[]" requiring the same specific intent finding. *Gregory v. State of Montana*, 118 F.4th 1069, 1077-79 (9th Cir. 2024); *see also* Fed. R. Civ. P. 37(b)(2)(A)(i) (listing "facts be taken as established" alongside striking pleadings and default judgment in the same subsection). The instruction here is, if anything, more consequential. It asks the jury to presume an agreement to pay a fee that, on The Post's own admission, was never paid, and the absence of TMTG's claimed damages.

The law recognizes three possible routes to an adverse inference instruction, and none supports The Post's request. Rule 37(e)(2) applies where ESI was lost,

**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

cannot be restored, and the party "acted with the intent to deprive another party of the information's use." *Skanska USA Civil Southeast Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1312-13 (11th Cir. 2023). Common law spoliation likewise applies where the evidence once existed but is no longer available, and requires a showing that the evidence was crucial and that its absence "is predicated on bad faith." *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997); *accord Penalty Kick Mgmt. Ltd. v. Coca-Cola Co.*, 318 F.3d 1284, 1294 (11th Cir. 2003). Rule 37(b)(2)(A), by contrast, permits sanctions for violating a discovery order, including, in appropriate circumstances, an order directing that certain facts be taken as established. Fed. R. Civ. P. 37(b)(2)(A)(i).

Rule 37(b) is the only possible route here because The Post does not claim that TMTG destroyed, lost, or failed to preserve evidence. Its complaint is delay, not spoliation. But Rule 37(b) does not permit the sanction The Post seeks absent a sufficient predicate. As a threshold matter, Rule 37(b) applies only where a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). And even then, the Eleventh Circuit calibrates the required showing to the severity of the sanction sought. Dismissal and default sit at the top of the scale. They are reserved for "extreme circumstances," imposed "only as a last resort," and require willful noncompliance. *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993); *Wouters v. Martin Cnty.*, 9 F.3d 924, 933 (11th Cir. 1993) (reversing dismissal where less drastic sanctions would have sufficed). The same principle applies here. The more a sanction resolves the merits rather than remedies

**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

discovery conduct, the stronger the justification must be. At every level, district court discretion remains "not unbridled." *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 799 F.2d 1510, 1519 (11th Cir. 1986).

Nor may the Court impose the harshest available sanction as a matter of course. Any Rule 37 sanction must be proportionate to the violation, and the Court must consider whether a lesser sanction would adequately address the claimed prejudice before resorting to an instruction that resolves merits issues by presumption.

The same proportionality governs The Post's request for fees. Fee shifting is conditional, not automatic. Rule 37(a)(5) contains no fee-shifting obligation where the resisting party's position was "substantially justified," Fed. R. Civ. P. 37(a)(5)(A)(ii), and Rule 37(b)(2)(C) carries the identical exception for expenses tied to an order violation. And where a motion to compel is granted only in part, Rule 37(a)(5)(C) further authorizes the Court to apportion expenses rather than award them wholesale.

## II.    The Post Misstates the Governing Standard.

The Post asserts that "[c]ourts impose both monetary and non-monetary sanctions on parties for discovery violations even absent bad faith or willfulness," that a bad faith finding is required "only when imposing the most severe sanctions— default or dismissal," and that courts may therefore impose "lesser sanctions, such as adverse jury instructions . . . without a finding of bad faith or willfulness." Mot. at 11 (citing *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045,

BRITO, PLLC
2121 Ponce De Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

1049 (11th Cir. 1994); *Higgs v. Costa Crociere S.p.A. Co.*, 969 F.3d 1295, 1304 (11th Cir. 2020)). Neither case supports the sanction The Post seeks here.

*BankAtlantic* did not involve an adverse inference instruction. The district court declined to enter default as disproportionate and instead awarded costs and fees against Paine Webber and its law firm. 12 F.3d at 1048-49; *BankAtlantic v. Blyth Eastman Paine Webber, Inc.*, 127 F.R.D. 224, 235 (S.D. Fla. 1989). The only question on appeal was whether that fee award required its own finding of willfulness or bad faith, and the Eleventh Circuit affirmed it without one, reasoning that such a finding is reserved for default and dismissal. 12 F.3d at 1049. Nothing in *BankAtlantic* addresses, let alone authorizes, an instruction directing a jury to treat contested facts as established.

*Higgs* fares no better for The Post. The district court there granted the adverse instruction only after finding "an egregious discovery violation," and the instruction told the jury that "the Court has found that the Defendant deliberately concealed" a witness's identity and photographic evidence "in violation of th[e] Court's order." *Higgs,* 969 F.3d at 1301, 1304-07. The one case The Post offers as proof that bad faith is not required is itself a case that required it.

## III. The November 19, 2025 Ruling Does Not Authorize The Relief The Post Seeks.

The Post relies heavily on the November 19, 2025 hearing, quoting the Court's statement that it would "entertain" a sanctions motion that could be held "in abeyance" and "brought later if discovery continues to be an issue." Mot. at 6-7

BRITO, PLLC
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

(quoting Nov. 19, 2025 Tr. at 66, 68). Read in context, that invitation does not support what The Post now seeks. The Court was addressing a potential motion for monetary sanctions. Moments after the statement The Post quotes, the Court invited The Post to submit "what amount you think would be appropriate for sanctions," *id.* at 66-67, but specifically cautioned that because the ruling had "not been a wholesale victory," it would not be "appropriate" to award all of The Post's time. *Id.* at 67. Nothing in the November 19 hearing invited The Post to seek an instruction resolving disputed merits issues for the jury.

The Post also quotes the Court's observation of "some resistance to discovery," Mot. at 6, but omits the next sentence where the Court noted that the issue, "according to plaintiffs," concerned "data collection" by TMTG's vendor. Nov. 19, 2025 Tr. at 66. The Court was not finding deliberate defiance or authorizing a merits-altering jury instruction. It was addressing a discovery management issue. The Motion The Post filed is a far more severe request, filed seven months later, seeking an instruction that would resolve disputed merits issues by presumption that the November 19 hearing does not support. The November 19 hearing does not supply the predicate The Post needs.

## IV.   The Requested Instruction Is Unwarranted.

The case law confirms that The Post's requested instruction is unwarranted. Courts have refused this sanction on records far more serious than this one, and the cases The Post cites for the opposite result turn on facts not present here.

**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

In *ML Healthcare Services, LLC v. Publix Super Markets, Inc.*, the defendant preserved only one hour of surveillance video and let the rest be erased—yet the court affirmed denial of an adverse inference for lack of bad faith. 881 F.3d 1293, 1307-08 (11th Cir. 2018). In *Tesoriero v. Carnival Corp.*, the defendant discarded the chair that caused the plaintiff's injury—the case's most important evidence—yet the court affirmed denial of sanctions, since careless disposal is not intentional destruction. 965 F.3d 1170, 1183-85 (11th Cir. 2020). And in *Skanska*, despite a litigation hold, five employees' cell phones went unpreserved, yet the court still required a finding of intent to deprive before the severe sanctions authorized by Rule 37(e)(2) could be imposed. 75 F.4th at 1302, 1312-13.

The cases The Post cites do not lower that standard. *Freeman v. Giuliani*, 691 F. Supp. 3d 32 (D.D.C. 2023), involved an escalating sanctions sequence that bears no resemblance to this record. The court first entered default judgment after finding intentional spoliation of ESI that was gone forever, 2023 WL 5600316, at *13-21 (D.D.C. Aug. 30, 2023). Only later, after a separate failure to pay court-ordered fees, did the court convert an "otherwise mandatory adverse instruction" to a permissive one upon compliance. *Id.* at 3. There is no default judgment here, no intentional spoliation, and no comparable sanctions sequence. The Post's remaining cases fail for the same reason. Each rested either on an express finding of bad faith or on a case-specific circumstances absence here.

*Metropolitan Opera Ass'n, Inc. v. Local 100* is not a case where the court excused the movant from proving bad faith; it is a case where the court made an

**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

explicit finding of bad faith and, on that finding, entered default judgment—the single most severe sanction Rule 37 authorizes. 212 F.R.D. 178, 227, 231 (S.D.N.Y. 2003). The Post does not ask this Court to enter default judgment, does not argue this record supports one, and offers no comparable finding here. Citing the case that justifies the most extreme sanction available does not lower the bar for the significant, but lesser, sanction The Post actually seeks.

*United States v. Advocate Law Groups of Florida, P.A.* rested on a circumstance unique to that record: the withheld information was the defendants' own financial condition, a category for which the defendants were the only possible source, leaving the court, in its own words, "no method to guarantee" the accuracy of any disclosure short of an inference. 2021 WL 11960209, at *4 (M.D. Fla. Dec. 27, 2021). That rationale has no application where independent means of verification exist, as they do here: The Post's own May 27, 2026 Correction already resolves the central fact from a source outside TMTG's control, and the Wilkerson-Juhan texts and the duplicate financial models on Mr. Colaneri's drive supply third-party corroboration the *Advocate Law* defendants could not offer. Where a fact can be, and has been, verified from outside the withheld material itself, the "no method to guarantee" rationale supplies no basis for an inference.

*First Coast Energy, L.L.P. v. Mid-Continent Cas. Co.* rested on the same premise The Post asks this Court to adopt here: that where a court lacks confidence in a party's own responsiveness determinations, the remedy is to order production without a filter and let the results speak for themselves. 2015 WL 5159140, at *5-6

**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

(M.D. Fla. 2015). That remedy has already been tried in this case, and the result answers *First Coast Energy* rather than supporting it. Confronted with the same argument The Post makes now, the Court ordered TMTG to produce every one of the roughly 900 remaining Entoro-search hits regardless of TMTG's own responsiveness determination—the unfiltered-production solution *First Coast Energy* approved—and TMTG complied. That production surfaced nothing: no document The Post identifies as improperly withheld, and no further relief sought on it in this Motion. Whatever confidence deficit might otherwise justify the remedy *First Coast Energy* describes, this record already tested it once, and the test came back clean.

And *Klayman v. Judicial Watch, Inc.* does not relieve The Post of proving prejudice in the first instance. It addressed a movant who had already established prejudice through concrete, undisputed effects—untimely productions that foreclosed additional depositions and upended the opposing party's trial theory— and held only that a later, partial production could not retroactively cure prejudice already shown. 6 F.4th 1301, 1312 (D.C. Cir. 2021). The Post has made no comparable showing here. It has not identified a deposition it was denied, a theory it could not test, or any concrete effect flowing from the pending hit-report review. *Klayman* answers what happens after prejudice is proven. It says nothing about how to prove it, which is the showing this Motion still lacks.

Taken together, this authority establishes what The Post must show and has not: (1) a clear order requiring production of specific material; (2) actual

disobedience; (3) bad faith or intent to deprive; (4) incurable prejudice; and (5) that no lesser sanction would suffice.

**V.      The Post Has Not Shown That TMTG Disobeyed Any Order.**

Rule 37(b)(2)(A) authorizes relief only where a party "fails to obey an order to provide or permit discovery." The Post asserts that "multiple Court orders" required production from Mr. Juhan's phone and computer. Mot. at 2, 12. Examined against their text, those orders do not carry that weight, and the one order addressing those devices has been satisfied.

The October 24, 2025 Order authorized one-hour depositions of Mr. Nunes, Mr. Juhan, and Mr. Langer confined to "what repositories" they used and "what collection efforts were made"—sessions that did "not count" as substantive depositions. ECF No. 112 at ¶3. The Court itself later called these "almost … records custodian depositions." Nov. 19, 2025 Tr. at 43. A deposition about where documents are kept is not an order to produce them by a date certain.

The November 19, 2025 Order granted The Post's motion for "an updated, complete, and verified response to interrogatory no. 3, and verification that TMTG's counsel has collected the data from the repositories identified" in that response, by November 26, 2025. ECF No. 128 at ¶4. TMTG complied. The Post's Motion argues, in a footnote, that TMTG's later explanation—that Mr. Juhan's personal devices are not in TMTG's direct possession, custody, or control for purposes of completing an ongoing search—is inconsistent with that verification, because TMTG separately told the Court the devices "were imaged." Mot. at 12 n.8 (citing Mar. 31, 2026 Tr. at

**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

72). It is not. The full statement The Post partially quotes says the devices "were imaged and the files were transferred from Mr. Juhan's personal counsel." Mar. 31, 2026 Tr. at 72. Verifying that data was collected, which the November 19, 2025 Order required and TMTG did, is a different question from who is responsible for completing the search and review of that collected data—a question TMTG has answered consistently throughout by coordinating with Mr. Juhan's personal counsel, who performed the original imaging.

The March 31, 2026 Order is the only order that specifically addressed Mr. Juhan's personal computer and personal cell phone source folders. It required TMTG to "produce a hit report" for those source folders by April 7, 2026. ECF No. 193 ¶ 2(a). TMTG did exactly that, and The Post's own Motion concedes the report was produced on time. Mot. at 8.

The predicate for Rule 37(b) is therefore missing. The Post identifies no order requiring the production it says was withheld, and the only order directed to Mr. Juhan's devices was satisfied.

## VI.    The Post's Hit-Count Theory Does Not Support Sanctions.

The Motion rests on a premise that is not the law: that any document hitting a search term is, for that reason alone, responsive and must be produced. A "hit" only identifies a population for review; it does not replace Rule 26(b)(1), privilege review, or a responsiveness determination. But The Post's Motion never examines whether its own broad search strings were likely to identify relevant material. The record shows they were not. The hit reports themselves prove the point. When

**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

TMTG corrected the supplemental search-term issue for Mr. Juhan's devices, all fifteen hits on one string—including terms such as "porn-friendly bank" and "Russian banker connected to the porn industry"—turned out to be a list of Division I basketball schools Mr. Juhan's son had sent him. Mot. Ex. 4. That is not evidence of withholding. It is evidence that broad search terms can capture irrelevant material.

The same problem appears in the search strings driving The Post's volume claims. A string like "(finder* w/3 fee*) OR (referral* w/3 fee*) OR (success w/3 fee*) OR (broker* w/3 fee*)" is designed to capture any use of common financial terms near one another. It is not tailored to Entoro. It is not tailored to the alleged finder's fee. And it does not show that every document it captures is responsive, nonprivileged, or material to this case.

The Court has already tested The Post's hit-count theory in a more direct way. The March 31, 2026 Order required TMTG to produce every one of the roughly 900 remaining documents that hit on the compound string "Entoro OR Entaro OR Entero OR (James w/3 Row)"—without regard to whether TMTG had determined those documents were responsive—or to identify them on a privilege log. DE 193 at ¶2(f); Mar. 31, 2026 Tr. at 145. TMTG complied. Yet The Post does not identify a single relevant document from that production, much less one proving an Entoro agreement, financial harm, or any other fact material to the sanctions it now seeks. The one time The Post's theory was tested against actual documents, it did not reveal a concealed trove. It yielded no basis for the instruction The Post now seeks.

**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

The record undercuts The Post's theory. Broad search terms produced broad results. Prior reviews yielded little. Key materials were duplicated elsewhere or already produced. And the one Court-ordered production of roughly 900 Entoro-string hits did not reveal a concealed trove. The remaining hits are not evidence of withholding. They are a review population, and they cannot support an adverse instruction.

Courts reject the theory that a raw hit count proves wrongful nonproduction. A party may agree to run search terms without giving up its right to review the results for relevance, responsiveness, and privilege. *See O'Donnell/Salvatori Inc. v. Microsoft Corp.*, 339 F.R.D. 275 (W.D. Wash. 2021); *Singleton v. Mazhari*, 2024 WL 1140691, at *3 (D. Md. Mar. 14, 2024). That rule applies even when the hit count is large. In *BancPass*, negotiated search terms generated more than 20,000 documents, only 34 of which were responsive, and the court still declined to compel production of the rest. *BancPass, Inc. v. Highway Toll Admin., LLC,* 2016 WL 4031417, *3 (W.D. Tex. July 26, 2016).

In *Henderson v. Lockheed Martin Corp.*, agreed search terms generated roughly 15,000 documents, and the defendant produced about 2,800. 2023 WL 6845234, * 2 (M.D. Fla. Oct. 17, 2023). Even though the plaintiffs identified deposition testimony suggesting specific documents were missing, the Court ordered only a targeted re-review. It did not require production of the remaining hits. Instead, the Court rejected the plaintiffs' effort to obtain raw search results as an attempt to bypass the defendant's responsiveness review, for which there was

**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

"no legal support." *Id.*

The Post asks for more on less. It identifies no specific reviewed document that was improperly withheld, no comparable testimony establishing that a particular missing document exists, and no hit count that measures what The Post says it measures. It relies instead on raw search-term numbers inflated by broad strings that sweep in unrelated material. TMTG's position in the correspondence The Post attaches was therefore correct: "the fact that a document hit on a search term does not mean it is relevant, non-privileged, and subject to production." Mot. Ex. 4. The Post calls that obstruction. Mot. at 13. It is the rule courts apply in this context, and it is exactly what the Court's own Entoro production order confirmed when the roughly 900 Entoro-string hits were put to the test.

The hit-count theory therefore supplies no basis for sanctions. It does not show wrongful nonproduction, prejudice, bad faith, or the need for an adverse instruction. It shows only a review population—one already demonstrated to include irrelevant material—and Rule 37 does not permit the Court to convert that into a merits presumption

## VII.   Fees Are Unwarranted.

Fee shifting under Rule 37 is not automatic. The Court must determine whether TMTG's position was "substantially justified," which requires only that "reasonable people could differ" about the position taken. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Maddow v. Procter & Gamble Co.*, 107 F.3d 846, 853 (11th Cir. 1997). That standard must be applied in the context of this case: 53

BRITO, PLLC
2121 Ponce De Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071

requests for production, 25 interrogatories with multiple subparts, 17 depositions, and nearly 4 million pages of documents. Mar. 31, 2026 Tr. at 7–8. The presiding District Judge has already cautioned that the case must remain focused and not "spiral out of control." *Id.* at 8. Discovery friction in a record of this size does not justify fee-shifting where TMTG's positions were reasonable and substantially justified.

The Post's request for fees tied to its August 2025 motion and the October and November 2025 hearings, Mot. at 22–24, revisits issues the Court already addressed. On each occasion, the Court declined to shift fees and instead "t[ook] under advisement the issue . . . pending TMTG's compliance." DE 112 at 2 nn.1–2. At the November 19 hearing, the Court denied sanctions without prejudice and contemplated a prompt, separate fee motion. Nov. 19, 2025 Tr. at 66–68. The Post did not file one. TMTG has since complied with the operative orders from that period. The Post cannot revive those fees seven months later by folding them into a different motion seeking different and more severe relief.

Fees tied to the February 28, 2026 motion fare no better. TMTG's central position—that a search-term hit does not itself require production—is correct, supported by the case law, and confirmed by this record. A party is not substantially unjustified for taking a position the law supports. *See Pierce*, 487 U.S. at 565. Nor did the March 31, 2026 Order reflect wholesale success for The Post: two requests were denied as moot because TMTG had already produced the material sought, ECF No. 193 at ¶¶2(e), 2(g), and the Court later sustained every one of TMTG's privilege

**BRITO, PLLC**
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

determinations submitted for in camera review. ECF No. 202 at 2–3. At most, Rule 37(a)(5)(C) permits apportionment where a motion is granted only in part; it does not support the broad fee award The Post seeks.

The Post also improperly seeks overlapping fees under three separate provisions—Rules 37(a)(5), 37(b)(2)(C), and 37(c)(1). Mot. at 22–26. None permits double recovery for the same work. If the Court awards any fees, it should require The Post to tie each time entry to a specific rule and a specific ruling, and should exclude duplicative, overlapping, or unrelated time.

Finally, no additional production order is warranted on this record. The Post asks the Court to compel completion of production from the April 7, 2026 hit report, Mot. at 26, but as previously set forth, raw hits do not establish responsiveness, relevance, or wrongful nonproduction. Any relief must preserve TMTG's ordinary right to review for responsiveness and privilege before production.

### CONCLUSION

For the foregoing reasons, TMTG respectfully requests that the Court enter an order denying The Post's Motion in its entirety, and for such further relief as the Court deems just and proper.

BRITO, PLLC
2121 Ponce De Leon Boulevard, Suite 650 │ Coral Gables, Florida 33134
Telephone: (305) 614-4071

Dated: July 2, 2026                    Respectfully submitted,


                                           **BRITO, PLLC**
*Counsel for Plaintiff*
2121 Ponce de Leon Boulevard
Suite 650
Miami, FL 33134
Office: 305-614-4071
Fax: 305-440-4385

By: /s/ *Alejandro Brito*
         **ALEJANDRO BRITO**
         Florida Bar No. 098442
         Primary: abrito@britopllc.com
         Secondary: apiriou@britopllc.com
         **JALAINE GARCIA**
         Florida Bar No. 58632
         Primary: jgarcia@britopllc.com
         **IAN MICHAEL CORP**
         Florida Bar No. 1010943
         Primary: icorp@britopllc.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed

on July 2, 2026 through the Court's CM/ECF electronic filing system upon:

Carol J. Locicero, Esq.
Linda Riedemann Norbut, Esq.
Thomas & LoCicero, PL
601 South Blvd
Tampa, FL 33606-2629
clocicero@tlolawfirm.com
lnorbut@tlolawfirm.com


Thomas G. Hentoff, Esq.
Nicholas G. Gamse, Esq.
Williams & Connolly
680 Maine Avenue S.W.
Washington, DC 20024
thentoff@wc.com
ngamse@wc.com
*Counsel for Defendant*

By: /s/ *Alejandro Brito*

BRITO, PLLC
2121 Ponce De Leon Boulevard, Suite 650│ Coral Gables, Florida 33134
Telephone: (305) 614-4071